


**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

RECEIVED

DEC 04 2007 *aw*

DEC 04 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel.

KEVIN PATTERSON #A-83515
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

GENE JUNGWIRTH
(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and

**(Fill in the following blank _only_ if judgment
attacked imposes a sentence to commence
in the future)**

ATTORNEY GENERAL OF THE STATE OF

N/A
(State where judgment entered)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO: _____
(Supplied by Clerk of this Court)

07CV6853
JUDGE GOTTSCHALL
MAGISTRATE JUDGE ASHMAN

_____

Case Number of State Court Conviction:

98-CR-30064

**PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY**

1. Name and location of court where conviction entered: Cook County Circuit Court

   2650 S. California Ave, Chicago, Illinois 60608

2. Date of judgment of conviction: November 21st, 2001

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

   Felonious Use of Weapon, Three Cnts, of Attempt Armed Robbery (98-CR-30064)

4. Sentence(s) imposed: 18 years (pursuant to Class X sentencing) Remand resulted
   in sentence being found pursuant to extended term sentecing.

5. What was your plea? (Check one)     (A) Not guilty     (X )
                                        (B) Guilty          (  )
                                        (C) Nolo contendere (  )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   _____ N/A _____

## PART I -- TRIAL AND DIRECT REVIEW

1.  Kind of trial:  (Check one):        Jury  (  )        Judge only  (X )

2.  Did you testify at trial?        YES (  )        NO        (X )

3.  Did you appeal from the conviction or the sentence imposed?  YES ( X )   NO (  )

    (A)  If you appealed, give the

        (1) Name of court:  1st District Appellate court of Illinois

        (2) Result:  Conviction affirmed-Remand for Resentencing

        (3) Date of ruling:  June 19th,2003

        (4) Issues raised:  Fatal Variance in Indictment which could not sustain
        charge, Improper use of class X sentencing statutes, (Note attached
        as Exhibit is the first appeal's Appellate Order)

    (B)  If you did not appeal, explain briefly why not:

                          N/A   because appeal was taken

4.  Did you appeal, or seek leave to appeal, to the highest state court?   YES (X )      NO (  )

    (A)  If yes, give the

        (1) Result      Petition for leave to appeal denied

        (2) Date of ruling:   December 3rd,2003 (Note attached)

        (3) Issues raised:  Original issues presented on direct appeal,

    (B)  If no, why not:    Leave to Supreme Court was filed.

5.  Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes (  )    No (X )

    If yes, give (A) date of petition:   N/A        (B) date *certiorari* was denied:   N/A

## PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES ( X )   NO (  )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A.  Name of court:   Cook County Circuit Court, Chicago Illinois

   B.  Date of filing:   December 2nd, 2004

   C.  Issues raised:  Note full copy of Post-Conviction Petition attached
       revealing the issues raised stating the Gist of Constitutional
       Violations claims which supported relief in the form of Reversal.

   D.  Did you receive an evidentiary hearing on your petition?    YES (  )   NO ( X )

   E.  What was the court's ruling?  Denied as Frivolous and patently without Merit.

   F.  Date of court's ruling:        February 25th, 2005

   G.  Did you appeal from the ruling on your petition?        YES ( X )   NO (  )

   H.  (a) If yes,   (1) what was the result?    Denied Relief Sought (Note Order attched)

              (2) date of decision:   May 31st, 2005

       (b) If no, explain briefly why not:   Not applicable

   I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

       YES ( X ) NO (  ) Petition for Rehearing was filed and denied (Note attacned
       June 27th, 2006)
       (a) If yes,   (1) what was the result?    Petition for leave Denied

              (2) date of decision:  September 27, th 2006

       (b) If no, explain briefly why not:            **Not applicable as Petition was filed**

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?      YES ( )      NO (X)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1. Nature of proceeding     None to date

        2. Date petition filed     N/A

        3. Ruling on the petition     N/A

        3. Date of ruling     N/A

        4. If you appealed, what was the ruling on appeal?     N/A

        5. Date of ruling on appeal     N/A

        6. If there was a further appeal, what was the ruling ?     N/A

        7. Date of ruling on appeal     N/A

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**? YES ( ) NO (X)

    A. If yes, give name of court, case title and case number: This first Habeas Corpus filed in regards to the Conviction and Sentence of case #98-CR-30064

    B. Did the court rule on your petition? If so, state

        (1) Ruling:     N/A

        (2) Date:     N/A

**4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

YES ( ) NO (X)

If yes, explain:     No other proceedings are at this time before any State and or Federal Courts. Petitioner has only Freedom of Information Act request, and State Court Motion-Petition seeking to obtain Material that is relevant to the issues introduced in the foregoing Petition for Habeas Corpus Relief.

## PART III -- PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one  Denial of Due Process and Equal Protection of the Law
Supporting facts (tell your story briefly without citing cases or law):

Said State of Illinois, and County of Cook trial Court, and the State of Illinois Appellate and Supreme Court failed to properly review the the claims brought forth by the Petitioner/defendant in the properly produced Post-Conviction Petition thereby deneying the Petitioner of of his State and Federal Rights established by the U.S. Constitution and such failure was premised on unreasonable application of facts in direct conflict with the actual evidence presented in the Initial trial of the Petitioner which resulted in a finding of guilty by trial Court.

(B) Ground two  Said State of Illinois and County of Cook, Indictment
Supporting facts: could not sustain a charge, and was improperly procured.

Said State Court Indictment was insufficient and improper and was brought forth in Violation of the Defendant/Petitioners Constitutional Rights pursuant to the United States Constitutions 14th, Amendment, in that said Indictment was brought forth under circumstances that reveal that the true bill was Not introduced and returned by the foreman of the Grand Jury in a manner consistent with applicable Procedures, nor did the foreman sign a Indictment which evidence was introduced on, said

Grand Jury Misconduct occurred that warranted the Indictment being dismissed, due in part to the fact that the witness whom appeared at the hearing was not the witness whom the Grand Jury based it findings on (Probable Cause) said true bill of Indictment was returned, yet no form of testimony was presented to the witness named on the True Bill of Indictment that was returned by the Grand Jury, and said error as shown in the State Court was improper, reviewed and bypassed by each of the State Courts which reviewed the challenge to the Indictment issue. Defendants Rights under the United States Constitutions 5th, 6th, and 14th Amendment was denied in an arbitrary and gross manner and equal Protection of the law was not rendered to the Petitioner at all by the Several State Courts whom had improperly reviewed the case numbered in the trial court as; 98-CR-30064, Direct appeal 1-02-0694, 1-04-2140, and 1-05-0847, nor Supreme Court # 96900 and 102994, each review failed to apply applicable law properly.    5

(C) Ground three <u>Unreasonable application of establish federal law</u>
Supporting facts:

The State of Illinois and County of Cook trial Court and the several

various appellate Courts and the Supreme Court failed to apply the

proper Constitutional legal standard to determine the claim of the

trial and appellate courts counselors (attorneys) inadequate and also

ineffective assistance of counsel claims, and the courts decisions

was all contrary to clearly established federal law as determined

by the Supreme Court of the United States.

(D) Ground four <u>That the sentence that was given by the trial courts was</u>
Supporting facts:   excessive and brought forth in violation of law.

That the State Courts sentence was brought forth in violation of the

defendants constitutional rights to due process of law and such was

premised on evidence which was produced in error warranting a voiding

of the sentence given to protect the defendants rights to Due Process

and equal protection of the law. also the manner in which the sentence

was to be applied violated the defendants constitutional Rights as is

noted in the properly submitted Post-Conviction Petition attached as

evidence of exhaustion of state remedies.

2   Have all grounds raised in this petition been presented to the highest court having jurisdiction?
    YES (X)   NO ( )

3.  If you answered "**NO**" to question (16), state <u>briefly</u> what grounds were not so presented and why not:

DOES NOT APPLY

***NOTE ADDITIONAL FACTS IN SUPPORT OF HABEAS CORPUS RELIEF***
(attched in the following pages as #E, #F, #G.

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing __Cook County Public Defender (Name unknown)__

(B) At arraignment and plea __Cook County Public Defender (Name unknown)__

                                                                    Chicago,Illinois
(C) At trial __Charles G.Murphy, 542 S. Dearborn, Suite 750 (Zip-60605)__

(D) At sentencing __Same as above Trial Attorney (Charles G. Murphy__

              Emily Eisner      { Debra Loevy-Reyes (Sentencing appeal &
(E) On appeal __A.C.C. Public Def,{ State App. Defender.  Post-Conviction App.__

(F) In any post-conviction proceeding __Debra Loevy-Reyes, State app. Def, on Post-Con.__

(G) Other (state): __Debra Loevy-Reyes, filed a Petition to the Supreme Court of
              Illinois in regards to the Post-Conviction Petition.__

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES (  )  NO (X )

Name and location of the court which imposed the sentence: _____N/A_____

Date and length of sentence to be served in the future _____N/A_____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: __11/16/07__                    __Kevin Patterson__
          (Date)                           Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

__Kevin Patterson__
(Signature of petitioner)
      #A-83515
(I.D. Number)  East Moline Corr. Center
  100 Hillcrest Road.
(Address) East Moline, Illinois 61244

**FURTHER GROUNDS IN SUPPORT OF**
**HABEAS CORPUS RELIEF**
**#E, #F, #G**

E- Presentation is that of the Cook County Circuit Court failing to properly review the fact that the Office of professional standards have denied the the defendant of a copy of his complaint that was submitted in the case said failure by the trial court to acknowledge the complaint was against the defendants rights to have exculpatory evidence and impeaching evidence brought forth in his trial.

F- Presentation is the issues regarding the trial courts judges prejudiced that was manifested throughout the entire case said defendant was given a improper review of the case by not only the trial court judge, but was also given the same type of treatment by the Post-Conviction Hearing judge.

G- Presentation reveals that the Federal Courts have been holding hearings that are relevant to the defendant case which would change the outcome of his conviction due to the fact that Police Misconduct played a vital role in him being convicted in the case and had the exculpatory evidence that the Police had injured the defendant and kept him hid from being brought to court in a timely manner the case would have resulted in a finding that the defendant was not guilty of the charges of Attempted Armed Robbery.

Defendant/Petitioner request that the facts shown in the Post-Conviction Petition attached be reviewed and considered appropriately due to the failure of all of the courts thusfar whom have had the case before them failing to properly review the facts regarding the blatent violations of Petitioners State and Federal Constitutional Rights to Due Process and equal Protection of the law.

Said Petitioner, Kevin Patterson, in a Pro-Se Capacity, points out that several specific issues were presented to the Various State Appellate Courts, and also the State of Illinois Supreme Court, and each appeal resulted in denials and an affirmance of the Conviction and sentence, Petitioner reveals that the Initial appeal (Direct Appeal) numbered #1-02-0649, resulted in the case 98-CR-30064,, being remanded back to the Cook County Circuit Courts, for aResentencing due to plain error, yet on remand the trial Court resentenced the Petitioner/Defendant to the same 18, year sentence under and pursuant to the State of Illinois Statute for Extended term sentencing, (730 ILCS 5/5-8-2 (a) (3).

Petitioners Initial Direct appeal numbered #1-02-0694 filed in the first District appellate Court of Illinois, contained the specific challenges of;

1). Whether the Attempt Armed Robbery Convictions may not be sustained, where no proof was presented of a substantial step and specific intent to accomplish a taking of Money from "the person" of another as was charged in each count of the "Indictment" ?

2). Whether the Courts reliance on the Class X offender sentencing scheme resulting in an eighteen year sentence for attempt armed robbery was erroneous, where the requisite number of prior class 2 felony Convictions for crimes committed after the effective date of the statute?

### PETITIONER PRESENTS CHALLENGES
### BROUGHT ON APPEAL OF REMAND FOR
### RE-SENTENCING
### #1-04-2140

1). Whether reduction of sentence or alternatively, a new sentencing hearing is required where sentencing Court, (1) relied on "Mistaken belief that Kevin Patterson, committed five (5) crimes in the 1990's when in fact those offenses occurred twenty years earlier: (2) relied on other mistakes regarding Patterson's criminal history; and (3) as a result, failed to give adequate weight to Patterson's rehabilitation?

2). Whether the Mittimus must be corrected because it erroneously reflects that Patterson is entitled to only 864 days credit for time served,, pending sentencing, when in fact he is entitled to 962 days for time served?

### PETITIONER'S POST-CONVICTION
### PETITION PRESENTED THE CHALLENGES AS SHOWN
### Appeal---#1-05-0847

1). Kevin Patterson's Post-Conviction Petition states the Gist of a Meritorious claim that he was denied his right to testify where his affidavit aver's that he made a timely request to testify and the record supports that claim.

2). The Post-Conviction Petition states the Gist of a Meritorious claim that defense counsel was ineffective for failing to investigate and present specific exculpatory evidence that would have supported Mr. Patterson's defense, and instead relying exclusively on an untenable legal theory.

3). The Petition states the Gist of a Constitutional claim that the
appellate counsel was ineffective for failing to argue that Mr.
Kevin Patterson, was deprived of his rights to a fair trial by
the trial Courts "Bias", manifested by repeated legally erroneous
statements that Patterson, was guilty of a completed robbery, not
just an attempt, even though no property was taken during the offense.

## PETITION FOR REHEARING
### #1-05-0847
### ISSUE PRESENTED;

1). KEVIN PATTERSON, request rehearing of his Contentions that his petition
states the Gist of a claim that he was deprived of his rights to testify
because this Courts ruling imposes an improper burden on defendants and
is contrary to the dictates of the Illinois Supreme Court, as clarified
a new opinion issued two days after this Courts ruling.

## PETITIONS FOR LEAVE TO THE
## SUPREME COURT OF ILLINOIS

### #96900 and #102994 Petitions
### are attached as Exhibits

## ****** STATEMENT OF FACTS REGARDING CASE ******

Said Petitioner, Kevin Patterson, on the date of October 1st,1998 was arrested
by Chicago Police, after said Police detained him while in the vicinity of 2345
W. 50th, Street, as stated in the official Police arrest report, said petitioner
was arrested without a warrant nor probable cause after it was stated that he had
been Identified as the subject whom attempted to Rob a establishment which went
by the name of Connections, said defendant/Petitioner was detained due in part to
the Chicago Police officers whom actually arresting him are said to have received
a flash message over their radio which gave a discription of the Vehicle which as
stated was used in an armed Robbery, said defendant is stated to have been seen
fleeing from the Vehicle which was described in the flash message, and arresting
officers along with other members of the Chicago Police department pursued the
subject/defendant on foot and apprehended him thereby placing him in custody, the
defendant/Petitioner was a short time after being placed in custody was allegedly
Identified by the claimed victims of the Attempt Armed Robbery, at the scene.

The facts shown here in the Petitioners Habeas Corpus Pleadings are not facts that
re-construct the entire case from its initial start, yet the facts here are facts
that reveal that the Cook County trial Court, and the First district Appellate Ct.
as well as the State of Illinois Supreme Court failed to review properly the case
in a manner consistent with the actual evidence introduced and the case law which
applied to such evidence, Petitioner points out that the above facts regarding a
arrest being made after the defendant was without a warrant nor probable cause,,
taken into custody show that the arrest itself was improper and that this arrest
being performed in the manner that is shown in all police reports and as well that
was testified to by the members of the Chicago Police department in open court,,,
should have been challenged by the attorney whom initially represented the named
defendant in the original trial Court of Cook County, this and other more serious
issues of inadequate and ineffective assistance of counsel are shown in the pages
of the Habeas Corpus Pleadings now presented which support relief in the form of
a direct reversal of the conviction, and or remandment for a New trial, said facts
are specifically now presented to the United States District Court.

Said Petitioner, presents that the issues raised on the Habeas Corpus pleadings
specifically point out t   r the defendant has been den   adequate and effective
assistance of counsel due in part because the trial attorney failed to bring out
facts regarding my being kept in custody at different police departments at a time
when I should have been taken in front of a Judge for my first appearence hearing
I was kept in hiding until injuries I had sustained by the police had healed to
a point where they could not be detected, this misconduct was reported to Chicago
Police department's office of Proffessional Standards yet they have refused to in
the proper manner release to me documents concerning the complaint I filed, Note
attached are a (Freedom of Information Act request which request a copy of my own
complaint which was filed in their office, and also requested was copies of the
results of the investigation which was requested to be conducted, facts regarding
the Chicago Police departments Misconduct was brought forth by me in My properly
presented and filed Post-Conviction Petition yet the facts were never reviewed in
a manner that would have shown that the attorney whom represented me in the trial
court failed to act on the Misconduct, It is known that under the United States
Courts case which was long ago decided and ruled upon, that the United States, in
the case of County of Riverside, _Vs- Mclaughlin, 500 U.S. 44, 111 S. Ct. 1661,
(U.S. Cal. 1991) unequivocally rendered a decision which stated their task in the
above case is to articulate more clearly the boundaries of what is permissible
under the fourth Amendment, it went on to say that a jurisdiction that provides
judicial determinations of probable cause within 48 hours of arrest, will as a
general matter, comply with the promptness requirements of Gerstein. yet it also
stated that this is not to say that the probable cause determination in a partic-
ular case passes Constitutional muster simply because it is provided within 48,
hours, such a hearing may none-the-less violate Gerstein, if the arrested person
can prove that his, or her probable cause hearing (Determination) was delayed in
a unreasonable manner. Petitioner points out that this is exactly what he tried
to bring to the State of Illinois Circuit Court, in the Petition for Post-Convic-
tion relief (Under the Post-Conviction Hearing Act, 725 ILCS 5/122-1 et seq.)
Petitioner states that this issue was ruled on in a manner that reveals that the
Court disregarded the applicable law concerning a defendant being held pass the
time in which he should have been taken to court for a determination of probable
Cause, Petitioner points out that he was held in the police's custody for more,,
than 120 hours before being taken in front of a Judge for a determination on the
probable cause for further prosecution and holding, defendant/Petitioner points
out that at no time did the police introduce facts which allowed them to obtain &
hold a defendant in jail at a police facility, and that the record is absent any
documentation of a Watch commanders authorization form giving orders to keep the
defendant pass the normal court call, it was never any form of investigation done
by the attorney representing the defendant, and the trial court failed to act on
the facts related to defendant being hid for more than 120 hours before being as
is shown in the record taken to a first appearence hearing. Said facts revealed
that I was given Ineffective assistance of Counsel during the Circuit Court of
Cook County proceedings when the case was first brought forth on the date of as
shown in the Criminal Complaints filed October 6th,1998, Petitioner specifically
states that all of the contentions that are following support that his conviction
should be directly reversed in part to the "Inadequate and Ineffective and as
well improper assistance of Counsel, not only in the trial Court but also in the
appellate court more than once, Petitioner, in the following pages presents that
the Circuit Court of Cook County, the First District Appellate Court of Illinois,
and the Supreme Court of Illinois, each failed to properly apply the proper and
reasonable law to the issues brought forth on my Post-Conviction Petition.

****** All of the Courts that have thusfar reviewed the Petitioners case have in
a manner that reveals that they have placed the defendant under an unreasonable
application of law format in that they have unreasonably applied the leading case
law to his actions that were before the Court and they have failed to stand by all
of them, specifically the applicable leading case law regarding Ineffective and
Inadequate assistance of Counsel under the leading case of Strictland V. Washing-
ton.

Habeas Corpus petitioner, Kevin Patterson presents that the Cook County Circuit Court applied an unreasonable application of law to his case in its findings of guilt in that the trial Court Judge had inserted his own personal opinions as the basis for finding,,,,defendant guilty of the charge of Attempted Armed Robbery, he as can be seen by a casual review of the trial court record from the start of the case whereby he presided over proceedings, Petitioner points out that he was in the trial court of Cook County denied of his Constitutional Rights to Due Process by the Judge, Ronald Himel, whom during trial court proceedings committed some of the acts which led to the Cheif Judge, Timothy Evans, announcing Himels leave of absence on Wednesday May 8th,2002, (***Note the attached Newspaper Article of the trial Courts Judge Himel, dated May 9th,2002) the antics which led to his departure are the same acts of Misconduct that were displayed upon the defendant, and of which resulted in the defendant being found guilty in a bias manner, Judge Himel failed to apply the applicable case law to the facts introduced in the trial and he failed to make sure that the States Attorneys office release to the defendant relevant discovery material that was applicable to the case, as noted the Chicago Police failed to promptly submit to the Courts a host of documentation revealing why the defendant was not properly brought forth to his first appearence hearing when the case first started out in the lower courts, Judge himel disregarded the United States Constitution and the Rulings made by the United States Court, that stated that a defendant must be given a hearing to determine probable cause in no more time than 48 hours, the United States Supreme Court Ruled that the Police in arresting a suspect could only hold that person for 48 hours, unless exceptional "Extraordinary circumstances" were present, in the defendant case none were ever shown and the facts in regards to the dfendants arrest and holding for "120 hours or more, a total of $5\frac{1}{2}$ days before being taken in front of a judge undermines the law that was Ruled on by the United States Supreme Court, and because the court failed to explore the issues in regards to defendants absence for more than 120, hours after arrest, a remandment must be granted to determine the facts which are only known by the people responsible, Petitioner states that said facts were and are still an issue which requires further investigation, Petitioner states that during his arrest he was taken to one police station, then another one, then to another all while he was healing from injuries sustained at the hands of Police, whom had taken him into custody as well as other unknown officers/detectives who had been at other stations whereby he was transferred to without justification nor authorization from a higher ranked official of the department, These facts were in the Post-Conviction Petition and as well was brought to the attention of the Court at the very start of the entire case but was always looked over and neglected by the trial court judge, then the States Attorneys personnel, and then by his own attorney, Charles G. Murphy, whom performed poorly and inadequate, and ineffective the facts in regards to the court not appllying the applicable case law to all of the issues raised here in the Heabeas Corpus Petition that were raised in trial, and also in the appellate Courts and the Supreme Court are fully set forth in the pages that follow, which specifically reveal that all of the courts thusfar have unreasonably applied the leading case law to the facts of the case, and have thus failed to uphold the standings in regards to the case law and the circumstances of the defendant's case which started out in a improper manner, after arrest, facts are specifically shown in memorandum form that specifically state the case law as it should have been applied to, the defendant requesting Habeas Corpus relief,.

### ***NOTE THE FOLLOWING FACTS***

Said following facts in memorandum form reveal that the defendant/Petitioner had and still has a outstanding claim that was never properly reviewed during any of the lower Court proceedings that occurred in the State of Illinois, as noted in the Post-Conviction Petition that is attached the first issue addressed in said Post-Conviction Petition was unreasonably disregarded, and ignored by all of the Judges and Courts which the Petition was placed before, Note the following.

1    The Illinois compiled statues 725 LCS 5/109-1 state that a person arrested with or without a warrant shall be taken without unnecessary delay before the nearest most accessible judge in the county. Facts are that this procedure was violated contributing to the first set of defendant rights to state and federal mandates under the Supreme Court ruling found in [1] Gerstein v Pugh 95 S. Ct. 854, 420 U.S. 103 (U.S. Fla. 1975). * Supreme Courts ruling found in, [2] Albright v. Oliver 114 S. Ct., 807, 510 U.S. 266, (U.S. Ill. 1994). [3] Willis v. Bell, 726 F. Supp. 1118, United States District Court N.D. Illinois, Eastern Division (1989). [4] Jenkins v. Chief Justice of District of District Court Department, 619 N.E. 2d 324, 416 Mass. 221, [5] Supreme Judicial Court of Massachusetts, Suffolk, (1993). [6] U.S. v. Fernandez Guzman 577 F.2d 1093, United States Court of Appeals, Seventh Circuit, (Ill. 1978). [7] County of Riverside v. McLaughlin, 500 U.S. 44, 111 S. Ct. 1661 (1991). Rulings are stated that a prompt determination of probable cause is to be afforded a defendant and extended pretrial detention is not warranted without sufficient justifiable cause, quote Gerstein, states that reasons such as investigation of other crimes without probable cause or warrants directly infringes upon a defendants rights not to be held in extended detention, to do so causes a violation to the defendants fourth amendment rights, as a guide defendant points to the case of Willis v. Bell (N.D. Ill 1989) as the District Court stated that, holding someone indefinitely to build a case is not a permissible reason to withhold a prompt determination of probable cause hearing to allow any such policy by the Chicago police Department would clash with the rulings of the stated courts, supreme and appeals and etc... Justice Scalia stated in his dissent of County of Riverside v. McLaughlin 111 S. Ct. that absent extraordinary circumstance, it is an "unreasonable seizure" within the meaning of the fourth amendment for the police, having arrested a suspect without a warrant to delay a determination of probable cause for the arrest either (1) for reasons unrelated to arrangement of the probable cause determination or completion of steps incident to arrest or (2) beyond 24-hours after the arrest.

In Willis v. Bell, (N.D. Ill 1989), accordingly, we hold that the fourth amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

****    The facts above are facts that was shown in regards to the Petitioners arrest and unlawful holding in custody by the Chicago Police Department, these facts were never addressed fully and this is where the first set of Constitutional State and Federal Violations occurred to the Petitioner whom presents the issues on Habeas Corpus, The State Court of Illinois has disregarded the United States Supreme Courts rulings stated in Gerstein V. Pugh, 95 S.Ct. 854, 420 U.S. 103, (1975) there wasnt any consideration of this important issue introduced.

******** now Note more facts regarding ********
the Initial Court procedures

2     In Illinois, the criminal statues and procedures state that at the initial appearance of the alleged defendant charges must be filed article 111. Of the criminal procedures of the state of Illinois, 725 ILCS 5/111-1 are the methods of prosecution, which states, when authorized by law a prosecution may be commenced by:

a)     a complaint;
b)     information
c)     indictment

Now 725 ILCS 5/111-2 states the commencement of prosecutions which in the case at bar the commencement of the prosecution was brought forth by way of a criminal complaint, under 725 ILCS 5/111-3 which is a form of charge that shall be in writing and allege the commission of an offense by:

1     Stating the name of the offense;
2     Citing the statutory provision alleged to have been violated;
3     Setting forth the nature and elements of the offense charged;
4     Stating the date and county of the offense as definitely as can be done; and
5     Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty. Section (B) of 5-111-3 states that an indictment shall be signed by the foreman of the Grand Jury and an information shall be signed by the state's attorney and sworn by him or another.

•     A complaint shall be sworn and signed by the complainant; defendant points out that at the initial appearance in the proper court that the state's attorney assistant, present and file a criminal complaint with the court, yet the filing of the complaints are to be done in conformity to certain standards of governed rules: In the Supreme Court case of [8] People v. Harding 216 N.E. 2d 147, 34 Ill. 2d 475 (Ill. 1966). Its decision was that the court has or has consistently required a sworn information or complaint, or an indictment as a prerequisite to the issuance of an arrest warrant. To comply with section 6 of the Bill of Rights, and the laws of this state as construed and announced in the foregoing decisions, either the information itself must be sworn to or there must be a sworn complaint or an affidavit charging a violation of the law before a warrant can issue."

In the course of this opinion, however, the court also stated: The only other instance where an arrest or seizure is at all justifiable is where an offense is committed in the presence of the officer of person making the arrest, and in such case there must be a sworn complaint or indictment before trial to set the machinery of law in motion. The Harding Court went on to state that, Ill. Rev. Stat. 1961 Chap 38 which is anew under 725 ILCS 5/111-3 (B) that a complaint must be verified in order sustain a criminal prosecution, the code continues the statutory requirement of a sworn complaint.

\*NOTE, in [9] People V. Collins 387 N.E. 2d 995, 26 Ill. Dec. 165, 70 Ill. App. 3d (Ill. App. 1 Dist 1979) the statutory requirements must be adhered to, in that on presentation of a complaint at the first appearance a judge (magistrate) must examine the person presenting same, in the case at hand that would be the alleged victims whom signed the complaints it is stated on each complaint that \* I have examined the above complaint and the person presenting the same and have heard evidence thereon, and am satisfied that there is probable cause for filing same. Leave is said to file said complaint. Warrant issued or summons."

- IN U.S. v. FERNANDEZ-GUZMAN (C.A. 7 (Ill.) 1978) Rule 5 (a) was amended in 1972 to read in pertinent part: (a) ... if a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4 (a) with respect to the showing of probable cause. In the federal system officers are required to swear out complaints showing probable cause before a judicial officer, "Without unnecessary delay," after a warrantless arrest, that is at the initial appearance.

  In People V. Guzman it was state that while it is often true when, probable cause is found to be lacking at a post-arrest determination, the arrest is itself is also found to have been made without probable cause, it is not necessarily so. \* Obviously, if a post-arrest review results in a finding of no probable cause, government detention must end whether or not the arrest was actually valid.

  In the case at hand and at bar, the defendant was not brought forth without unnecessary delay following a warrantless arrest, when he was brought into a court, complaint were [presented, yet not one of the alleged victims (complaints) ever went before a judge to swear to the complaint, fact is none of the signatures appearing on the complaints are by the complainants.

3    None of them where its signed are of the actual alleged victims, and the procedures of examining the alleged victim complainants or a factual witness to the alleged crime has never been done by a judge in the 1st official appearance nor any thus far, which is by far a direct violation to the defendant state and federal constitutional rights. In Gerstein V. Pugh 420 U.W. at 114, 95 S. Ct. at 863 (Holding that the fourth amendment, as applied to the states through the due process clause of the fourteenth amendment, "requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.")

  Petitioner points out that the procedures mentioned were
  never conducted according to the stated Statutes shown and
  that such failures to conduct procedures specifically and
  in accordenece to establish law is widespread in Cook County
  Petitioner states that the following facts in memorandum are
  facts which he requested be reserved in his Post-Conviction
  Petition yet the courts never considered them nor did counsel
  attempt to bring these issues to the Courts attention.

- The defendant points to various case law of the supreme court, the appellate courts and districts of the state of Illinois and they are all in accord and state the proper procedures for complaints in the State of Illinois, [10] People V. Barlow 350 N.E. 2d 554, 39 Ill. App. 3d 544 (Ill. App. 3 Dist. 1976). [11] People V. Billings 367 N. E. 2d 337, 9 Ill. Dec 903, 52 Ill. App. 3d 414 (Ill. App. 1 Dist. 1977. [12] People V. Pierce 216 N.E. 2d 120, 34 Ill 2d 382 (Ill. 1966) S. Ct. [13] People V. Childress, 276 N.E. 2d 360, 2 Ill. App. 3d 319 (Ill. App. 1 Dist. 1971). [14] People V. Jenkins, 315 N.E. 2d 269, 20 Ill. App. 3d 727, (Ill. App. 1 Dist. 1974.)

Defendants points to [15] People V. McCall (1963), 42 Ill. App. 2d 295, 297, 192 N.E. 2d 257, 258, that court held that where one person appears as complainant, another signs, and there is no verification: The concurrence of the three errors is sufficient to these devitalize the document as an information." As can be seen here the defendant at bar is objecting to the original tool of prosecution and is not waiving that right. [16] People V. Brausam, 227 N.E. 2d 533, 83 Ill. App. 2d 354, (Ill. App. 2 Dist. 1967) it the court held that a defendant who does not waive, by plea of guilty or by proceeding to trial without objection, the defective verification of a complaint, is entitled to be prosecuted upon a complaint which states upon oath of the complainant the facts constituting the offense charged.

In [17]Village of Willowbrook V. Miller 217 N.E. 2d 809, 72 Ill. App. 2d 30, (Ill. App. 2 Dist 1966) as discussed in this case the verificaiton of a complaint as a prosecution commencing document, however, has always been a statutory requirement, the requirement being now set forth in article 111-3 (b) of the code of criminal procedure of 1963, Suprra. The Statute simply provides that the complaint shall be sworn to and Signed by the complaint:

Now former chapter 38, Sec 107-9 (B) (4), of the Ill. Rev. Stats 1963 amended by P.A. 87-523, 1 eff. Jan 1, 1992 which is now 725 ILCS 5/107-9 (B) (4) requires the same procedures as in the federal 4 (a) and 5 (a) complaints it states that when a complaint, defined as a verified written statement other than an information or an indictment which charges the commission of a offense, is presented to a court, the court shall examine upon oath or affirmation of the complainant or other witnesses.* The definition of the word "complaint" in article 102-9 as well as the form of complaints as contained in article 107-9 (B) (4) Supra, both contemplated that the complaint shall be subscribed and sworn to by a complainant at the time it is presented to the court. As with [18] People V. Bradford, 338 N.E. 2d 182, 62 Ill. 2d 21, (Ill. 1975) a supreme court case the defendant at bar raises this issue and objects to same timely.

The issues presented in [19] People V. Wotchko, 219 N.E. 2d 371, 74 Ill. App. 2d 151, (Ill. App. 5 Dist. 1966) the Defendants convictions could not stand when no formal charges appeared to have been filed against them, since no complaint, information, or indictment had been filed in the case.

\*    NOTE, This is the legal argument the defendant brings forth, the procedures of the criminal compliant being not held in conformity to statutory guidelines and the bypassing of procedures to ascertain probable cause, the illegal signing by someone other than the complainants is held invalid, no prosecution can be allowed to continue past the point of the 1st appearance, doing so as is the case here is an injustice that has violated state and federal law.

Petitioner and Habeas Corpus defendant now specifically addresses the U.S. District Court and directs such to review the evidence in the form of the actual documents that was produced by the Chicago Police and the States Attorney of Cook County, at his first appearence hearing where he was brought some 5 days later after his arrest, the facts in regards to such very late and improper and unreasonable presentation of the defendants case was shown in the Post-Conviction Petition and the State Courts never actually reviewed the claims of a Constitutional Violation of Federal law, the exhibits that are attached reveal that the Chicago Police were in fact conducting their investigation of the alleged crime, yet it must be remebered that the defend- ant was arrested without a warrant and the facts in regards to probable cause had not been at the time of his arrest established, it must be recalled that the arrest occurred to the defendant because as stated in reports that he had been seen running, yet one must also recall that the Police said they received a flash message over the radio, which gave the discription of the vehicle that the defendant had left the scene of the alleged armed Robbery in, with this being said one must consider that the police officers whom stopped the defendant on the street didnt have concrete evidence of an Identification and that they were acting on mere possibilities instead of proper probable cause, facts contained in the police reports were manipulated while the defendant was being held in Illegal custody, defendant points to the evidence in the form of the Police reports that was introduced in the record as proof that they were drafted sometime after his arrest and after the police fabricated its summary of facts , because at the time of the defendants arrest they didnt know what had occurred at the actual scene where the alleged crime is said to have happened, the police while holding the defendant at different Police stations made up their case reports to reflect what they thought the evidence should have showed, and defendant states this was done in order to support their illegal arrest which was done without a warrant nor probable cause, the defendant states that in the Exhibits shown starting with Exh-A, which is 5 pages of police reports two being the same, only that one is made without all of its summation of facts contained in it, that these reports as can be seen give inaccurate information in them that didnt match testimony that was given in open court, yet the defendant states that the purpose of showing the police reports is for revealing the facts in regards to what was stated as the basis for the original arrest and how it occurred, Petitioner states that all of the facts shown in these reports were fabricated period.

Petitioner and habeas corpus defendant states that the issue of the police that
held him in custody in, prolonged and unreasonable manner was specifically not
addressed as can be seen in the order of the court of Cook County, that is the
order that was made in regards to the Post-Conviction Petition that was filed on
December 2nd 2004, Petitioner points out that the Legal Standard to determine the
effectiveness of counsel is as follows; The anti-terrorism and effective death
penalty Act of 1996, 28 U.S.C. sec 2254 (d) ("AEDPA"), governs this courts, the
Federal Courts consideration of Petitioners case. Holman V. Gilmore, 126 F.3d 876,
(7th Cir. 1997) In United States ex rel. Gaines V. Gilmore, 1996 WL 427612 (N.D.
Ill. 1998), this court described the standard of review under the AEDPA.
Any claim adjudicated by a state court on the merits is governed by 28 U.S.C. sec.
2254 (d), under which habeas relief may be awarded only where the state courts
adjudication of petitioners claim: (1) :resulted in a decision that was contrary
to, or involved an unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States: or (2). "resulted in a
decision that was based on a unreasonable determination of the facts in light of
the evidence presented in the State court proceeding." 28 U.S.C. sec 2254 (d) (1)
-(2). The first phrase of sec 2254 (d) (1) authorizing habeas relief when the
State courts decision is contrary to "clearly established Federal law as determ-
ined by the Supreme Court pertains only to questions of law. Lindh V. Murphy, 96
F. 3d 856, (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320, 117
S. Ct. 2059, 138 L. Ed. 2d 481 (1997).Petioner points out that the second phrase
of section 2254 (d) (1)-authorizing Habeas relief when the state courts decision
"involve an unreasonable application" of clearly established federal law as deter-
by the Supreme Court-pertains to mixed questions of law and fact. this phrase,,,
tells federal courts: Hands off, unless the judgment in place is based on an err-
or grave enough to be called unreasonable. A State courts application of Supreme
Court precedent is reasonable if it is at least minimally consistent with the,,
facts and circumstances of the case. Hennon V. Cooper, 109 F. 3d 330, 335 (7th
Cir. 1997). When the Constitutional question is a matter of degree, rather than
concrete entitlements, a responsible, thoughtful answer reached after a full Opp-
ortunity to litigate is adequate to support [a State Courts] judgment. Lindh, 96
F. 3d at 871. Thus "[t]he statutory unreasonableness' standard allows the State
courts conclusion to stand if it is one of several equally plausible outcomes."
Hall V. Washington, 106 F.3d 742, 748 (7th Cir. 1997) In other words if a state
court asks the legally correct question [such as] whether the trial judge abused
his discretion [then] the fact-specific answer cannot be called 'unreasonable ev-
en if it is wrong...Lindh, 96 F. 3d at 867-77. Petitioner states that as is shown
A claim of ineffective assistance is a mixed question of law and fact. Strickland
466 U.S. at 698, 104 S. Ct. 2052, meaning this courts review of the state court
decision is de novo. Hall V. Washington, 106 F.3d 742, 748 (7th Cir. 1997) Under
the AEDPA, however, the court must answer the more subtle question of whether the
State Court "Unreasonably appilied clearly established federal law as the Supreme
Court has determined it."Petitioner Kevin Patterson, states that the Cook County
Circuit Court failed to even consider the clearly established federal law and it
is shown in the defendants first issue regarding the Unlawful and unreasonable
as well as un-explained substantial delay of the defendants first appearence hea-
ring that was held at the Cook County Courthouse some 5 days after the arrest, it
is a issue which reveals that the State Courts failed to properly consider and it
also was a issue that revealed defendants trial attorney's ineffectiveness, said
case law from the United States Supreme Court has established that a defendant is
entitled to a first appearence probable cause hearing with 48 hours after arrest
yet the State courts failed to take notice of the defendants 5 day absence, and
it failed to take notice that counsel for the defendant never challenged any of
the States initial evidence which was gathered during this period of time while
the defendant was being held in several different jails in the chicago area, this
constituted inadequate and ineffective assistance of counsel yet defendant states
that not one of the courts that he has gone before have given such issues any of
the consideration that should have been given to such, the delay was for obvious
reason and that was to build a case on the defendant while he was being held.

Petitioner states now in review the facts that are contained in the properly presented Post-Conviction Petition that was filed in,, the Cook County Circuit Court, said Attached Petition for Post-Conviction Relief revealed a meritable claim for relief and the State courts both the appellate and the State of Illinois Supreme Court failed to properly consider the case under,, the leading case law that was established by the United States Supreme Court, as is shown in the defendants exhibits, numbered, #A,B,C,D,E, & 1,2,3,4,5, and said Post-Conviction Petition is numbered as #3 Petitioner Kevin Patterson states that each of the contentions raised in his Post-Conviction Petition revealed a meritable claim of a deprevation of his Constitutional rights, and that said estabished facts to show that counsel whom represented the defendant in the trial court and counsel whom represented the defendant on the initial appeal and the Post-Conviction appeal all gave unreasonable and inadequate assistance of counsel,.these facts were all contained and specifically pointed out in the defendants Post-Conviction Petition, yet as stated none of the Courts applied the reasonable case law to his, his claims of deprevations of Constitutional Rights, Petitioner now highlights the key facts of why said habeas Corpus Court should grant him relief and remand said case, and as a matter of first impression said defendant states that the case need not be remanded due in part to the facts revealed that show that the Indictment is void  and cannot sustain the judgment made by the trial court, which is shown in the claims presented here in the Habeas Corpus Petition, Kevin Patterson,state that facts establish cause for federal relief and petitioner points out each in a manner that can be easily reviewed and verified. Petitioner states that the issues which are specifically cited in his Post-Conviction Petition that was introduced contained not only the issues regarding his being held in the Cook County Jail,,, for a period of time that supassed the 48 hours (2 days) required, issues was also presented in the Post-Conviction Petition that revealed that the Courts findings of Guilty was premised upon an unreasonable application of law,  and,,, the trial Court comitted error in ruling that the evidence produced specifically showed a crime of Armed Robbery had been comitted by the defendant, and this finding by the trial court revealed it, the Courts own prejudiced against the defendant whom was officially charged with Attempted Murder, which is subsequently dropped, and a aggravated discharge of a firearm, 3 counts of attempt armed robbery, 2 counts of unlawful use of a weapon, and 2 counts of unlawful possession of a firearm, said actual verdict brought by the trial court was that the defendant Kevin Patterson, was guilty of three counts of attempted armed robbery, and unlawful use of a weapon defendant petitioner states that the issues raised on the Post-Conviction was never properly adjudicated by any of the Courts that reviewed the case, and said has resulted in his rights under the United States Constitution being violated in several respects, and that because of procedural issues being grossly neglected Habeas Corpus review is warranted, Petitioner points out that the facts presented thusfar in this petition for habeas corpus relief substaniate his claims and that it has been specifically shown that he has exhausted his State Court remedies, as is a mandatory procedure before bring a federal claim, Petitioner states that it has been shown that there is either an absence of available state corrective process, and or that there exist circumstances that render such corrective process ineffective to protect or redress his Constitutional rights, protectible liberty interest, and claims of deprevation, Petitioner states that starting from Exhibit A, through Exhibit number #5, actual proof of the state courts failure to apply the proper case law is presented, Petitioner states that it has been shown in the previous pages how the State courts failed to acknowledge the issues in regards to the initiation of his prosecution, yet petitioner points out that facts which were also brought to the courts attention regarding the Police reports being made in a fraudulent manner hasnt been ruled upon proper either, it is shown in the defendants exhibits A-pages 1-5, that incomplete reports were somehow found in the defense's file, and this substantiated the assertions made by the defendant as is shown in the Post-Conviction Petition page, 3, 6, and 7, 8, 9, specifically  facts shown in defendants Exhibit-A  pages 6-40, reveal that the defendant was improperly held by the Chicago Police department, page 6 of exhibit A, is an article that was printed in the Chicago Sun-times newspaper that truely underscores the Violations comitted.

Petitioner states that the facts as presented in the Post-Conviction Petition has
as stated many times been unreasonably denied a proper review, as shown in the
defendants exhibt A-page #, which is the article taken from a chicago newspaper
which specifically affirmed that a defendant must be taken in front of a court in
no less than 48 hours, Petitioner states that the issue was ruled on partially by
the trial court judge in his Order denying the defendant of Post-Conviction reli-
ef yet as can be seen the review was poorly performed by the Judge, Note page 6,
of exhibit #3, which is actually page 4, of the Order given by the trial courts
Judge, Daniel Darcy, of the Cook County Circuit Court, said order first addresses
the issue that defendant brought forth concerning his delayed first appearance,it
is revealed that the Honorable judge Darcy, only made mention of the issue just
to show that he did in fact acknowledge that it existed, yet what the defendant
states is that by the judge not reviewing the claim as presented as a whole, as
the petition set forth, the court unreasonably determined that the issues was in
his mind without merit, this form of Post-Conviction review prejudiced the Pro-Se
Petitioner outright because the trial court never took into consideration facts,,
presented that showed the issue stated the Gist of a constitutional claim, said
one paragraph answer that only asserted its decision being that the attorneys own
decision not to file a Motion to Suppress was trial strategy was in error, because
the issue of the defendant not being brought forth on his first appearence court
hearing went deeper than just defendant being held late, evidence was never even
reviewed as to the reasons why the defendant was late, the trial court failed to
even consider that the affidavits presented by the defendant stated viable claims
that the defendant was being held secretly by the police and that the police did
not even let his family know of his whereabouts, and one must not forget that the
defendant presented evidence of Misconduct to his attorney whom failed to proper-
ly investigate the entire matter of his unlawful holding at different stations,it
the judges order on the post-Conviction Petition, failed to address the concerns
of the defendant, ruling that the evidence which was presented by the state show-
ed that the defendant had been found at the scene of the alleged crime, it has as
know been shown in the first several pages of the Habeas Petition how procedural
issues have been bypassed regarding the evidence, and this was done in the early
stages of the prosecution while the defendant was being held unlawfully, said 5,
pages of the Police reports reveal that Defendant?,was arrested after he was said
to have fleed from officers after they were flagged down by one of the alleged,,,
victims of the crime, and in the report that is numbered page 4 & 5, the narrative
states that officer Campbell witness the defendant rummaging through a desk draw,
the testimony of this officer that was given on the date of November 14th,2001,
Transcript B-page 6 & 7 reveals that the officer in court stated that he seen the
defendant with some stuff in his hands and that he dropped such back into the desk
draw, and then ran down the hall and out the back door, yet on page B-14 & 15 of
the trial transcripts of November 14th,2001, said officer campbell testified that
he could not tell whether or not the defendamt was actually rummaging in the desk
draw, and he stated that the defendant had what appeared to be a bag in his hand
yet what is known is that when asked did he or anyone open or close the desk draw
after the defendant left the premises he stated knowone had touched the desk, and
it must be noted that the pictures used as evidence showed that no desk draws at
all were even open, disputing the testimony that the defendant was in the desk.
Yet Petitioner states that this has only been pointed out to bring to the Habeas
Courts attention that the trial courts ruling on the issues regarding the delayed
first appearence hearing wasnt properly reviewed and the court comitted error as
it never considered specifically the flagrant Misconduct of the Police Department
instead it considered the alleged evidence written in the police reports and that
was testified in open court by the States witness Officer Campbell, said Post-Con
viction Petition was and is full of meritable facts that state a Constitutional
claim regarding the testimony on the issue cited by the trial court judge, yet it
is stated by the defendant that none of the judges reasons for saying the claim
was without merit exist, and the ruling was contrary to established law, due in
part because the trial court judge didnt consider the issue under established law
as with any case, where it is shown that a defendant is brought forth to a first

appearence hearing so that it, can ascertain why the defendant was brought forth late. ****the defense counsel as stated in the Post-Conviction Petition gave inadequate and ineffective assistance of counsel due to his failure to file a Motion for suppression of evidence that as is known was placed on the defendant, even thought this evidence was not found in the defendants exclusive possession, plus there are alleged statements shown in a series of police reports that the police said the defendant made after arrest when he was being held unreasonably at one of several different police departments this being known by the defense counsel, and never being challenged supports that said defendants constitutional claim of ineffectiveness should have survived and facts were shown in the Post-Conviction Petition that reveal; that the police acted in a unprofessional manner when they arrested him without a warrant and without probable cause, facts were presented that showed the police placed the defendant in a one man showup identification process after he was arrested on information that was as stated given by the alleged victims to police whom in turn passed the information on to other police officers over the police radio, these facts expressed were on there own enough facts for an attorney to challenge, and no reasons has surfaced which negate that a Motion to suppress would not have been granted in the trial, court, yet for the purpose of the Habeas corpus petition defendant shows that the Courts order and review of the first issues presented in the Post-Conviction Petit-ion were not adequately nor sufficiently reviewed, and federal review is warranted. Defendant Petitioner states that the purpose of the Habeas Corpus is to show that the State Courts improperly and unreasonably neglected to review his case in the manner that is described by the laws of the United States, petitioner states that *claims of ineffective and inadequate assistance of counsel were never conducted by the State courts and it is known that usually on a habeas corpus petition that the Federal Courts reviews and (examines the decision) of the last state court to rule on the merits of the issue. Schultz V. Page, 313 F.3d 1010, 1015 (7th Cir.20 02). and it is known that section 2254 (d) sets out a highly deferential standard for evaluating State-Court rulings." Woodford V. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed. 2d 279 (2002) Petitioner points out that the last state court to rule on his case was the Supreme Court of the State of Illinois, and that said Court ruled on a Petition that was filed by the State Appellate Defenders office employee A.A.D. (Assistant Appellate Defender) Debra Loevy-Reyes, whom only filed a Petition that contained one issue which was; That Kevin Pattersons Post-Convict-ion Petition contained the quintessential allegations stating the Gist of a Claim of denial of the right to testify, this was the only issue presented by appellate defender, Loevy-Reyes, and it is shown in the defendants Post-Conviction Petition that his representation was an issue, and the defendant points out that even after his post-conviction petition was filed his representation was still questioned in that by only filing one issue she neglected his other issues that were meritable the fact is that in the Post-Conviction Petition defendant alleged facts that he was given inadequate and ineffective assistance from the two attorneys that had work on his case before she Debra Loevy-Reyes, had been appointed, petitioner in all of his pleadings thusfar produced by him in a Pro-Se manner reveal that he was not given adequate and effective assistance of counsel, and Petitioner states that even the last pleadings that was ruled on in the Supreme Court of Illinois and as known that was filed by a State Appallate Defender showed that he had in fact been given ineffective assistance, specifically defendant states that issues which he raised merited review and supported that he had in fact been denied of the right to effective assistance of counsel under the United States Constitutions 6th Amend. and that the State courts decision was contrary to established law regarding the claims of ineffective assistance of counsel under the Strickland Standards. facts show that the State Appellate Defender, didnt place in her last produced Petition any of the defendant issues that he produced in his post conviction petition, and that this resulted in the court not having an opportunity to rule on the merits of all of his contentions, Petitioner states that this was intentionally done, due to the fact that each of the issues he raised in his Post-Conviction revealed that a improper and very unreasonable conviction had been obtained by the Cook County,,, States Attorney's office, on an Indictment that was procured Illegally.

Petitioner states that against the Court Rulings was that he was not given all of the issues that were raised in the Post-Conviction Petition and that because of this he was directly prejudiced and denied the rights to have these meritable and sufficient claims ruled on by the last State Court of Illinois, Petitioner points back to the Order of the Courts and specifically again shows the Habeas Court with the exhibits that errors were overlooked that warrant the granting of Habeas relief Petitioner states that on page 20 he specifically pointed out that the courts had failed to review the issues in regards to his unlawful and unreasonable delayed 1st appearence hearing, Petitioner states that this issue was purposely neglected any form of review by each and every attorney that has thusfar been involved with his case and that this was done deliberately because it showed that the courts have in a manner that is inconsistent with Federal law have condoned the acts of denying a defendant of the proper probable cause determination after an unwarranted arrest. Petitioner now reverts back to the actual exhibits that he has attached to the Pro-Se Habeas Corpus Petition, and points out that in defendants Exhibits A-pages, 7-page 40 which is the Chicago Police departments arrest General Order, or to state it properly said exhibits are the General Order, regarding the Processing persons under department control, said defendant states and specifically incorporates the facts in regards to the General order into this Habeas Corpus Petition because the Courts failed to inquire into the procedures which would have shed some light on one of the biggest problems associated with the defendants case thusfar, facts are specifically shown in the defendants Post-Conviction Petition that show that issues were cited revolving around the defendants delayed first appearence hearing, facts of law support that the issue should have been addressed, yet it wasnt, and this alone supports that the defendant was given inadequate and ineffective assistance of counsel, Petitioner states that the Habeas Court must not only look at the last ruling made on his case, because the last ruling was in fact a ruling that only,, specifically looked at the Petition for leave that was filed by the Appointed Asst., Appellate Defender, Debra Loevy-Reyes, whom only submitted the issue regarding the failure of trial counsel to allow the defendant to testify in trial, this shows a whole set of facts that must be reviewed on Habeas review, and that is that the defendant was prejudiced because of the failure of appellate counsel to place in the Petition the other specific contentions of the defendant, one of which is the very first issue regarding the first appearence hearing, no reason for said facts not being brief and or argued are shown, and all of the courts thusfar that reviewed the Post-Conviction Petitions issues have never ruled properly on such issue.

Said Facts regarding the last Court<br>to rule on the P.C. Petition

Petitioner states that the Supreme Court of the State of Illinois returned its 1, page ruling on the Petition for Leave to appeal, and in its order nothing appeared besides that the court has denied leave to appeal, Petitioner states that such is not a order which he can properly construe the courts decision on, yet that said order must be looked at as that the Supreme Court had decided the issues didnt at all contain any merit, so this leaves the defendant having to address the rulings which the appellate court of the First District of Illinois made on his Petition and this specifically leaves the defendant to argue that all of the issues which were raised in the Petition contained merit and the rulings made by the appellate court were in error and unjustified, Petitioner states that even though the appeal was denied the order that was made on it was unreasonable and contrary to establi-shed law, and this is highlighted by the ruling that was made by the Supreme Court of the State of Illinois, yet Petitioner states that this state law cannot rule out the law as ruled on by the United States Supreme Court,Petitioner points out that the issue regarding his wanting to testify and being denied that right from his own attorney is an issue that cannot be overlooked as the United States V.,, Martinez, 883 F. 2d 750 (9th Cir.1989) which supported the Supreme Courts of the State of Illinois conclusion that the trial court is not required to advise a def-endant of his right to testify, this point was argued by the counsel for defend-ant Kevin Patterson, whom filed in her brief that the defendant was denied his,, right to testify because of the trial counsel actions.

(22).

Petitioner points that⬤he last State Court to rule⬤ his case was that of
the Supreme Court of Illinois whom ruled that Petition for leave was denied
this order was entered on the date of September 27th,2006, Petitioner states
that said facts that were presented by State appellate defender, Debra Reyes,
were facts that warranted relief, and that the courts ruling was contrary to
establish law, Petitioner points out once again that the issue that was cited
specifically dealt with, whether the defendants rights to testify was denied
due in part to his own attorneys actions of walking away from him after he
stated to counsel that he wanted to testify, the actions of the defense coun-
sel walking away and then stating to the Court that defense rest, and then
argued for the defense after the fact cannot be sound strategy, and this form
of conduct by the defense counsel resulted in the defendants rights being as
was brought forth by appellate counsel, ineffective assistance of counsel, it
was properly presented to the Supreme Court of Illinois facts that showed a
"Gist of a Constitutional claim, and the appellate court ignored well-settled
appellate court law, and disregarded the clear dictates of the Supreme Court,
and as appellate counsel pointed out, the ruling imposed an illogical and as
shown new pleading requirement, Petitioner states that the case should now be
reversed and remanded back to the trial court because the actions of defense
counsel violated his Constitutional rights to due process of law, and denied
him of a fair trial, by not allowing him to testify and present facts which
upon examination would have negated the States evidence, Petitioner points to
the fact that the case of People V. Medina, 2006 Ill. Lexis 1085 (Docket No.
#100437, June 2,2006) which was decided two days after the order was issued
supported the facts that he has presented and the Medina, case cited that it
is impermissible to require a dialogue between the trial court and a defendant
about the defendants right to testify because such a discussion interferes,,
with the attorney-clien privilege and could improperly influence a defendants
decision about whether to testify, Petitioner states that the Courts ruling
directly conflicted with what the supreme court has stated should not be done
and petitioner states that there seems to be a two sided coin used by the as
shown by its denial of leave to appeal the (Supreme Court) of Illinois, which
specifically pointed out that a decision whether to testify is one that must
be made by the defendant, it appears that the defendants rights to due process
has been violated due in part because of the State Supreme Court and the first
District appellate courts rulings, rulings that goes against its own grain.
Petitioner states that the ruling that has been shown to be contrary to estab-
lished law isnt the only reason that he must be given Habeas Corpus relief, a
casual look at the Petition that was last produced and submitted to the Court
(Supreme Court of Illinois) although it raised a issue that the defendant had
been denied a fair trial in the Cook County Circuit Courts, it failed to show
other crucial errors which the defendant states would have shown that the pro-
secution should not have taken place at all due to violations of defendants
rights that would have precluded the States Attorneys office of Cook County
from proceeding with their charges against the defendant, Petitioner states
that the Habeas court must take into consideration the facts that defendant
raised in his procedurally sound Petition for Post-Conviction Relief, because
meritable claims were presented in the Petition, and all of the Courts that
have reviewed the claims brought forth have failed to not only review issues
that were raised in the Petition itself, they have failed to review the court
records (Common Law Records) and the transcripts of the proceeding that took
place in the Cook County Circuit Court, Petitioner states that it must now be
reviewed the facts which he has previously presented in the initial pages of
this Petition for Habeas Relief, page, 21, of the Petition stated in the below
and bottom sentence that the Indictment was procured Illegally, Petitioner now
points out that the facts have been improperly overlooked, and disregarded,
and must now be reviewed properly by the Habeas Court.

Petitioner presents facts that reveal that Habeas Corpus Relief should be granted due to the specific facts that reveal that the Indictme● was brought forth in a manner that was Illegal and the State of Illinois Cook County Prosecutors office intentionally and deliberately have neglected the Rights of the Defendant whom is imprisoned on processes which should not have been before the Circuit Court. The Indictment which was produced and returned by an alleged legal Grand Jury as can be seen was brought forth because as stated in the transcripts (Exhibit # B ,) it stated that the witness whom appeared named Paul Greenan gave testimony, this is not disputed by the defendant/Petitioner, yet what is disputed is the fact that a True Bill of Indictment was not returned with *** the witness whom appeared name on it, what is shown in the signature spot is the name of the foreman, and above it contains the name of the witness whom it is known supposed to have been put,, before the Grand Jury giving testimony in order to obtain a true bill, yet shown is the name of one officer/Detective, Kevin Dwyer, no excuse for such name being on the True Bill has been shown, yet what is known is that prior acts committed by the States Attorneys'office have been in the past uncovered which revealed that a office personnel and or personnels have enjoined in actions of producing improper Grand Jury Documents, which entails "Misconduct" what is revealed in the case of People of the State of Illinois -Vs- Kevin Patterson, is that the State Prosecutor of Cook County has a pattern of abuse when it comes to matters that involve Grand Jury processes, and such abuse has resulted in the defendant/petitioner being in a illegal manner prosecuted on an Indictment which was returned without testimony being given by its stated witness; Detective Dwyer, ***Note no true bill was ever returned nor signed by the foreman of the Grand Jury which officer Greenan is said to have testified in front of, as is shown by the transcripts, (Exhibit #____ ), a huge and very serious miscarriage of justice has been allowed by the Cook County Circuit Court, and no attorneys for the defendant has ever properly reviewed any of the documents to detect the flaw, which is not just a mistake on behalf of some clerk or other office personnel for the States Attorney's office, this is because there isnt any reason for said personnel to make such a mistake being that only,, one witness appeared before the Grand Jury, and it cannot be shown where the staff of the Cook County States Attorney's office would have had Detective Dwyer's name if he wasnt to appear before the Grand Jury, what is known is that officer Greenan appeared, and no true bill was given for his testimony, this infers that Miscond-uct has occurred before the Grand Jury, and or that a violation of the processes has been neglected and overlooked by all involved with such, in any case the true bill of Indictment that was signed and as stated returned by the Grand Jury doesnt contain any form of record (transcript) which supports its existence, no form of evidence being introduced by Detective Dwyer has surfaced, and no transcript of his testifying before the Grand Jury can be found which supports that the Indictment,, that the defendant was prosecuted under is obsolete and cannot sustain the States conviction which was procured under the Indictment contained in the record. It is now specifically shown by the Pro-Se Petitioner facts that reveal that he has been incarcerated on processes that was improper and void, due in part because the true Bill of Indictment that was procured by the Prosecutors of the Cook County Circuit Court was procured without testimony being introduced to the Grand Jury whom had returned the bill itself, and this testimony should have came from the witness as shown whom is named on the true bill, the facts are simply stated and this form of conduct has been recongnized before as the United States Supreme Court has once rule on such issues and it was in the case of; State of Illinois V. Somerville, 93 S.Ct.1066, 410 U.S. 458, 35 L.Ed. 2d 425, (United States Supreme Court, 1973) The Illinois courts have held that even after a judgment of conviction has become final, the defendant may be released on Habeas corpus, because the defect in the indictment deprives the trial court of jurisdiction. The rule prohibiting the amendment of all but formal defects in indictments is designed to impliment the States policy of preserving the right of each defendant to insist that a criminal prosecution against him be commenced by action of a Grand Jury, further in a dis-sent Justice Marshall, stated that This case, in short, presents the novel and unheard of spectacle, of a public officer, whose buisness it was to frame a corr-ect bill, openly alleging his own inaccuracy or neglect, as reason for a second

trial when yes is not pretended that the merits were not fairly in issue on the
first....If this practice be tolerated, when are trials of the accused to end?
If a conviction take place, whether an indictment be good, or otherwise it is
ten to one that judgment passes; for, if he reads the bill, it is not probable
he will have penetration enough to discern its defects. His counsel, if any be
assigned to him, will be content with hearing the substance of the charge, with
-out [410 U.S. 477] looking further; and the court will hardly, of its own acc-
ord think it a duty to examine the indictment to detect errors in it, Many,,,
Hundreds, perhaps, are now in the state prisons on erroneous indictments, who
however, have been fairly tried on the merits. 163 U.S. at 677--668, 16 S.Ct.
1194. I respectfully dissent. Mr. Justice Marshall,

Petitioner points out that the facts that have been stated that were taken out
of a United States Supreme Court case support that the Indictment which was as
stated had been returned in his case cannot sustain a conviction because the
true bill was fatally flawed and procured improperly and in error, and defendant
states that the mistake now must be corrected in the form of reversal of the
conviction that took place, because he has never been held on a indictment that
was procured on the testimony of a witness named Dwyer, and the testimony which
was brought forth before the alleged Grand Jury was brought by a witness named
Greeman (Paul Greeman) #19169, currently no Grand Jury transcripts have ever as
noted by the defendant be shown to exist that reveals the testimony of officer
Dwyer, and this is fatal to the prosecution even now because the defendant has
always attacked the Indictment, it just happen to be that on the date of May
6th, 2007 the defendant had just been tender the copy of the true bill after he
sent a letter to the clerk of Cook County requesting to have documents so that
he could produce the Habeas Corpus Petition, Note Exhibit B- page 1, is the bill
(True Bill) of Indictment which was procured from the grand jury, and exhibit
B-pages 2-13, are the transcript of the grand jury hearing, whereby a witness
named officer Greeman, testified before the Grand Jury, exhibit B-page 14 & 15
is a copy of the envelope that reveals the mailing of said letter Page 15, the
remaining pages of exhibit B, are page 16, the Information/Indictment return,,
sheet, and pages 17-25, are copies of the charges that the state brought forth
nine (9) different charges and or counts, Petitioner states that all of the 9
counts that were brought forth were vendicted charges, and that the States Att-
orneys office comitted "Misconduct in procuring the charges" facts are shown as
stated by the defendant/Petitioner that reveal that a serious issue exist.
Petitioner states that although he has just been made aware of the error that
is pointed out in regards to the true bill containing a name of a witness whom
has never appeared before the Grand Jury, said doesnt preclude him bringing a
justifiable and meritable claim to the Habeas court, defendant specifically as
noted brought a challenge to the court in the form of a Motion in Arrest of Ju-
dgment (Motion in Arrest of Judgment) and the court was aware that defendant
had specifically attacked the Indictment, Petitioner states that the attack as
made wasnt in concern of the witness not appearing before the Grand Jury, due
to counsels failure and neglect to notice the error as shown on the true bill.
Defendant states that it is obvious that counsel in the trial court and also
each attorney (Counsel) on appeal has failed to detect the substantial issues
of the true bill containing the name of a witness whom didnt appear before the
Grand Jury, Petitioner states that no waiver can be considered against him due
to his not obtaining before trial nor afterwards the records regarding the,,,
"Grand Jury" Petitioner states that he has been directly prejudiced by this
form of negligence that was occassioned by the attorneys whom represented him,
and such resulted in him being denied a adequate and sufficient appeal of the
conviction that was brought forth in the Cook County Circuit Court of Illinois.

## SPECIFIC FACTS REGARDING INDICTMENT

Petitioner states that certain errors are shown in the Post-Conviction Petit-
ion that were not reviewed.

Petitioner states that the facts concerning the actual charge that was brought
against him that is contained in the States Indictment cannot sustain the verd-
ict that was returned and made by the judge because for one as shown the States
Indictment was procured by using a witness whom isnt named on the true bill of
Indictment and this is fatal to the instrument used to prosecute the defendant
on, and in the Circuit Court of Cook County, Petitioner states that the States
Misconduct has already been shown in previous cases that involved Indictments
being produced in the States attorneys office by personnel whom work there, it
is specifically pointed out that in the case of People V. Benitez, 169 Ill. 2d
245, 214 Ill. Dec. 490, 661 N.E. 2d 344 (1996) that the states attorneys office
personnel's production of an Indictment, not the original one but a second one
that had included the defendants name on it, attesting that he had comitted a
crime was invalid because the Indictment had never been returned to the Grand
Jury, the Supreme Court of Illinois determined that the prejudice standard of a
case (Gilmore) did not apply because the defendant attacked the Indictment duri-
ng the trial, and not following trial or for the first time on appeal, These are
facts that are known and are present in the defendants case also, Petitioner as
noted in the defendants exhibit C- attacked the Indictment by introducing in the
trial court a "Motion in Arrest of Judgment" (Exhibit C-page 1&2, said attack as
shown in the Motion itself was in regards to the State not placing in the tool
for charging the defendant, the "Indictment" facts which could be relied upon,
defendant attacked the states indictment because it didnt allow the defendant a
opportunity to prepare a defense to the proof that it showed in the court which
was at a total variance to the actual charge brought forth in the indictment, it
is specifically pointed out the case of People V. Benitez,cited above, that the
States Attorneys office of Cook County has comitted acts in the past which goes
to the defendants argument that the Indictment if flawed because the true bill
reveals that testimony the grand jury relied on came from a witness named as is
shown on the true bill, officer Dwyer, no grand jury heard testimony from the
witness named in the true bill, and this is fatal to the indictment for the same
reasons that the indictment was flawed in the Benitez case, facts are that the
States Attorneys office production of indictment in a back room office without
returning such to the grand jury was error, due to the fact that the indictment
added facts that had never been presented to the grand jurors, defendant states
that the facts that are relevant to his case are that the indictment is shown as
being returned on the testimony of the witness officer Dwyer, yet no testimony
of officer Dwyer, was taken nor brought forth in front of the Grand Jury, facts
are presented by the defendant that reveal that this error has never been shown
by any of the attorneys whom have represented him thusfar in the case, and that
no waiver can apply to the issues because it has been stated by the Supreme Cou-
rt that in order for waiver to apply it would have to be shown that the defendant
Knowingly waivered his right to challenge the error, this has never been done in
the defendants case and it has never been shown that the defendant had copies of
the true bill of Indictment before the date May 14th,2007 the date that his own
written request to the Clerk of the Cook County Circuit Court was made to obtain
copies of the Indictment material, defendant states that counsel for the defense
had never in the trial court shared said information with him and he therefore
didnt know that the true bill contained information on it that revealed the very
substantial error of a witness whom didnt give testimony nor apearence before a
Grand Jury, Petitioner states that the facts cannot now be overlooked because a
material fact exist that reveals that he was given an improper review from all
of the courts that have thusfar had the case before them for review, Petitioner
states that the facts are simply shown and reveal that habeas corpus relief is
warranted in the present case of People of the State of Illinois V. Patterson.
It is known that the sufficiency of the indictment was directly challenged and
that the State courts refused to grant the defendant relief as requested, yet it
is shown in the defendants Post-Conviction Petition facts that warrant relief.

Petitioner states that the facts in regards to the Post Conviction Petition he
filed being denied are ⬤ and has not been specifica⬤ and properly reviewed
and that the issues brought forth now support that he should be remanded back
to the trial court to conduct a hearing on the fatal flaw shown in the charging
instrument the Indictment alone, and that as backup the case should be remanded
back because the State failed to meet its Burden of proof on the stated charge
which he the defendant was convicted of, Attempt armed Robbery, facts reveal a
substantial denial of Due Process of Law resulted from the Courts finding of a
guilty to the stated charge, no particular proof of said charges was introduced
and as defendant pointed out the court was presented with a Motion in arrest of
Judgment that attacked the charging tool the indictment, facts are known that a
Indictment is invalid if it isnt brought forth in a manner consistent with the
the statutes that govern such procedures of procuring the indictment in the 1st,
place, it is known that by virtue of statute, when a grand jury finds a bill of
indictment to be supported by good and sufficient evidence and returns a true
bill into court, the foreman of such grand jury is required to note thereon the
name or names of the witnesses on whose evidence the same shall have been found.
Kirkham V. People, 1897, 48 N.E. 465, 170 Ill. 9. This requirement is mandatory
and is for the accused information. While non-complience is an irregularity whi-
ch may be waived by the accused, the omission of the indorsement is fatal to the
indictment if objection is appropriately interposed in apt time, here the facts
are known that the defendant didnt have knowledge of the wrong name being on the
true bill and defendant states that the error cannot be considered waivered due
to the issue being one that directly concerns his constitutional rights that are
protected by the United States Constitutions 5th, Amendment as well as the 14th
Amendment, Petitioner states that he brought to the courts attention that the
Indictment was flawed because it didnt allege facts sufficient enough for him to
properly prepare a defense to, and that his defense was presented on the facts
that were shown by the state and produced in the indictment, the state attorneys
office of Cook County presented in trial that the defendant had attempted to as
specifically shown in the charging instruments from the original complaints and
the indictment which are invalid, that the defendant with the intent to commit
the offense of armed robbery by threatening the imminent use of force and while
armed with a dangerous weapon to wit; a gun, did any act, to wit; attempted to
"Remove United States Currency from the person of Clarence Beals, Timmy Jones,
and Felise Mcgee, yet the facts shown at trial failed to prove such, and it is
now shown that the defendant was denied of due process of law because the courts
ruling was contrary to establish law and the ruling resulted in a manifest and
arbitrary injustice, the defendant states that on the direct appeal the Illinois
first district court affirmed the judgment of the trial court and the stated as
well as recorded ruling made on state law case precidents didnt sufficiently nor
meritably support its ruling at all, in fact petitioner's defense counsel in the
trial court presented the case of People V. Adams, which in said case the court
ruled that no variance had occurred and that even if it did the defense was not
prejudiced in absence of indication that the discrpancy between indictment and
proof induced defense to withhold any evidence or that the defense presented was
shaped by the precise language of the indictment. Petitioner points to the one
specific motion introduced, The Motion in arrest of Judgment, said Motion shown
in defendants Exhibit C-page 1 & 2, reveals that the defense counsel in fact had
argued that he presented the defense he did because of the states presentation
of evidence that was contained in the indictment, and that his defense was made
specifically in regards to the evidence which was premised upon the language of
the indictment itself, Petitioner states that the case of People V. Adams, was
supported of his case because as stated Adams showed that the state introduced
that the defendant had been charge because of the conduct of trying to take the
victims property from the person and or the presence of the person, here in the
defendants case no property was taken in the named victims presence nor from any
of their presence, and this fact is shown in defendants exhibit C-pages 3 through
13, which is the states witnesses own testimony that was introduced in trial.

Said testimony from each of the alleged victims in the case reveal that none of
the contents of the State indictment (Facts implied) e met in the trial and
the State failed to prove that the defendant had taken any form of property from
any of the alleged victims and specifically from their presence, the charging of
the defendant by an Indictment which stated that the defendant attempted to take
property from the person and or the presence was premised upon unsound facts and
the alleged victims own testimony proved such, as noted in the defendants exhibit
C-page 3-5 which is the first victim allege's testimony on cross examination said
testimony of Clarence Beals, attached shows that when asked specifically; Quest-
ion- He never said to you that he was there to rob you did he? answer- No! pages
3-5 of exhibit C, next there was testimony from alleged victim, Timothy Jones,
exihibit C- pages 6-9, as noted in the excerpts of testimony from said alleged
victim he states that he had jumped up off the floor an ran out the building and
immediately after exited the building that he flagged down a police car, its as
shown that said alleged victim never testified that he was told to give up any
form of property and specifically no words were stated to him giving him any type
of impression that the defendant meant to rob him, specifically defendant points
out that Mr. Timothy Jones was not even inside of the facility and never witness
the defendant trying (attempting) to take property from the person of anyone, nor
could he have witnessed the defendant taking property from anyone's presence, it
was never proven facts contained in the indictment on the testimony of Jones, and
Petitioner/defendant shows more excerpts from the next victim alleged,. Exhibit C
pages, 10-13 are excerpts from the witness Felice McGee, and it discloses that on
the date of October 1st,1998 the defendant Kevin Patterson never took by force
any form of property from him, nor from anyone in his presence, and further its
shown in his testimony on page 13 of exhibit C- when asked the question; When Mr.
Patterson got to the location where you were seated, which is before you get to
the rear door, did he tell you to give him the money that was in the desk drawer?
**Answer- No. He didnt ask me about the money! these excerpts prove that the as
stated facts brought forth in the Indictment were not proven beyond a reasonable
doubt, and these excerpts support that the conviction was brought upon facts that
were fraudulently introduced to the Grand Jury of Cook County Illinois, defendant
states that the facts contained in the Post-Conviction Petition that was denied
regarding the Grand Jury being given improper and false information was proved in
the trial that took place, Petitioner states that the Post-Conviction Petition as
shown and attached as exhibit #3 contained a specific allegation that the Police
officer that testified before the Grand Jury gave inaccurate and very misleading
information to the Grand Jury, and such information constituted deceptive facts
that was given intentionally and deliberately to mislead the Grand Jury for the
purpose of returning a true bill of indictment against the defendant, the stated
testimony given to the Grand Jury prejudiced the defendant and resulted in the
defendant being prosecuted on information that was falsely presented, the Grand
Jury testimony which is shown in the defendants exhibits B-pages 2-13 reveal that
a improperly named and improperly appearing officer, witness, Paul Greeman, gave
testimony to the Grand Jury, and Petitioner states that the facts brought forth
regarding this witness's name not appearing as the witness on the true bill also
compounds that the error of the testimony being fraudulently presented, supports
a direct reversal of the conviction due to the Defendant rights to Due Process
being grossly violated, Petitioner points out that this form of conduct by the
agents for the State, and the State prosecutors not trying to correct such has
already been ruled to have denied the defendant of a fair trial, In the case of
People of the State of Illinois V. Nikkolas Oliver, 859 N.E. 2d 38, 307 Ill. Dec.
38, (Ill. App.2d Dist. 2006) the court ruled because of the officers mischaract-
erization of the observations the grand jurries could not have found probable,,
cause to indict defendant for unlawful possession of a controlled substance, here
the Court must follow the Ruling of the United States V. Estepa, 471 F. 2d 1132,
(2d Cir. 1972) the court determined that a prosecutor may not mislead a Grand
Jury into thinking that it is hearing eyewitness testimony when it is actually
hearing an account whose hearsay nature is concealed.

also Petitioner cites the case of People V. DiVincenzo, that was ruled on by
the Supreme Court of Illinois, 183 Ill. 2d 239, 700 N. 2d 981, 233 Ill. Dec.
273, in that case it was stated that the due process rights of a defendant may
be violated if the prosecutor deliberately or intentionally misleads the Grand
Jury, uses known perjured or false testimony, or presents other deceptive or
inaccurate evidence, United States V. Hogan, 712 F. 2d 757, (2d Cir. 1983) it
is shown in the defendants Post-Conviction Petition that was presented to the
Cook County Circuit Court that the State introduced false and misleading and,
and inaccurate information that misled the grand jury into thinking it was in
fact hearing first-hand eyewitness testimony the facts are simply stated that
the defendant presented sufficient and meritable facts that supported that he
was improperly prosecuted and defendant presented facts that stated the Gist
of a constitutional violation and depreavation of his State and Federal rights.

SAID TESTIMONY GIVEN TO THE<br>GRAND JURY OF<br>COOK COUNTY ILLINOIS

Petitioner states that the testimony given to the grand jury was testimony as
can be seen by the attached exhibits B-pages 2-13, that was given by a witness
whom's name isnt shown on the True Bill of Indictment, Petitioner states that
said testimony in itself was misleading and was improperly given to the Grand
Jury to presuade them to return a Indictment against him, Petitioner states a
Indictment brought forth on information that was misleading and falsely given
prejudiced him and denied him of Due process of Law, the facts are that said
witness whom appeared in front of the Grand Jury comitted perjury, which said
is shown in his testimony given on the date of 30th, of November 1998, facts
regarding the false testimony is seen by a casual review of Officer Greeman's
testimony which supports that the Indictment was procured improperly. (Note)
on page 4 of exhibit-B, in the grand jury transcripts, officer Greeman, states

    Question: At the time an Individual later found out to be Kevin Patterson
              entered into the building; is that correct?
    Answer;   Yes.
    Question; What did Patterson then do?
    Answer;   He proceeded to the rear of the buisness, he instructed all of
              the employee's to lay down and face on the floor. then he attem-
              pted to enter the cash drawer.

The above testimony was false and the basis for giving such was only to falsely
mislead the Grand Jurors, the witness's next line of testimony was also false
and presented to prejudiced the defendant, (Note)

    Question: Was Mr. Patterson armed?
    Answer;   Yes, he was.
    Question: Was he armed with a handgun?
    Answer;   Yes, he was.
    Question: When he ordered the three individuals down; Beals, Jones, and
              McGee, did Beals attempt to flee?
    Answer;   Yes, he did.
    Question: What happen to Beals when he tried to get away?
    Answer;   Mr. Patterson held him, a struggle ensued.
    Question: Did Mr. Patterson shoot a firearm at Beals but fortunately missed
              him?
    Answer;   Yes.

The above testimony was again presented in a manner that was done so only to as
the defendant states to improperly mislead the grand jury into thinking that,,
this officer was telling what occurred from a personnal observation, yet known
was that these alleged facts were second hand information he reconstructed.

(29).

Petitioner states that he was directly prejudiced by the submission of testimony
that was given to the Grand Jury, and this is especially more prejudicial when
as here in the defendants case the witness whom gave such testimony name isnt on
a True Bill of Indictment, the true bill found in the record doesnt contain any
other witness's name on it and this has been found to be fatal to an Indictment
as Petitioner points out that these errors have before been challenged by other
defendants whom have appeared before the State of Illinois Courts, shown is State
of Illinois Supreme Court Case; People V. Hammond, 357 Ill. 182, 191 N.E. 327,
(1934), In this case it was brought forth by the defendant contentions regarding
the indictment, facts were raised concerning the Grand Jury foremans failure to
indorse on the true bill of indictment the name of a witness, whom testified to
the Grand Jury, it was ruled that the failure to list such witness did not at all
matter and that the indictment was still held proper due to the fact that other
witnesses had given testimony which supported the charge that the defendant was
prosecuted upon, yet defendant/Petitioner in the present case reveals that facts
concerning his indictment are different and the case of People V. Hammond cited
above support that prejudiced has been established and that vacation of the said
conviction would be proper in this case, Petitioner points out that besides the
testimony being false and misleading, the failure to name on the bill itself the
name of the person whom gave testimonial evidence to the Grand Jury, for them to
determine probable cause results in the case being void, because no other named
witnesses appeared before the Grand Jury, and unlike the case of People V. Hamm-
on cited above, which stated that the indictment was supported by other witness
testimony nothing in the present case comes close, the fact is that said true
bill of indictment was brought forth on the testimony of a witness whom isnt at
all indorsed on the true bill, and this is fatal to a Indictment, In People V.
Kingsbury, 353 Ill. 11, 186 N.E. 470, on the hearing on Motion to quash, it had
appeared that a witness whose name was not indorsed on the indictment, while,,
appearing before the grand jury and testifying as to other complaints on which
other indictments were returned, did not testify concerning the offense charged
in the indictment before the court, and this court in that case held that, as
the names of eighteen other witnesses were indorsed on the back of the indictment
the presumption is, in absence of showing to the contrary, that they were the
witnesses, and the only witnesses, on whose evidence the indictment was found,
and as there was no showing that the indictment in the case was based upon the
evidence of the witness whose name was not indorsed on the indictment, it was not
error to overrule the Motion to quash. In the case, cases cited by the defendant
it is known that each has properly shown that the indictment in the present case
is improper and cannot sustain a conviction, and this fact is also supported by
the State of Illinois compiled Statutes, which reveal that; section 17 of the
Jurors act is mandatory to the extent that the names of the witnesses upon whose
evidence an indictment is to be returned are required to be indorsed thereon. It
is also pointed out that the contentions of the defendant that reveal the false
testimony prejudiced him and denied him of due process of law also support that
the prosecution was illegal warranting a complete reversal of the conviction, it
has already been established by the United States Supreme Court, that due Process
violations are prejudicial and thus warranted dismissal of indictment, and its
been shown that the State cannot seek a new indictment after such violations are
shown to have been comitted, the prejudicial effect leaves the State without any
recourse to obtain another indictment, People V. Oliver, 307 Ill. Dec. 38, 859
N.E. 2d 38, (Ill. App. 2 Dist.2006) United States V. Estepa, 471 F. 2d 1132,1136
(2d Cir. 1972) Petitioner also cites the case of United States V. Hogan, 712 F.
2d 757, 759-62 (2d Cir. 1983) In that case, as in this one the government had
presented deceptive testimony, and the court held as follows; [The government]
was duty bound not to introduce false and misleading testimony. While the factual
misstatements in the testimony may have been inadvertent, as the government now
argues, the fact remains that the defendants were prejudiced by the misstatements
of important facts and the grand jury's independent role was impaired. See also
United States V. Samango, 607 F. 2d 877, 882 (9th Cir. 1979) which stated;

Although deliberate introduction of perjured testimony is perhaps the most fla-
grant example of misconduct, other prosecutorial behavior, even if unintentional
can also cause improper influence and upsurption of the Grand Jury's role.
Regardless of the governments intent, we believe that the grand jury was probably
misled by this presentation. Hogan, 712 F. 2d at 762. In the present case just as
in the case of DiVincenzo, 183 Ill. 2d. at 257, 233 Ill. Dec. 273, 700 N.E. 2d
981, the Habeas Court must hold that the States presentation of deceptive evidence
denied the defendant of due process, regardless whether the deception was intent-
ional. Petitioner Kevin Patterson, specifically points out that here in the case
which he was arrested on and prosecuted on and then convicted on must be vacated
and specifically rendered void by law because the processes which in turn brought
forth the entire prosecution has now been shown to be in violation of his State
and Federal Constitutional Rights to Due Process and equal Protection of the law.

## specific in-trial testimony given

The testimony for which the defendant points out that prejudiced him during trial
wasnt pointed out by the defense counsel to be testimony that was improperly and
very falsely given to the Grand Jury, besides the fact of said testimony that was
given to the Grand Jury coming from a witness not named on the true bill, it is
shown that during the trial the true facts regarding the same testimony came out
at trial and this testimony proves that the Grand Jury was misled regarding facts
that the defendant had went into a cash drawer, and the truth came out that shows
that the defendant never shot at the victim, specifically defendants points out
that the officer, whoms name appears on the True Bill of Indictment is "Dwyer",,
and in the trial this officer testified to being a officer that responded to a
radio monitored call that stated that an armed robbery had occurred, this fact in
and of itself shows that officer Dwyer, never appeared at the actual scene of the
alleged armed robbery, and never witnessed any of the events which were stated to
have occurred as told to the Grand Jury, said testimony of officer Dwyer is shown
in the defendant exhibits C-pages 21-through 41, specifically officer Dwyers own
testimony is at' page 26 through 37, and in it there appears no facts that were
given to the Grand Jury that specifically supported the testimony that was falsely
presented, in fact the testimony establishes that the officer was a officer whom
appeared after the initial events transpired, and his input was only that of an
officer whom went to the location of where it is stated that the defendant was at
standing by what was termed a suspicious vehicle, in fact the testimony showed a
group of witnesses composed of two people, are the witnesses whom said they seen
someone other than the defendant put a bag in the trash can, this fact came out
during trial, and it affirmatively established that the testimony given to Grand
Jurors was very improper and inaccurate, yet Petitioner states that the facts are
even more crucial when the testimony of the officers whose name appears on the
transcript is shown said testimony given in the trial court of officer Greeman,
whom some way made it on the grand jury transcript,, being a witness whom testif-
ied before the grand jury reveals the testimony to be questioned specifically due
to the fact that none of the alleged testimony was true as confirmed during trial
facts came out that showed the testimony of officer Greeman was brought in error
even if his name had been contained and shown on the true bill which it wasnt, it
has been stated by the defendant that this form of conduct being comitted by the
states agents warrants the indictment being tossed out due to the serious violat-
ion of his Constitutional  Rights under the U.S. Constitutions 5th, amendment.
Petitioner Kevin Patterson states that the facts alleged in the Post-Conviction
Petition and in his properly filed Motion in arrest of judgment supported that the
indictment be dismissed, even though the facts regarding the witness's name not
appearing on the true bill was attacked in that Motion, Petitioner states that it
is shown in exhibit C-pages 14 through 20 the argument his attorney gave which in
fact revealed that the State didnt meet its burden of proof in the case.


## NOTE SPECIFIC MOTION FACTS

Petitioner Kevin Patterson, states that the facts which were shown in his filed
Motion in arrest of judgment specifically reveals that the State Attorney's in
the Circuit Court of Cook County Illinois failed to meet its burden of proof on
the stated charges that was brought forth by them, said charge of attempted arm-
ed robbery wasnt proved beyond a reasonable doubt, and the defendants rights to
due process and equal protection of the law was violated on the courts error to
follow its own rulings that had been made in case that were exactly the same as
defendants, defendant specifically points to the contentions shown in the Motion
in arrest of Judgment, Defendants exhibit, C-pages 1 & 2, said motion attacked
the direct issue of the states failure to prove that the defendant had attempted
to take property from the person and or the presence of the alleged victims, it
is known that the court stated facts that were inconsistent with the evidence as
shown by the prosecutors of cook county, facts show that the Honorable Judge in
giving a opinion stated that he felt that the defendant had comitted a armed Ro-
bbery and not a attempt armed robbery, yet the facts were shown in the victims
own testimony that was previously shown in this petition, yet petitioner states
again that the testimony from said alleged victims that is shown in exhibit C-
pages 3-13, reveal that no property was attempted to be taken and no property as
specifically shown was taken in the presence of the victims, and or directly as
known from them, defendant states that the trial court comitted error when it on
its own belief and not from the actual evidence introduced denied the Motion in
Arrest of Judgment, facts show that the ruling of the court was contrary to the
establish law in regards to such issues, facts show that the issues in regards
to the Motion in arrest of Judgment was brought forth on the direct appeal and
that the first district appellate court affirmed the conviction, it based it on
the case of; People V. Funk, 155 N.E. 838,325 Ill. 57,(Ill. 1927) the appellate
court of Illinois used the case that was ruled on in the Supreme Court to deny
the defendant of relief on appeal, and the ruling went against all logic, due in
part because it based its fact on the evidence which showed that defendant took
property from the victims presence, and the indictment stated the the property
was taken from the person, the case of people of funk, established that the Ind-
ictment was proper because as stated; The gist of the offense of Robbery is the
force or intimidation and taking from another, against his will, a thing belong-
ing to him or his custody. Such taking may be either from the person or the pre-
sence of the one assaulted. The proof was sufficient. People V. Carpenter, 315
Ill. 87, 145 N.E. 664; O'Donnell V. People, 224 Ill. 218, 79 N.E. 639, which are
other cases cited in the case of People V. Funk, 155 N.E. 838,325 Ill. 57, Facts
revealed show that the case wasnt close at all and that the ruling was contrary
to the evidence brought forth in the case of People V. Patterson, in the present
case evidence was clearly brought out that none of the alleged victims in the
case were even present at all, during what has been described as a Armed Robbery
by the judge, facts show that the alleged victims all were outside of the place
that was named in the indictment as the buisness establishment, facts show that
when cross-examined during trial the officer stated he could not see if in fact
the defendant was reaching in the desk drawer to remove items, and facts shown
in trial revealed the defendant had not attempted to remove items in front of
anyone specifically not the named victims, the Indictment in the case contained
a varience and the ruling that it didnt was contrary to establish law, the facts
such as that of the defendant was raised in other state of Illinois cases and
it was a complete error for counsel in the trial court and counsel on appeal to
not cite such cases such as; People V. Daniels, 30 Ill. Dec 631, 393 N.E. 2d 667,
which specifically dealt with the same issue of the taking of property from a
victim, in the cited case it was alleged in the indictment returned by the Grand
Jury against all three defendants, it charged that they "by the use of force and
while armed with a dangerous weapon, took an amount of United States Currency
from the person and presence of Michael Coleman". However at trial the only proof
adduced in connection with the robbery concerned the taking of a watch.

The case of People V. Daniels, 30 Ill. Dec. 631, 393 N.E. 2d 667, went on to
say that; It is clear from the record, and conceded by the State at oral argum-
ent that the taking of a watch is not referred to in the indictment, and that,
the taking of currency was not proved or even mentioned at trial. In a criminal
trial, it is the burden of the prosecution to prove beyond a reasonable doubt
all material facts of the offense as charged by the indictment. (People V. Wein-
stein (1966), 35 Ill. 2d 467, 220 N.E. 2d 432, People V. Corbishly (1927) 327
Ill. 312, 158 N.E. 732.) defendant states that just like in the cases cited he
to has established that the trial court erred when it ruled against his Motion
in arrest of Judgment, because the facts that were brought forth specifically
pointed out that the state failed to meet its burden of proof in his case, and
that the Indictment contained a varience which resulted in his defense being as
stated inpaired, the facts raised by the state appellate court didnt confirm a
varience wasnt shown the facts are that the defendant was completely denied of
of his Constitutional rights as a result of the Indictment not being properly
drafted and alleging facts which he could defend on, as shown in trial none of
the alleged victims were present in the place of buisness, and none of the facts
brought forth in trial established that the defendant attempted to rob anyone,
in fact the witnesses whom testified clearly stated that the defendant never at
all told them to hand over any property at all, facts show that none of the 3,
named victims ever were witnesses to the defendants attempt to remove property
and clearly the facts show that at no time was the act of taking property ever
seen by anyone, the Indictment in the present case of People V. Patterson, did
not sufficiently state a crime for which the defendant could properly defend on
besides what he did in fact challenge, the Motion in arrest of Judgment showed
the states case couldnt be be proven beyond a raesonable doubt, Said case was
decided on State law, yet petitioner as pointed out, reveals through the use of
other State cases, that the law was not properly construed, the defendant states
that the Circuit Court, and the appellate court, failed to protect his rights
and such created a constitutional violation of his right's to equal protection
of the law under the United States Constitutions 14th, amendment, and that his
United States Constitutional rights under the 5th, amendment were violated due
to the states failure to present a proper indictment, the state failed in its
duty to prove the charges in the indictment beyond a raesonable doubt, and it
is known that where a conviction is based on circumstantial evidence, the evid-
ence relied on must produce a raesonable and moral certainty that the accused is
guilty of the crime charged., and further the circumstantial evidence may not
leave unanswered any reasonable hypothesis of defendants innocence. Petitioner
states that the contentions brought forth in the Motion for arrest of Judgment
clearly sustained his challenge to the indictment, Exhibit, C-pages 1 & 2, which
is the Motion in arrest of Judgment clearly revealed the courts error, and also
it clearly established that all of the rulings that were made in conjuction by
the appellate courts which ruled long after the proceedings where it was brought
forth were inconsistent with its own rulings made in other cases. Petitioner in
the trial court as well as in the appellate court was denied a proper review of
the evidence and he was denied of equal protection of the law when the courts
(State Courts both circuit and appellate) used its own state court rulings in a
arbitrary and inconsistent manner, another case that was ruled on in the State
of Illinois and circuit court of Cook County was that of People V. Jackson, 28
Ill. Dec. 65, 390 N.E. 2d 47, (1979) in this case it was ruled that conviction
of armed robbery under count II was subject to being reversed in absence of any
evidence of a taking of property from the person or presence of another, these
State court cases cited by the defendant reveals that the defendant was denied
of his rights to equal protection of the law, and that the state courts use of
State court precidents to deny him of such equal protection of the law further
undermines his rights, Petitioner states that the facts alleged in the Grand
Jury Indictment which was presented by the Cook County Prosecutors cannot in his
case stand due to the fact that none of the essential elements of said charge
can be proved, the indictment failed to state a case.

Petitioner next points ● that the case should be re●sed due in part to the
fact that other documents contained in his common-law-record establish that a
act of Misconduct was comitted during the initial stages of the prosecution as
stated in the previous pages of the Habeas Corpus, pages 13-17, the facts that
petitioner brought forth reveal that the Cook County Circuit Court has failed
to adhere to the established procedures of procuring criminal complaints, the
defendants exhibit D- pages 1-3, show that the state produced upon the court a
group of criminal complaints that stated that the defendant attempted to rob a
complainant named Timmy Jones, page 1, and also a complaint is shown that states
the defendant comitted the offense of U.U.W. (Unlawful use of a weapon) page 2,
these two complaints shown as being filed on the date of October 6th,1998 show
that the issue brought forth regarding the defendant not being brought before a
Cook County Circuit Court until (5) days after an arrest had occurred reveals a
serious issue exist that the Habeas Court must review in its determination of
whether the defendants rights were violated  in the initial state court proceed-
ings said exhibits are shown because they show that a substantial violation of
the defendants rights occurred due in part because the state failed to show in
the trial court why the Chicago Police didnt have the defendant brought to the
courts in a timely manner (within 48 hours) the facts concerning such failure
have been cited already yet are brought forth with the addition of the exhibits
(The Criminal Complaints with the filed stamped date shown on them) page 3 of
defendants exhibit D- reveals the criminal complaint that is in regards to the
defendant Jamal Akbar, it reveals his complaint was filed on October 13th, 1998
and it also reveals that defendant Akbar, was being charged with the offense of
Aggravated Discharge of a Firearm, and list as the complainant, Felise McGee, it
is known that the charge itself was placed aginst the defendant Kevin Patterson,
yet the exhibits show that the entire prosecution when first brought forth was
initiated on inaccurate information, which was intentionally done to mislead the
Courts as well as the defendant, yet none of the attorneys representing the na-
med defendant ever challenged the presentation of facts that was brought forth
at the first appearence hearings of any defendant, specifically the defendant of
the present Petition for Habeas Corpus Relief, Kevin Patterson, Other facts are
shown in the defendants exhibits E- pages 1-6, they are the Chicago Police Dept.
Supplemental reports, the facts alleged in the reports reveal that none of the
alleged victims ever were present in the buisness establishment to visually see
the defendant attempt to take property belonging to them or the buisness, and
also the reports clearly reveal that the evidence as brought forth in the Grand
Jury hearing was inaccurate and falsely given, in an intentional manner that was
done for no other purpose but to procure probable cause Illegally , Petitioner
states this fact due to the reports having information that differed from what
was stated in front of the Grand Jury, yet the agents for the state never tried
to correct their mis-statements nor did the State prosecutors whom were aware
that the information that was being given under oath was inaccurate and wrong,
the page shown in exhibits E-pages 1-6, show that the State had correct facts
on which to base its charges on, but decided it better to present facts that as
shown were improperly submitted, Petitioner states that such acts constituted
fraud upon the courts, and warrants a reversal of the conviction itself. Next it
is shown in the defendants exhibits number #1, the improper contrary order that
was brought forth by the first district appellate court of Illinois, said order
based on the state court cases of specifically "Funk" 325 Ill. 57, 155 N.E. 838,
and Taylor, 84 Ill. App. 3d 467, are contrary to established law, the state did
not meet its burden on the charge, and the appellate Court failed to review the
facts as brought forth in the case, said exhibit #1, is included in order for
the Habeas Court to review the facts of said appellate courts decision. Exhibit
#1, consist of 14 pages, and is followed by the Supreme Courts denial of leave
to appeal such decision, it is shown as Exhibit #1, page 15, said case was in
the first district appellate court remanded back to the trial court due to the
error of the trial court to make sure the state properly applied sentencing
Statutes, pursuant to the Class X guidelines.

Petitioner presents the next exhibits as they show that he was denied of his
rights on remand to be sentence properly, defendant states that the Cook County
States Attorneys office (Prosecutors) failed to present facts that warranted a
class X sentence for his charges, and that the appellate court remanded his case
back to the trial court in order for him to be resentenced, Petitioner states
that he was denied the right to only be sentence under the statutes for the as
known charge of attempted Robbery, even though said charge wasnt sustained in a
CORRECT MANNER, Petitioner states that his rights to due process of law were
denied on remand due to the fact that there wasnt any sort of sanction placed on
the state for failing to meet its proof of the defendant classification as a,,,
class X defendant, the state failed to bring forth to the trial court a proper
and accurate report of the defendants history, and it failed to properly show
that the defendant had comitted any crime within a ten year time frame, facts
were improperly considered by the trial court due to the states errors and the
defendant states that although the issue has never been confronted before in
the circuit courts, that the Habeas courts must review the claim due to the fact
that such issue denied him of the right to due process, the states failure to
have its facts presented properly amounted to just that a failure, and the trial
court erred, when it allowed the state to use another statute to sentence the
defendant to the same sentence of 18 years, this form of practice violated the
defendants rights to due process of law, in the trial court, because had the
defendant at any time presented improper facts and or evidence it would have as
known been used against him, the state prosecutors should not be excused from a
"error" which they themselves comitted, allowing the state to resentence the
defendant by changing its mode of sentencing to that of an extended term instead
of the Class X sentencing guideline which it failed to meet its burden on results
in the defendants rights to due process and equal protection of the law being as
stated violated because it gives the state the incentive to not correctly state
facts that warrant a defendant being sentenced to a particular sentence under a
specific statute, the error was conceded to and the state makes no argument to
failing to meet the Statutes requirements for giving the defendant a class x, it
should not have been allowed to have the defendant resentenced to the same 18,
year sentence, because in doing so the trial court was supporting the states own
errors and it was sending a message that says that it doesnt matter if the State
presents proper evidence in support of giving a defendant an increased sentence
these facts are even more substantial when it    is considered that the State
didnt at all sustain its charge that was contained in the Indictment beyond a
a reasonable doubt, Petitioner states that such issue must be examined to send
a message to the State courts that the law is uniformed and made for the sheer
purpose of all to obey, and this includes procedural statutes which are to be
applied as mandated, Petitioner states no case law in regards to the issue and
presents such to bring to the Habeas courts attention the violations of his due
process rights, in sentencing him on remand, Petitioner states that the sentence
he received from the circuit court on remand violated his rights to due process
of law because during the remand the state still failed to establish all of the
procedural requirements in order to place the defendant under the extended term
statutes, it didnt on remand properly consider his past sentences had been done
in the late 1970's and not in the 1990's as in improperly believed, a casual and
careful review of the sentencing hearing transcripts of June 17th,2004 reveal
that the court again failed to properly note the past convictions of the defend-
ant and it failed to consider the accomplishments that the defendant had made in
the time frame from his last state court conviction up until the time that the
defendant is stated to have comitted another crime, the facts are spread of the
record that show the state abused its discretion in resentencing the defendant to
the same 18 year sentence that was improperly given after the original trial.

***Note the facts contained in the Post-Conviction Petition***
pages 16 through 45,, and the order of the
State of Illinois Appellate Court.
Exhibit #2. pages 1-10.

Petitioner next presents his Post-Conviction Petition which is found in the
Petitioners Exhibits #● said Petition contains 45 pages of actual facts that
warrant the court to grant him relief on, and the Petition contains 69 pages
of exhibits, which highlight areas of the trial court proceedings that were
grossly overlooked and as the defendant contends violated his rights to Due
Process of Law, and equal protection of the same, Defendant specifically has
brought forth the Habeas Corpus Petition pursuant to the applicable Statutes
28 U.S.C. 2254, and specifically petitioner, reveals that the State Courts in
the County of Cook, in the State of Illinois, have denied him of State and as
pointed out in the properly produced Post-Conviction Petition, also Federal
Constitutional Rights, and that such violations occurred in the trial court.
Kevin Patterson, Petitioner presents that the state courts rulings on the P.C.
was contrary to establish law, and that the denial of his P.C. that stated at
least several specific claims of a deprevation of his State and Federal Rights
far surpassing the normal showing of stating the Gist of a Constitutional Claim
reveals that the State courts have failed to acknowledge and afford him of a
remedy for the violations that were comitted against him, Petitioner states a
serious issue was shown to exist, when in the Petition he stated facts that it
the State courts had failed to review and consider, specifically Petitioner in
the Post-Conviction Petition contended that the first appearence hearings was
held in violation of his constitutional rights under the fourth amendment of
the United States Constitution, and that by failing to address the issue the
State courts of Cook County, allowed various improper evidence to be used in
the case that normally would have been held inadmissiable, because that is the
sanction that usually accompanies a violation of a persons rights to their 1st,
appearence hearing, a hearing that the federal courts have ruled must be held
in no less than 48 hours after an arrest has been made of a defendant, In the
present case the facts in regards to the defendant not being taken to court so
that a hearing could be held to determine if in fact evidence showed that the
defendant should be held until either a preliminary hearing and or an Grand
Jury has determined Probable cause simply shows that the court violated his
rights and the review of such issue on the Post-Conviction was absent any type
of proper consideration of the issue, facts in regards to the claim of counsel
giving him inadequate and ineffective assistance of counsel because of the
failure to litigate the first appearence issues shows that the court didnt at
all properly consider the issues, Petitioner states that the State courts have
applied a unreasonable application of state court rulings to his case that in
the Federal court do not establish his rights were not violated, in fact the
Federal court has specifically denounced this form of practice, and has in its
Courts reversed decisions of the various state courts whom have failed to look
properly at the case presented to them. Petitioner states that the Cook County
Circuit Courts on his Post-Conviction Petition failed to look to the federal
law on the issues which he presented and based their decision on state law as
can be seen in the defendants exhibits, #3, pages 1-12, which comes after the
Post-Conviction Petition and its exhibits, said pages 1-12 are the Order that
was submitted by the trial court judge, Daniel Darcy, said order was entered
on the 25th, of February of 2005, and it specifically denied the defendant of
Post-Conviction relief, the facts in regards to the denial are absent proper
statements which would reveal that the court considered every issue as it is
bound by law to do, the order reflects that the court failed to review each of
the claims presented in a proper manner, and the court mis-applied Strickland,
It is known that a State court decision that correctly identifies the governing
legal rule but applies it unreasonably to the facts of a particular prisoners
case qualifies as a decision involving an unreasonable application of clearly
established federal law under the Antiterrorism and Effective Death Penalty
Act (AEDPA) 28 U.S.C.A. sec., 2254 (d). Note the Post-Conviction Petitions order
from the trial courts is defendants **Exhibit #3-part 2, pages 1-12

Petitioner points out that the State Courts on the Post-Conviction Petitions review failed to adequally and properly review that the defendant didnt have ineffective representation, the courts ruling in the first paragraph of its order, Exhibit #3 pages 6 & 7, (which is actually pages 4 & 5 of the Order on the Post-Conviction Petition) shows that the court didnt take heed to the 1st, issue presented on the Post-Conviction Petition, which was that he wasnt taken to his first appearence hearing in the proper time frame, the court based its ruling on the state court case of People V. Martin, 236 Ill. App. 3d 112, 603 N.E. 2d 603 (1st Dist. 1992). As can be seen in the defendants exhibits #3, it is shown that the court determined that counsels decision not to file a Motion to suppress was trial strategy, and therefore outside the scope of review for purpose of establishing incompetence of 'Counsel, the fact defendant states is that no attorney having facts that revealed the States agents (Chicago Police) had failed to bring forth a defendant to court within 48 hours would have not filed a Motion specifically when it is known that such failure to bring forth a defendant within 48 hours creates a violation that would have supported that certaint evidence could not be admitted because of the violation of the defendants 4th, amendment rights, specifically defendants attorney should have known that by filing a Motion to suppress evidence because of the violation of not bringing the defendant to his first appearence hearing before 48 hours had expired he would have been able to have the court place sanctions on the state due to its flagrant violation of Petitioners rights, the trial court knew that it did not properly review the defendants claims of ineffective assistance of Counsel and petitioner states that counsel should have considered filing the Motion to suppress because it would have had a higher probability of being granted and precluding the State from introducing evidence, such as his **Showup Identification, his proposed statements, and tangable evidence, such as the gun, and the other items discovered in the garbage can)** Petitioner states that counsel should have known as well as the court should have known that the exclusionary rule that is judicially created, is a rule that was made for deterring the law enforcement officials from violating the amendments, counsel knew that this rule destroys any incentive the police may have to disregard the fourth amendment by depriving them of any benefit gained by its violation. Brown V. Illinois, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416, (1975) Counsel and the Courts knew that when applying the rules to fourth amendment violations, courts suppress evidence obtained as a result of illegal arrests , (Police Activity) The evidence of which is considered fruits of the poisonous tree. Wong Sun V. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed 2d 441 (1963).Petitioner points out that it has not been any form of hearing conducted which reveals why he was not brought forth to court on time, and the court has not considered the facts that defendant filed a Office of professional Standards complaint against the Chicago Police departments officers whom were involved in his initial arrest and also the police whom were in charge of his investigation and illegal holding, these were facts known to counsel in the trial court, and these facts were established in the properly submitted Post-Conviction Petition, yet the court applied its own unreasonable application of state law findings to its conclusion that the Petition did not state a claim of a violation of a Constitutional rights, the facts are simply stated by the defendant that counsel had the facts that showed the Police in the case had hid the defendant out to construct its case, and that their activity was in violation of defendants rights under the fourth amendment. Defendant points to his exhibits shown in ***Exhibits D-pages 1-3, counsel was aware that the state had introduced these criminal complaints in court, and he was aware that the complaints were signed by the alleged victims, yet counsel by failing to file a Motion to suppress precluded the defendant from impeaching the witnesses against him, whom signed a complaint that stated the other defendant had comitted the act of discharging the firearm, Note page 3, of exhibit -D these facts shown and stated reveal the facts brought forth in pages 13-17 of, of this Petition for Habeas Corpus relief are true.

The circumstances and the facts of the case that was challenged in the Petition
for Post-Conviction relief that was produced by the defendant acting Pro-Se in
and of itself contained meritable contentions of fact that stated the Gist of a
Constitutional claim of a deprevation of Constitutional rights, the trial court
arbitrarly denied the defendant relief and its basis for doing so was unsound
as can be seen from the first paragraph as noted by the defendant, the order
which was returned whereby the courts stated that the Petition was dismissed as
frivolous and patently without merit reveals that the court, has failed to do a
proper review of the case records, because had it reviewed the issues regarding
the first appearence hearing being delayed due to the states agents keeping the
defendant hid in a undisclosed Police facility it would have determined that he
the defendant/Petitioner has raised a Constitutional issue of counsels neglect
to challenged the states case, and the serious infraction of defendants fourth
Amendment rights under the United States Constitution, the arbitrary denial of
the first issue raised and the mere statement shown in regards to the issues of
not being brought forth to court within 48 hours shows that the court wasnt at
all concern with letting the defendant advance to the next stage of the hearing
proceedings contained in the Post-Conviction hearing act, the Post-Conviction
Petition was brought long after trial, and the honorable Judge Darcy, was not the
same judge at trial  he was the judge that reviewed the P.C. he was very aware
of the fact that the evidence at trial revealed that the Police stated that he
never seen the defendant actually remove items out of a desk drawer, so that a
ruling such as the one found in the first paragraph page 7 of exhibit #3 which
is the Post-Conviction Petitions Order, Petitioner states that the next issue
of which the court improperly reviewed specifically highlights the courts own
brand of Misconduct, it is known that the failure to properly investigate the
facts contained in the submitted documents created by the Police and even the
States Attorneys office employees results in inadequate and ineffective assist-
ance of counsel, the court had the court file and the common law record when it
did its initial review of the Post-Conviction Petition and it the court also as
stated in the order dismiss this claim because it stated the defendant didnt at
all show support for the claim, Petitioner points out that the claims were very
much supported by the record itself, the exhibits were appended to the Post and
shown as exhibits, the defendants claim that the police had concocked its own
story of how the case evolved is supported by the actual exhibits, and as proof
petitioner points out the documents found in exhibits A-pages 1-5, exhibit B-
pages 2-13, and specifically exhibit D-pages 1-3, these exhibits show that the
Police created its own version of the events and that the defendant had shown
in the Post-Conviction Petition that he was given inadequate and ineffective
assistance of counsel due to counsels failure to use the incompleted reports as
well as the completed ones and the other documents shown above as impeachment
tools, the facts brought forth by the defendant established the Gist of a very
meritable claim of a deprevation of constitutional rights to due process of law.

## Ruling regarding issue #2.

Petitioner presents facts that reveal the second issue which the judge reviewed
and specifically denied without justification is the issue that was raised in
the Post-Conviction Petition page 5, as shown in exhibit #3, (the Petition) it
is duly presented facts that reveal a constitutional claim, specifically what
the court terms a "Gist of a claim" Petitioner points out that counsel neglected
and failed to reveal the errors that were contained in the Chicago Police's own
reports that were generated between the time of his arrest without a warrant and
his subsequent illegal holding for more than five days in undisclosed precents
the facts established by the defendant in the P.C. revealed that fraudulent and
inaccurate information was contained in the documents produced and that said
errors were never confronted by any of the attorneys representing the defendant
no form of challenge was made to material facts alleged in the reports and its
known that defense counsel could have used these reports to impeach witnesses
whom produced them.

The court based its ruling of denial on the issue regarding discrepancies in the reports o  the ground th    the defendant didnt attach   y affidavits to support the claim, this form of denial is contrary to establish law, and the rules that have been established regarding forms of proof in Post-Conviction Petitions, its known and has been shown by the defendant that the Chicago Police committed acts of Misconduct by keeping him hid out in some undisclosed police stations while they were conducting their investigation of the case, Petition points out also that as shown by his exhibits attached that he has tried to obtain material in the form of documents from the Chicago Police which is a copy of the complaint he filed with the departments Office of Professional standards, this office has failed to comply with the defendants request for a copy of his own written com- plaint, and petitioner states that trial counsel failed to bring the issue to a courts attention, <u>any court</u>, the facts that reveal the honorable judge denied a meritable claim are spread about the record of the Post-Conviction Petition and specifically defendant points out that the Habeas Corpus Petition highlights the errors and unreasonable denial of a Gist of a claim of deprevations of rights, a serious set of violations occurred by allowing the states agents to produce in its discovery material, (Police reports) inaccurate and incomplete information. Facts shown in the properly produced and procedurally sound P.C. showed the Gist of a claim of a deprevation of a Constitutional right, when the defendant reveal- ed that the police had placed in the; reports misinformation that was produced to mislead the court, the state failed to act accordingly and strike the reports and they allowed such reports to be entered into the record at court, Petitioner points out that it has been held that the requirement of affidavits being placed in the Post-Conviction Petition is so that the issue can be verified and support- ed, yet petitioner states that besides having affidavits attached the statutes states that the allegations in the petition must also be supported by affidavits records, or other evidence, with this being made known as the requirements, the Petitioner states that the P.C. contained records in the form of the reports, as is noted by taking a casual look at the defendants Exhibit #3, said P.C. was in proper form and the proof of the allegations were set out specifically, the said denial of the issue was brought forth in error, and it is shown that the issue was more than a bald, conclusionary allegation, supporting that relief should as requested been granted, Petitioner stated the Gist of a claim that he was denied of effective assistance of counsel due to counsel neglect and failure to impeach the law enforcement officials with their reports that were produced containing a very substantial amount of errors and discrepancies, each of the various flaws are pointed out specifically in the P.C. Petition, and defendant request that the Habeas Corpus Court review such so that it can ascertain that the issue was ripe and properly introduced. the trial courts judge failed to aknowledge any of the other records supporting the specific claims, this type of review and failure as shown in the P.C. Petition prejudiced the defendant and resulted in prejudice. The circuit courts failure to take into consideration the facts as they were in the trial court established, the P.C. Petition contained meritable facts and its now known that the honorable court has maintained a consistent disregard for the defendants that introduce issues that reveal Chicago Police officers misconduct none of the Petitions that are presented with such claims survive first stage P.C. review, (Facts of such prejudiced is highlighted at the conclusion of H.C.)

### P.C. issues number #3.

Petitioner states that the trial courts honorable judge failed to properly review the issue shown as number three in the P.C., and that the ruling was contrary to the law that has been established by the Supreme Court of the United States, facts in the P.C. show that counsel disregarded the defendant rights to testify in his own trial and that this error alone satisfied the gist requirement needed for his Petition to advance to the stage of a hearing to determine the effects said had in his trial, the facts are shown that the State failed to meet its burden of pro- of on the charges brought forth.

Petitioner points out th the issue regarding his not being given an opportun-
ity to testify in his own trial is one that cannot be overlooked by the Federal
courts due to the fact that the issue was properly addressed more than once and
was unreasonably and improperly disregarded by the court, the trial courts own
improper ruling on the issue highlighted the courts own prejudice of the defend-
ant who had presented a meritable claim of a deprevation of a constitutional ri-
ght, defendant states that he was denied due process and equal protection of the
law when the trial court during its review of the P.C. failed to acknowledge the
facts in regards to counsels derelictful decision making, and the court failed
to properly rule on the issue and instead chose to deny the defendant relief on
the claim that he was precluded from testifying in his own case because counsel
made the decision himself, it is shown that a defendant has the exclusive right
to make this decision and this was a issue that the Supreme court had before it
while the defendants appeal of the Post-Conviction Petition was being reviewed
during the appeal of, which was before the supreme court of Illinois in the case
of People V. Medina, 221 ILl. 2d 394, 851 N.E. 2d 1220, 303 Ill. Dec. 795, (2006)
It was pointed out by counsel from the State appellate Defenders office of Ill.,
first Dist., whom had presented to the court a Petition for leave to appeal, that
the issue of being denied to testify through no fault of his own was error, the
facts shown in the supreme court brief stated simply that the defendant was den-
ied of his constitutional rights when counsel during trial rested and then said
to the court that he wanted to talk with his client, and then afterwards rested.
Petitioners constitutional rights under the sixth amendment was violated and the
Petition for Post-Conviction relief stated enough facts to warrant a evidentiary
hearing on the issue, Petitioner in a Pro-Se manner states that inadequate and
ineffective assistance of counsel was given by the trial attorney whom thought
that it would be sound trial strategy to preclude the defendant from testifying
yet the law in regards to whom's decision it is to determine this crucial and as
known very important decision is one of the defendants alone as the supreme Cou-
rt has stated in the case of People V. Medina, the court has disregarded that   a
defendant should be given an opportunity to decide the issue before the defense
counsel is allowed to forfeit, the defendants rights on his own, the facts are
shown in the defendants Habeas Corpus exhibits, the facts are that exhibit # 3,
the original Post-Conviction Petition that was introduced in the circuit court
showed more than several specific claims that surpassed the Gist Standard, and
Petitioner states that exhibit #4, the order that was entered on the appeal was
very improper, and filled with unsubstantiated conclusions of why the P.C. failed
in the trial court, exhibit # number 3, that also contains the order given by the
trial court after the trial court reviewed the P.C. reveals that the court held
the defendant to a unreasonable standard and failed to recongnize the defendant
was a Pro-Se defendant, the claims brought forth by the defendant were not those
that would be seen drafted by a professional, yet they specifically were shown
in a manner that should have been given the same accord because they indeed had
been properly and meritably produced, the defendants exhibit #4, pages 1-13 was
drafted in a manner that showed the disregard for a properly drafted P.C., the
first district appellate court placed the defendant once again in a position as
could be seen that was improper, yet the state appellate defenders office staff
felt that the issues presented by the defendant was strong enough to past first
stage procedures, the State appellate defenders office employee, Debra Loevy Re-
yes felt that the stated facts produced were wrongly reviewed and that defendant
had been prejudiced by the first district appellate courts decision, these facts
are shown by the production of exhibit # 4, pages 14-20, which is the Motion for
Rehearing that was filed to show the court that the decision it rendered was in
fact wrong, said Motion for rehearing was denied in an order dated June 27th,06
and it is shown that the first district appellate court disregarded substantial
and meritable facts produced by the attorney in her brief motion for rehearing
(Note- Motion for rehearing, Exhibit #4-pages 14-20, the State courts have on at
least several different occassions denied the defendant of relief without cause.
the denial is shown as page 21 of #4.
(40).

Petitioner states as shown in the previous pages of the Habeas corpus Petition
that the issue regrding ⬤ s not being allowed to testi ⬤ and his attorney that
represented him at trial failing to allow him that opportunity was presented in
the Post-Conviction Petition and that the Honorable court failed to acknowledge
that the contents of the Post explained the prejudiced that said counsel had in
trial created, the facts of the denial is simply stated and the defendant whom
had another attorney represent him in the appellate court and this attorney had
filed a Motion for Rehearing and then filed a Petition for leave to the Supreme
Court of the State of Illinois to presuade the court to reverse the conviction
because of the gross error, the facts are known that the Suprem Court was very
aware of the issue because it was at the time hearing a case that contained the
issue of what rights are those of a defendant that must be waivered by him/her
alone, the Supreme Court ruled in the case of People V. Medina, June 2nd, 2006
221 Ill. 2d 394, 851 N.E. 2d 1220, 303 Ill. Dec. 795, that the defendant alone
has the right to waiver whether or not he and or she wants to testify in trial
and that this right must not be taken and or decided by the attorney alone, it
is known that in the case of People V. Kevin Patterson, the attorney for the,
defendant requested to talk to him and then the attorney walked away from him
the trial court record shows that Mr. Patterson affirmatively told his counsel
of his desire to testify, but his attorney told him no, then turned and walked
away, and then rested his case, and then presented argument, the court was left
without hearing the defendants version of events that occurred in the incident
that led to his conviction, counsel whom filed the Supreme Court Petition showed
in her petition that the order epitomizes a denial of the right to testify and
that it imposed a greater burden on defendants, and that the order diverges from
well settled case law, and is contrary to the Illinois Supreme Courts recent,,
decision in People V. Medina, 2006 Ill. Lexis 1085 (Docket No. 100437, 6/2/2006
and renders the right to testify virtually meaningless. the Order of the Court
during its review of the Post conviction Petition failed to reconngize defend-
ants constitutional rights to present a defense in the form of testifying and
the Post-Conviction court failed to reconngize that the defendant presented the
Gist of a constitutional claim, there was more than enough proof of this issue
shown in the Petition, and the courts denied a defendant; of his rights to have
presented to the court facts that would have brought light to the true events.
Defendant states that the facts regarding,;, being at the buisness establishment
were made known to his attorney and that his attorney told him that he didnt at
all think it was important because the state wasnt going to meet its burden of
proving the case because a varience was in the indictment, and that this would
prevent the state from prevailing in the prosecution, defendant counsels thought
there wasnt a need for a defense and therefore prevented the defendant from as
stated testifying on his own behalf, the order given on the issue in the court
after reviewing the Post-Conviction petition was adversely made and was error.
the courts assertion that the issue was not cognizable under the P.C. act was a
improper order that reveals the courts conclusion was based on improper law.
The defendant next issue that was ruled on in the Post-Conviction Petitions or-
der, Exhibit #3, pages 1-12, is the courts unreasonable denial of the Grand Jury
perjury issue and contentions that was made, Petitioner presents that this was
shown earlier in the Habeas Petitions pages, and that the facts are shown that
reveal the entire Grand Jury issue was wrongly decided and that the Indictment
on its facts is void, and that because of the Misconduct of the true Bill as it
was produced with the name of a witness whom did not appear before the Grand Ju-
ry must be now re-reviewed and that clearly defendant claims are supported by
the actual record of the trial court, and warrants a evidentiary hearing so that
it can be ascertained what actually occurred before the Grand Jury, and with wh-
om, as it stands and is shown no witness named in the true bill of indictment
testified to the facts of the case, and this fact alone supports Habeas corpus
relief and the vacation and reversal of the conviction that occurred before the
Cook County Circuit Court, said further facts that warrant relief are presented.

Petitioner presents to the Honorable Habeas Corpus Court, his last set of the
exhibits that are in concern of the Unconstitutional issues which resulted in
his being convicted and sentenced to a term of 18 years in the Illinois Dept.,
of corrections, Petitioner states that facts were presented that revealed that
the Chicago Police had comitted acts of misconduct when they had arrested him
and that after he was released on bond, he filed a complaint with the Chicago
Police's Department office of Professional standards, Said filing of the O.P.S.
complaint was done on or about the date of November 1st, through 10th,1998, it
was filed due to the unlawful misconduct and unreasonable unlawful detainment
of the defendant in several different police department facilities, and said as
stated by the defendant was filed due to the abuse that defendant had suffered
at the hands of the officers (detectives also) whom had taken custody of him at
a time after the initial arrest, Petitioner states that these facts were brought
to the attention of his attorney Charles Murphy, and petitioner states that said
counsel neglected and unreasonably denied the defendant of effective assistance
of counsel due to his failure to litigate the issue properly before the court.
The Post-Conviction Petition that was filed in the trial court established that
a constitutional deprevation of the Petitioners rights had been caused due in
part because counsel for the defendant had never obtained a copy of the compla-
int to review the findings brought forth by the Office of professional standards
which stated that they would investigate the issue which the defendant had stated
in his initial complaint, Petitioner states that the exhibits #5 pages 1-7, is
the freedom of information act request form that he submitted to the Chicago P.D.
and petitioner states that said was submitted to obtain a copy of the complaint
that he had filed so that he could show the various courts proof of the acts of
the officers and detectives whom injured him after he was arrested and after he
was taken to the chicago police's various facilities, Petitioner states that he
specifically placed before the courts in his procedurally correct and sound P.C.
Petition issues that revealed that he was kept from appearing in court timely as
the police had kept him hidden in secluded in several different police departme-
nts in order to manipulate the evidence, and in order specifically to let him
heal from injuries that he had sustained at the hands of the police, defendant
states that as can be seen in page 1, of exhibit #5, the F.O.I.A. request he ███
submitted to the officials of the Chicago Police Department, that he asked that
he be given a copy of his complaint, and an official copy of the summary which
would have revealed the outcome of the investigation, Petitioner also requested
any and all documentation of the investigation, defendant specifically was not
given any type of positive reply, and as can be seen on page 2, 3, and 4, of the
defendants exhibits #5, which is the envelope, showing the return reply to the
F.O.I.A. request, page 3 & 4, is the answer that was given, and it denied the
defendant of copies of the documents he had presented to the office, and also it
denied the defendant of copies of the findings that the O.P.S. staff had came up
with after its initial investigation, Petitioner states that the denial on the
ground that the act under 5 ILCS 140/7 (b) which states in part; information that
if disclosed would constitute a clearly unwarranted invasion of personal privacy
unless the disclosure is consented to in writing by the individual subjects of
the information., Petitioner states that this exemption does not sufficiently,
establish the withholding of the initial complaint, a complaint that was placed
before the office of Professional Standards by the defendant himself, defendant
states that the Chicago Police department has prevented him from obtaining the
complaint that was filed by him because it contained specific allegations of a
series of acts that occurred which was unlawful and of a criminal nature, and as
pointed out in the Post-Conviction Petition would have revealed that a issue as
stated existed that would have warranted the court of Cook county to find that
his constitutional rights had been violated grossly and that because of such no
conviction would have resulted because as stated the evidence would have been
questioned and found to be improperly before the courts, defendant states that
his complaint revealed that the case was fraudulently procured and Illegally in
the court and that he suffered injuries at the hand of the Police officials.

Petitioner Kevin Patterson, states that when requesting copies of his complaint
he was denied of Due Process of law, and he was also allowed obtaining any of
the evidence which would have shown the courts that the Police had comitted acts
which resulted in his constitutional rights being violated, and that also reveal-
ed that the Chicago Police has a patterned of abuses when it comes to making their
arrest without warrants and without probable cause, Petitioner states that facts
in the Post-Conviction Petition that shows that when arrested he was never brought
to court in a timely manner, and Petitioner states that because of counsel failure
to raise the issue in trial and compound a argument regarding the abuse that he
the defendant had indured after his arrest the court was without a recourse to
sanction the states agents, defendant states that an issue still exist that has
yet to be taken care of properly, and that the freedom of information act request
reveal that the problem is widespread when it comes to police department official
(s) covering up the misconduct, Petitioner states that he has tried to appeal the
denial of his request for a copy of the complaint he filed and the findings of a
investigative team of officials from the office of professional standards, yet a
denial was given on the defendants second request which is shown as exhibit #5,
page 5, said appeal of the first denial, specifically stated facts that warranted
the department to comply with the applicable procedures of releasing public and
general information regarding the defendants complaint, the fact is that official
(s) didnt have any reason for denying the defendant of a copy of his own compla-
int that was submitted to them, the denial which was produced because of the shown
appeal page 5, of exhibit #5, was unreasonable and unwarranted, Petitioner states
that the answer that is shown in defendants exhibit #5, pages 6 & 7, specifically
reveal that matters that are reported to the Office of professional standards in
Chicago Illinois regarding their officers Misconduct and Illegal acts do not get
reviewed properly and that these reports are thrown out with investigations in
regards to the contents of the complaints being completed, Petitioner states he
brought the facts regarding his complaint to the attorneys attention and that he
also made the court aware of the complaint, defendant states that the court had
knowledge of the complaint yet failed to acknowledge that it existed, Defendant
presented to the clerk of the court a request letter to the clerk of the Cook Co.
Circuit Court which is shown as the defendants exhibit #5, page 8, dated on the
11th, day of July 2007, Petitioner states that even though said request shown in
his exhibits was made after the decision on the Post-Conviction Petition had as
known been ruled on, it does not erase the fact that the court has also failed
to release to him evidence that revealed that the court and the prosecutors of
the Cook County Circuit Court (The trial Court) didnt want this information to be
release because it would show that the issues raised on the P.C. warranted the
Court to find that the defendant had raised the "Gist of a Constitutional claim
of a deprevation of his Constitutional rights in Post-Conviction Proceedings".
Petitioner states that the facts of his requesting of the clerks office a copy
of the complaint was to show to the habeas corpus court that the police were as
he stated improperly withholding evidenece of its Illegal acts of Misconduct and
Petitioner was requesting a copy of the complaint from the clerks office to show
the Habeas court that these matters was properly placed before the court, counsel
for the State of Illinois,, (The States Attorney office of Cook County) had the
complaint in their possession, and defendant states that the complaint was made
a part of the court record yet that the courts has failed to acknowledge that a
Brady violation has taken place that has denied the defendant of Due Process of
law, the unreasonable withholding of the complaint that was filed in the Chicago
Police's departments office of professional standards , that was also made a part
of his official court filed for the case he was convicted on, and the failure of
the attorneys representing him throughout the entire prosecution reveals that he
was given ineffective assistance of counsel, because the failure of each attorney
to obtain copies of the complaint and the results of the investigation prevented
him from having evidence brought into the Court of Cook County Illinois, that he
states would have specifically shown that his arrest and prosecution that took
place afterwards were procured in violation of his constitutional rights.

(43).

## ARGUMENT

Petitioner, Kevin Patterson, argues that the facts and circumstances that are in regards to his prosecution and conviction are facts that were fraudulently and Illegally procured and that the Post-Conviction Petition established that all of the representation that he had obtained from the various attorneys was inadequate and in effective, and that the State of Illinois Circuit Court of Cook County, and the State of Illinois first district's Appellate court of Illinois and the State of Illinois Supreme Court has failed to properly evaluate his claims that his Constitutional Rights have been specifically abridged in a manner that has resulted in his conviction and the underlying sentence of 18 years being Illegal and improperly anounced upon him, Petitioner points to the evidence which has in all of the above stated courts been produced which shows that he was convicted on evidence that didnt exist in the manner stated in the Indictments brought in the circuit court of Cook County, Petitioner has as shown in this Petition been prosecuted and convicted on an Indictment that was improperly and Illegally procured, and the Petitioner has shown in the properly produced and presented P.C. Petition that the charges were never proven beyond a reasonable doubt, and that the State used perjury as a mean of procuring the Indictment, that was claimed to have been returned by a Grand Jury, yet Petitioner States that the issues of the Grand Jury Indictment which he has presented in the previous pages show that a witness whoms name does not appear on the true bill, raises more unanswered,, Questions as to the validity of the entire case, Petitioner states that the true nature of his case is supported by the actual facts he has presented and they in a correct manner reveal that his conviction was formed by Misconduct, Defendant states that the issue of him trying to obtain copies of the O.P.S. complaint are not resolved to his satisfaction, and that the Habeas Corpus Court must now at this specific instant consider that the State has withheld crucial information and denied the defendant of supporting evidence that reveals that he was found guilty due to the neglect of his defense counsel in trial and in the appellate courts to bring forth the issues in a forum of law which would have acted on all of the abuses, Defendant states that the State of Illinois Courts has maintained a unreasonable attitude of neglect, and said has been due to the fact that the attorneys thusfar whom have represented him have failed to present to them the State of Illinois courts the specific issues that contain the most merit on his case, Petitioner states that the issue regarding his being confined and hid out in several police stations has never been presented to the state courts in a manner that would have shown the State courts that the evidence before them was manipulated, Petitioner in the pages of the Post-Conviction Petition reveals that he was taken to jail without a warrant and process on a Attempted Armed Robbery, and then during the processes, and before the actual charges had been approved by a member of the States Attorneys office of Cook County, that he was transferred to at least two other Police facilities and placed in Bullpens forced to be subjected to abuses at the hand of various officers, and precluued from placing a phone call to his family members to let them know that he had been arrested. Petitioner states that the facts of his being mishandled and abused were told to the court, yet Petitioner states that it is known and has never been brought out that knowone has requested to see photgraphs of him after his arrest, facts are known that reveal the Police wont release the complaint filed with O.P.S.,, and facts are known that the police wont release it findings regarding all of the allegations of a true nature that occurred to him, the police are not trying to release information that can be used against them in the courts, and which can be used against them to have the case reversed and the conviction vacated, said facts contained in the defendants exhibits from #A through #5, Petitioner states that all of the facts contained in the petition are true and warrant relief on Habeas corpus.

Petitioner states that the facts shown in the last pages of his exhibits reveal that his Constitutional rights to effective assistance counsel was violated due in part to the facts that reveal that the circuit court had information that detailed that the defendant had filed in the office of professional standards a complaint that stated facts regarding the defendant being held in custody longer than the 48 hours permitted by law, the facts of the complaint have never been explored by the trial court, and Petitioner states that he was aware that such was filed and submitted to his case file by the Cook County States Attorneys, and trial counsel was aware of these facts yet failed to bring such complaints facts to the attention of the courts, and because of the failure he was deprived of a right to effective assistance of counsel, as petitioner has maintained the Court Clerk of Cook County was forwarded a request for a copy of the complaint, and it is known that said request went un-noticed by the clerk whom returned a answer to such request, that revealed the clerks office disregard for adhering to its Ministerial duties, exhibit #5, page 9, is the response document the defendant received back from the clerks office and it didnt comment on the request made. Specifically defendant states the issues regarding the OPS complaint leave open the facts regarding the Misconduct that was comitted against him during the time before he was taken to court, Petitioner states that facts were withheld that he believes would have changed the outcome of his entire case, due to the facts of being taken to several different police facilities without cause, Petitioner has attempted to bring the facts to the courts attention in the Post-Conviction, and all the court did was deny him of the opportunity to present to it the courts a claim of deprevation of his rights, State and Federal, the denial of the P.C. was premised upon unsound logic, and the basis for the courts decision was not properly presented to the defendant, the courts judgment on the issues of the defendant being given inadequate and ineffective assistance of counsel was in error and against the authorities of Strickland, Petitioner next shows that the facts regarding his complaint that was filed in the Office of Professional Standards of the Chicago Police department have been issues that have been under fire due in part because of the fact that it has been revealed that Misconduct has not been effectively reviewed in a manner that the general public request. Petitioner presents Exhibit #5, page 10 which is a newspaper article that shows that the Chicago Police department has failed to release the names of officers whom have more than 10 complaints filed against them, Petitioner states that he filed a complaint and requested to have a copy of such and the findings of the investigative officials whom did an investigation on his complaint, the facts are spread of record that the police are withholding crucial evidence that would prove that police officials violated the defendants constitutional rights when they arrested him and afterwards treated him in a cruel and unusual manner, and Petitioner states that the facts unfolded in the article reveal that there is a unlawful policy in place that prevents him from proving the truth of all matters that he has presented to the Courts thusfar, and because of such that the Habeas Corpus courts should intervene and conduct a hearing to determine the wrongs that have been comitted against him and that such honorable court should remand his case back to the cook county trial court to conduct a hearing on the facts of the arrest and the missing complaint that was filed and made apart of the record in his case, Petitioner shows in exhibit #5, pages 11, & 12 more articles that show that a serious issue has not been taken care of properly, and that supports that he should be given an opportunity to have the courts review all of the files of the Police departments O.P.S. investigators whom claimed to have conducted their investigation of his complaint that was originally filed in the case, and that upon its review it should determine if defendant should be in fact given a Court hearing regarding the contents of the complaint that the defendant states would have resulted in a finding that he was denied of the opportunity to have all of the facts presented before the courts of cook county, Petitioner also states he raised a valid issue regarding the trial courts judges prejudice, and that the next exhibit page, 13 reveals the conduct of the judge, and how such led to his removal from the bench, Petitioner states that the court should take such into consideration also.

## CONCLUSION

Petitioner states that the conclusion of the matter are conclusions that must be considered as awhole, the facts are spread about the record and they are presented by the defendant whom has presented such in a Pro-Se manner, the facts shown in the Post-Conviction Petition warrant a reversal of the denial. Petitioner shows in exhibit #5, page 14, his corrected sentencing Mittimus said reflects the time the defendant was credited with and it also reveals a sentence of 18 years was placed against the defendant after remand of the case due to errors in the States presentation of his history convictions, facts in regards to the sentencing issue was ignored by the defense counsel defendant had representing him during the time of remand, and its known that another State Appellate Defender had the case and was re-assigned, yet the conclusion of the matter wasnt settled and as shown in the defendant exhibit #5, page 15 is a letter from the attorney whom mis-stated the facts regarding the sentence Petitioner states that he was denied of effective assistance of counsel and he was denied of this right throughout his entire case, in the trial court and in the first district appellate court and in the State of Illinois Supreme Court. Exhibit, #5, pages 17-28 are pages of the defendant clerks docket printout,, which reveals the proceedings thusfar had in the courts, Petitioner states he has maintained his innocence and that he was precluded from introducing such due to his trial counsel failure to let him testfy in the trial court, facts are know that the defendants defense was that of him being upset about a dear friend of his whom had died in the custody and under control of the alleged victims of the case, whom failed to afford his friend of a safe environment the facts are not presented in the Petitioners P.C. because the facts are those that should be brought out in a trial stting on remand, yet the defendant now submits to the Federal Courts that the case should be directly reversed due to the fact that the charging instrument was invalid and the Indictment was void due to the fact that no witness appeared before the Grand Jury as can be seen from the actual Grand Jury True Bill, which doesnt named the witness whom it is shown testified before a Grand Jury, Petitioner also states that a issue in regards to the Grand Jury exist due in part because of the Clerks office of the Cook County Circuit Court failing to attached to the record on appeal the true Certificate (Certified record of the Grand Jurors) which is mandatory pursuant to the Rules of the Supreme Court of the State of Illinois, Sup. Ct. Rule 608 (a) (2). these facts reveal the court has failed to acknowledge the rights of the defendant to Due process of law, and the courts have condoned the acts of the States Attorney of Cook County to procure indictments in a unjustified and Illegal manner, which warrants the Habeas Corpus Courts review and direct and prompt finding of Illegality in the processes of Cook County Circuit Courts, which also warrants the courts to vacate the conviction of said defendant.

WHEREFORE, Defendant/Petitioner prays that the honorable Court will grant this Petition for Habeas Corpus, and that the Court consider the previous arguments produced in the attached Post-Conviction Petition that is Exh-#3 contained within the Habeas corpus Petition, said defendant/Petitioner now prays for the relief so duly requested to protect his rights to Due Process and Equal Protection of the Law, State and Federal.

Pro-Se Defendant/Petitioner

Respectfully,

/s/ _Xdw~ Patterson_

### DECLARATION UNDER PENALTY OF PERJURY

I, _Kevin Patterson_ , _Pro se_, decalre under penalty
of perjury that I am the maker of the foregoing pleading/
document, that I have read the contents thereof, and that the
information contained therein is true and correct. I further
declare under penalty of perjury that the EXHIBITS (if any)
attached to the foregoing pleading/document are what they
are represented to be and that the information contained
therein is true and correct and is a matter of record. 28
U.S.C. § 1746 and 18 U.S.C. § 1621.

Signed this _27_ day of _November_ , 2007_ .

_(Signature)_

### CERTIFICATE OF SERVICE

I, _Kevin Patterson_ , _Pro se_, hereby certify that the
proper number of copies of the foregoing pleading/ document
have been mailed to the Clerk of the Court and to (opposing
parties) and/or Opposing Counsel of record in this cause by
placing the copies, with First Class Postage paid, in the
United States Mail at the _East Moline Correctional Center_
_East Moline_ , Illinois, _61244_ , on this _27_ day of _November_ ,
_ . This certificate of service is made under penalty of
perjury. 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

Signed this _27_ day of _November_ , 2007.
above verified by Notary Public on the
date as shown above.

_(Signature)_

Notary Public

```
OFFICIAL SEAL
PATRICIA J. HENDRICKSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 12-10-08
```

APPENDIX

# Exhibit A

1.

| 1. LAST | 7. ALIAS OR N | | | 8. DIST. R. | 9. HEIGHT | 10. WEIGHT | 11. HAIR | 12. HAIR STYLE | 13. EYES | 14. COM |
|---|---|---|---|---|---|---|---|---|---|---|
| | NONE GIVEN | | | 022 | 2 | 175 | BLK | SHORT | BRN | ME |

| 15. I.R. NO. | 16. RESIDENCE ADDRESS | APT. NO./FLOOR | 17. DISTING. MARKS, SCARS, DISABILITIES. ETC | 18. SOCIAL SECURITY NO. |
|---|---|---|---|---|
| | 9642 S. LOWE | | N/V | 329 - 48 - 391? |

| 19. F.O. NO. | 16A. CITY-STATE | ZIP CODE | HOME TELEPHONE | 20. STATE/PLACE OF BIRTH | 21. DRIVERS LICENSE NO. |
|---|---|---|---|---|---|
| | CHICAGO IL | 60628 | 773 239-4441 | IL | P 362 - 5005 -10/6 |

| 22. RD NO. | 23. OCCUPATION | 24. BUSINESS NAME - ADDRESS | CITY-STATE ZIP CODE | BUSINESS TELEPHONE |
|---|---|---|---|---|
| C- 630222 | CONSULTANT | 9642 S. LOWE CHGO IL. 60628 | | 773 239-444? |

| 25. ADDRESS OF ARREST | 26. LOC. ARRESTED | 27. LOCATION (RESIDENCE OF EMPLOYEE) OF EMPLOYEE | 28. BEAT OF ARREST | 29. DATE OF ARREST | | | TIME | 30. ARRESTEE TRANSPORTED TO UNIT BY BEAT |
|---|---|---|---|---|---|---|---|---|
| 2345 W 50TH ST. (ALLEY) | 2 | 092 | 9/5 | DAY 01 | MONTH OCT | YEAR 98 | 1758 009 | 906 |

| 31. RESISTED ARREST | 32. WEAPON | | | | | | | | 36. FOR NARCOTIC ARREST | APPRX WT EST STREET VALUE |
|---|---|---|---|---|---|---|---|---|---|---|
| YES ☐ NO ☑ | PISTOL ☐ REVOLVER ☑ | RIFLE SHOT-GUN ☐ | KNIFE ☐ | OTHER (SPECIFY) | | | | | PROPERTY CANNABIS SUSPECT CONTROLLED SUBSTANCE N | NO. PILLS CALL ORIG CRIME |

| 35. VEHICLE OF ARRESTEE | YEAR 86 | MAKE CADILLAC | MODEL CPE/DVL | BODY STYLE 2-DOOR | COLOR SILVER | STATE LICENSE NO OR V.I.N X55961 | DISPOSITION OF VEHICLE TOWED |
|---|---|---|---|---|---|---|---|

| 36. PERSON IN INVESTIGATIVE UNIT NOTIFIED | UNIT NOTIFIED - TIME | 37. DOES ARRESTEE HAVE DEPENDENT CHILDREN AT HOME ☐ YES ☑ NO | IF YES - NAME OF Y D MEMBER NOTIFIED - TIME | 38. NAME OF A S A FEL. REV. | CHARGES APPROVED ☐ YES ☐ NO |
|---|---|---|---|---|---|
| RILEY # 20250 AI/VC 1930 | | | | | |

| 39. VICTIM/ COMPLAIN-ANT | NAME BEALS - CLARENCE | SEX M | RACE I | AGE 44 | HOME ADDRESS 1401 E. 55TH ST. | CITY-STATE CHGO - IL. | ZIP CODE | TELEPHONE NO |
|---|---|---|---|---|---|---|---|---|

VICTIM INJURED ☐ YES ☑ NO IF YES - DESCRIBE INJURIES

VICTIM HOSPITALIZED ☐ YES ☑ NO ☐ TREATED & RELEASED HOSPITAL NAME

| 40. REFERENCES (CH - PAR) | 41. OFFENSES | 42. DISPOSITIONS | 40. REFERENCES (CH - PAR) | 41. OFFENSES | 42. DISPOSITIO |
|---|---|---|---|---|---|
| 1 | | | 5 | | |
| 2 | | | 6 | | |
| 3 | | | 7 | | |
| 4 | | | 8 | | |

43. NARRATIVE    (The facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following:)

ABOVE SUBJECT PLACED UNDER ARREST AFTER A/O's ARMED WITH A DESCRIPTION VIA
FLASH MESSAGE FROM BT 920 OF ABOVE VEHICLE THAT WAS JUST USED IN AN ARMED
ROBBERY AND THAT ABOVE SUBJECT WAS OBSERVED FLEEING FROM ABOVE VEHICLE. A/O's
ALONG WITH BT 906 ~~AND~~ PURSUED SUBJECT ON FOOT, APPREHENDED ABOVE
SUBJECT AT ABOVE ADDRESS OF ARREST. ABOVE SUBJECT THEN POSITIVELY ID BY VICTIMS
ON SCENE AS AN OFFENDER IN AN ATTEMPTED ARMED ROBBERY UNDER ABOVE RD #.
SUBJECT THEN PLACED INTO CUSTODY, ADVISED MIRANDA PER PRE PRINTED CARD AND TH?
TRANSPORTED INTO THE 009 DISTRICT FOR FURTHER PROCESSING.

ALSO ARRESTED: AKBAR - JAMAL   M/1/45                    ALSO ARRESTING: BT-706
                                                        BT-955 GLAGHA 6049 R. GIGLIO H/.
                                                        DWYER 16603

I do solemnly, sincerely, and truly declare and affirm that the facts stated herein are accurate to the best of my knowledge.

| FIRST ARRESTING APPEARING OFFICER'S SIGNATURE | STAR NO. | UNIT | DEPUTY CLERK'S SIGNATURE | STAR |
|---|---|---|---|---|
| B. McDermott | 8852 | 009 | | |

| 46. FIRST ARRESTING APPEARING OFFICER - PRINT NAME | BEAT NO. | R.I.P.O | D.O. GRP | MISD. ORD CRT KEY | 45. SECOND ARRESTING OFFICER - PRINT NAME - STAR NO. | UNIT | 46. VEHICLE ASSIGNED TONE ☐ WO ☐ PO ☐ |
|---|---|---|---|---|---|---|---|
| B. McDERMOTT | 747 | 12A | 7 | R | P GREENAN 1969 | 009 | |

| 47. INITIAL APPROVAL OF PROBABLE CAUSE - SIG - STAR | | 48. RESULTS OF FINZ ERR'R CHECK, WAIVED BY SIG - STAR | DATE | TIME | 49. APPROVAL OF CHARGES: SIG - STAR - DATE |
|---|---|---|---|---|---|

WATCH COMMANDER'S NOTATIONS:

| 50. ARRESTEE SEARCHED BY | STAR/EMP. NO. UNIT | 51. DATE RECEIVED - LOCKED | TIME | 52. PERS. PROPERTY RECEIPT NO | 53. TELEPHONE NO. CALLED | TIME |
|---|---|---|---|---|---|---|

| 54. BOOKING OFFICER | STAR/EMP. NO. UNIT | 55 TIME FINGERPRINTED | 56. TIME PHOTOGRAPHED | 57. TIME FED | 58. PLACED IN CELL NO. |
|---|---|---|---|---|---|

## COURT INFORMATION

| 59. ARR OFF DESIRED COURT DATE | BRANCH - CALL | 60. COURT SGT. TO HANDLE ☐ YES ☑ NO | 61. INITIAL COURT DATE | BRANCH - CALL | 62. FINAL CRT. DATE | BRANCH - CALL |
|---|---|---|---|---|---|---|

| 63. BONDED DATE | TIME | 64. BOND RECEIPT NO. | 65. COURT DOCKET NO. | 66. FINAL JUDGE'S NAME |
|---|---|---|---|---|

Exhibit 1

# CHICAGO POLICE ARREST REPORT
CPD-11.420 (REV. 6/92)

| 1. NAME (LAST - FIRST - MIDDLE) | | 2. SEX | 3. RACE | 4. AGE | 5. DATE OF BIRTH |
|---|---|---|---|---|---|
| PATTERSON - KEVIN | | M | 1 | 47 | DAY 16 MONTH JAN YEAR 51 |

| 6. C.B. NO. | 7. ALIAS OR NICKNAME | 8. DIST./RES. | 9. HEIGHT | 10. WEIGHT | 11. HAIR | 12. HAIR STYLE | 13. EYES | 14. COMPLEXION |
|---|---|---|---|---|---|---|---|---|
| 14010-873 | NONE GIVEN | 022 | 602-175 | 175 | BLK | SHORT | BRN | MED |

| 15. I.R. NO. | 16. RESIDENCE ADDRESS | APT. NO./FLOOR | 17. DISTING. MARKS, SCARS, DISABILITIES, ETC | 18. SOCIAL SECURITY NO. |
|---|---|---|---|---|
| 8207100 | 9642 S. LOWE | | N/V | 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 |

| 19. Y.D. NO. | 16A. CITY - STATE | ZIP CODE | HOME TELEPHONE | 20. STATE/PLACE OF BIRTH | 21. DRIVERS LICENSE NO. | STAT |
|---|---|---|---|---|---|---|
| | CHICAGO    IL | 60628 | 773, 239-4441 | IL | P362-5005-1016 | IL |

| 22. RD NO. | 23. OCCUPATION | 24. BUSINESS NAME - ADDRESS | CITY - STATE  ZIP CODE | BUSINESS TELEPHONE |
|---|---|---|---|---|
| C-630222 | CONSULTANT | 9642 S. LOWE    CHGO IL    60628 | | 773, 239-4441 |

| 25. ADDRESS OF ARREST | 26. NO. ARRESTED | 27. LOCATION CODE FOR NATURE OF PREMISES | 28. BEAT OF ARREST | 29. DATE OF ARREST | | | 30. ARRESTEE TRANSPORTED TO UNIT | BY BEAT | TIME |
|---|---|---|---|---|---|---|---|---|---|
| 23RD ST (ALLEY) | 2 | 092 | 915 | DAY 01 | MONTH OCT | YEAR 98 | TIME 1226 009 | 906 | 1810 |

| 31. RESISTED ARREST | 32. WEAPON | | | | 34. FOR NARCOTIC ARREST | | APPRX WT. EST. STREET VALUE | |
|---|---|---|---|---|---|---|---|---|
| YES ☒ NO | PISTOL-REVOLVER ☐ | RIFLE SHOT-GUN ☐ | KNIFE ☐ | OTHER (SPECIFY) | ☐ DRUGS/NARCOTICS ☐ SUSPECT CONTROLLED SUBSTANCE N | NO. PILLS : CALL ORG. CRIME TAX O-662 | | A |

33. ASSIGNED INVENTORY NO(S): 3074453  3074454  3074450

| 35. VEHICLE | YEAR | MAKE | MODEL | BODY STYLE | COLOR | STATE LICENSE NO. OR V.I.N. | DISPOSITION OF VEHICLE |
|---|---|---|---|---|---|---|---|
| OF ARRESTEE | 86 | CADILLAC | CPE/DNL | 2-DOOR | SILVER | X55961 | TOWED |

| 36. PERSON IN INVESTIGATIVE UNIT NOTIFIED | UNIT NOTIFIED | TIME | 37. DOES ARRESTEE HAVE DEPENDENT CHILDREN AT HOME | IF YES - NAME OF Y.O MEMBER NOTIFIED - TIME | 38. NAME OF A.S.A FEL. REV. | CHARGES APPROVED | TIME |
|---|---|---|---|---|---|---|---|
| RILEY #20230 | A/VC | 1930 | ☐ YES ☒ NO | | Gonskie | ☒ YES ☐ NO | 0015 |

| 39. VICTIM/COMPLAINANT | NAME | SEX | RACE | AGE |
|---|---|---|---|---|
| | BEALS - CLARENCE | M | 1 | 44 |

VICTIM INJURED  ☐ YES ☒ NO   IF YES - DESCRIBE INJURIES   ☐ YES ☐ NO   ☐ TREATED & RELEASED   ☐ HOSPITALIZED ☐ TREATED & RELEASED

| | 40. REFERENCES (CH - PAR) | 41. OFFENSES | 42. DISPOSITIONS | | 40. REFERENCES (CH - PAR) | 41. OFFENSES | 42. DISPOSITIONS |
|---|---|---|---|---|---|---|---|
| 1 | 720 ILCS/18-4 Attempt Armed Robbery | | | 5 | | | |
| 2 | 720 ILCS/5/24-1.1(a) UUW by Felon | | | 6 | | | |
| 3 | | | | 7 | | | |
| 4 | | | | 8 | | | |

43. NARRATIVE    (The facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following:)

ABOVE SUBJECT PLACED UNDER ARREST AFTER A/O'S ARMED WITH A DESCRIPTION VIA
FLASH MESSAGE FROM BT 920 OF ABOVE VEHICLE THAT WAS JUST USED IN AN ARMED
ROBBERY AND THAT ABOVE SUBJECT WAS OBSERVED FLEEING FROM ABOVE VEHICLE. A/O'S
ALONG WITH BT 906 ~~and~~ PURSUED SUBJECT ON FOOT, APPREHENDED ABOVE
SUBJECT AT ABOVE ADDRESS OF ARREST, ABOVE SUBJECT THEN POSITIVELY ID BY VICTIMS
ON SCENE AS AN OFFENDER IN AN ATTEMPTED ARMED ROBBERY UNDER ABOVE RD #.
SUBJECT THEN PLACED INTO CUSTODY, ADVISED MIRANDA PER PRE-PRINTED CARD AND THEN
TRANSPORTED INTO THE 009 DISTRICT FOR FURTHER PROCESSING. Victim Notified of Court
clerks. Above Court 60ct98 48-2 @ 9am R.D. 630221
ALSO ARRESTED: AKEAR - JAMAL  M/1/45           ALSO ARRESTING: BT 906
                                                EP 955 Blachowius R GIGLIO #16658
                                                #16653

I do solemnly, sincerely, and truly declare and affirm that the facts stated herein are accurate to the best of my knowledge

| FIRST ARRESTING/APPEARING OFFICER'S SIGNATURE | STAR NO | UNIT | DEPUTY CLERK/S SIGNATURE | | STAR/EMPL. NO |
|---|---|---|---|---|---|
| B. McDermott | 8852 | 009 | | | 14909 |

| 44. FIRST ARRESTING/APPEARING OFFICER - PRINT NAME | BEAT NO | FURLO | D.O. GRP | MISD./ORD CRT KEY | 45. SECOND ARRESTING OFFICER - PRINT NAME - STAR NO | UNIT | 46. VEHICLE ASSIGNED |
|---|---|---|---|---|---|---|---|
| B. McDERMOT | 947 | 12A | 7 | R | P. GREENAN    1969 | 009 | ☐ ONE ☐ TWO ☐ P.O. ☒ P.O. ☐ OTHER |

| 47. INITIAL APPROVAL OF PROBABLE CAUSE - SIG. - STAR | DATE | TIME | 48. RESULTS OF FINGERPR. CHECK WAIVED BY SIG - STAR | DATE | TIME | 49. APPROVAL OF CHARGES - SIG. - STAR | DATE | TIME |
|---|---|---|---|---|---|---|---|---|
| Hap    784 | | | | | | | | |

WATCH COMMANDERS NOTATIONS

OCT 01 1998

| 50. ARRESTEE SEARCHED BY | STAR/EMPL. NO | UNIT | 51. DATE RECEIVED - LOCKUP | TIME | 52. PERS. PROPERTY RECEIPT NO | 53. TELEPHONE NO. CALLED | TIME |
|---|---|---|---|---|---|---|---|
| McFadden | 305954 | 09 | 20ct98 | | 8AB | 445-8862 | 5 |

| 54. BOOKING OFFICER | STAR/EMPL. NO - UNIT | 55. TIME FINGERPRINTED | | 58. PLACED IN CELL NO. |
|---|---|---|---|---|
| Riley | 18783 | 09 | 0046 | 4 |

COURT INFORMATION

| 59. ARR. OFF. DESIRED COURT DATE | BRANCH - CALL | 60. COURT SGT. TO HANDLE | 61. INITIAL COURT DATE | BRANCH - CALL | 62. FINAL CRT DATE | BRANCH - CALL |
|---|---|---|---|---|---|---|
| 2 OCT 98 | 48-2 | ☐ YES ☒ NO | 6 OCT 98 | 48-2 | | |

| 63. BONDED DATE | TIME | 64. BOND RECEIPT NO | 65. COURT DOCKET NO | 66. FINAL JUDGE'S NAME |
|---|---|---|---|---|
| | | | | |

14010-873

# ARREST REPORT
CPD-11.420 (REV. 6/92)

AKBAR JAMAL — CM M/1/45 28 MAR 53

| 7. ALIAS OR NICKNAME | 8. DIST-RES | 9. HEIG | 10. HT | 11. HAIR | 12. HAIRSTYLE | 13. EYES | 14. COMPLEXION |
|---|---|---|---|---|---|---|---|
| NONE | 002 | 501 | 124 | BLK | SHORT | BRN | LT |

**15. I.R. NO**

**16. RESIDENCE ADDRESS:** 4343 S. MICHIGAN 2ND FL — APT NO./FLOOR — **17. DISTING MARKS, SCARS, DISABILITIES, ETC** N/V — **18. SOCIAL SECURITY NO** 354 42 1998

**19. Y.D. NO** — **16A. CITY-STATE** CHICAGO IL **ZIP CODE** 60653 HOME TELEPHONE N/P — **20. STATE/PLACE OF BIRTH** IL — **21. DRIVERS LICENSE NO** A42142053090 **STAT.** IL

**22. RD NO** C-630222 — **23. OCCUPATION** UNEMPLOYED — **24. BUSINESS NAME - ADDRESS**

**25. ADDRESS OF ARREST** 5015 S. OAKLEY — **26. NO. ARRESTED** 2 — **27. LOCATION CODE FOR NATURE OF PREMISES** 140 — **28. BEAT OF ARREST** 415 — **29. DATE OF ARREST** DAY 01 MONTH OCT YEAR 98 TIME 1726 — **30. ARRESTEE TRANSPORTED TO UNIT** 09 **BY BT#** 955 **TIME** 1800

**31. RESISTED ARREST** YES ☐ NO ☑ — **32. WEAPON** PISTOL ☐ REVOLVER ☐ RIFLE SHOT. ☐ GUN ☐ OTHER (SPECIFY): KNIFE ☐ — **33. PROPERTY INVENTORY NO(S).** — **34. FOR NARCOTIC ARREST** SUSPECT CANNABIS ☐ SUSPECT CONTROLLED SUBSTANCE ☐ — **APPR WT** NO. PILLS N — **35. STREET VALUE** CAL/ORG/PRIME PER ☐ 6.66 ☐ 4 ☐ 5

**35. VEHICLE OF ARRESTEE** YEAR 86 **MODEL** CADILLAC CPE DVL **BODY STYLE** 2DR **COLOR** SILVER **STATE LICENSE NO. OR V.I.N.** X55961 — **DISPOSITION OF VEHICLE** TOWED

**36. PERSON IN INVESTIGATIVE UNIT NOTIFIED** RILEY 20250 **UNIT NOTIFIED** A1/VC **TIME** 1930 — **37. DOES ARRESTEE HAVE DEPENDENT CHILDREN AT HOME** YES ☐ NO ☑ — IF YES - NAME OF Y'D MEMBER NOTIFIED - TIME — **38. NAME OF A.S.A. FEL. REV** — **CHARGES APPROVED** YES ☐ NO ☐ **TIME**

**39. VICTIM/COMPLAINANT NAME** BEALS, CLARENCE — **SEX** M **RACE** 1 **AGE** 44 **HOME ADDRESS** — **CITY-STATE** **ZIP CODE** **TELEPHONE NO**

**VICTIM INJURED** YES ☐ NO ☑ IF YES - DESCRIBE INJURIES — **VICTIM HOSPITALIZED** YES ☐ NO ☐ TREATED & RELEASED ☐ — **HOSPITAL NAME**

| 40. REFERENCES (CH.-PAR.) | 41. OFFENSES | 42. DISPOSITIONS | 40. REFERENCES (CH.-PAR.) | 41. OFFENSES | 42. DISPOSITIONS |
|---|---|---|---|---|---|
| 1 | | | 5 | | |
| 2 | | | 6 | | |
| 3 | | | 7 | | |
| 4 | | | 8 | | |

**43. NARRATIVE** (The facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following:)

A/O'S MONITORED A FLASH MESSAGE FROM BT 920 WHO LOCATED THE VEHICLE USED IN A ARMED ROBBERY MOMENTS EARLIER. SEVERAL CITIZENS RELATED TO A/O'S THAT TWO MALE BLACKS PARKED SAID AUTO AND FLED ON FOOT WEST ON 50 ST. A/O'S, ARMED WITH A DESCRIPTION OF OF SAID SUBJECTS, OBSERVED BOTH SUBJECTS IN THE AREA OF 50th AND OAKLEY. AS A/O'S APPROACHED, OFFENDER #2 (PATTERSON, KEVIN) FLED AND WAS APPREHENDED BY BTS. 906/947. ABOVE OFFENDER WAS PLACED INTO CUSTODY AT ADDRESS ABOVE. OFFENDER WAS THEN TRANSPORTED TO SCENE OF SAID ARMED ROBBERY WHERE HE WAS POSITIVELY IDENTIFIED BY A WITNESS AS THE DRIVER OF ABOVE MENTIONED VEHICLE INVOLVED/USED AS GETAWAY VEHICLE.

ADVISED MIRANDA - TRANS TO 09 FOR PROC.
ALSO ARRESTED: PATTERSON, KEVIN M/1/47

AS ID NO BOND NO GANG.

ALSO ARRESTING BT 947 McDERMOTT 8852
GREENAN 19169
920 McMURRAY #1962
BT 906 GIGLIO 12658

**I do solemnly, sincerely, and truly declare and affirm that the facts stated herein are accurate to the best of my knowledge**

**1ST ARRESTING APPEARING OFFICER'S SIGNATURE** B. Dwyer — **STAR NO.** 16603 — **UNIT** 09 — **DEPUTY CLERK'S SIGNATURE** — **STAR/EMP. NO.**

**1. FIRST ARRESTING/APPEARING OFFICER - PRINT NAME** K. DWYER — **BEAT NO** 955 — **FUR LO** — **D.O. CRT** 7 — **MISD. ORD CRT SEX** F — **45. SECOND ARRESTING OFFICER - PRINT NAME - STAR NO** S. ALABNA 6049 **UNIT** 09 — **46. VEHICLE ASSIGNED** 1 ONE ☐ 2 TWO ☐ 3 PO ☐ SQD ☐ OTHER ☐

**47. INITIAL APPROVAL/PROBABLE CAUSE - SIG - STAR** — **48. RESULTS OF FINGERPR. CHECK WAIVED BY - SIG - STAR** — **DATE** — **TIME** — **49. APPROVAL OF CHARGES - SIG - STAR** — **DATE** — **TIME**

**WATCH COMMANDER'S NOTATIONS.**

**49. ARRESTEE SEARCHED BY** — **STAR/EMP. NO** — **UNIT** — **51. DATE RECEIVED - LOCKUP** — **TIME** — **52. REAL PROPERTY RECEIPTING** — **53. TELEPHONE NO. CALLED** — **TIME**

**54. BOOKING OFFICER** — **STAR/EMP. NO.** — **UNIT** — **55. TIME FINGERPRINTED** — **56. TIME PHOTOGRAPHED** — **57. TIME FED** — **58. PLACED IN CELL NO.**

## COURT INFORMATION

**59. ARR. OFF. DESIRED COURT DATE** — **BRANCH-CALL** — **60. COURT SGT. TO HANDLE** YES ☐ NO ☑ — **61. INITIAL COURT DATE** — **BRANCH-CALL** — **62. FINAL CRT. DATE** — **BRANCH-CALL**

**63. BONDED - DATE** — **TIME** — **64. BOND RECEIPT NO** — **65. COURT DOCKET NO.** — **66. FINAL JUDGE'S NAME**

**CHICAGO POLICE CASE REPORT**

CPD-1.380 (Rev. 8/96)

4.

POLICE PERSONNEL · NARRATIVE · PROPERTY · CIRCUMSTANCES · OFFENDER · WITNESS · ADDITIONAL VICTIMS · SCENE

ROBBERY

CONNEXIONS – BUSINESS OFFICE

CONNEXIONS – BUSINESS OFFICE

| Name | | |
|---|---|---|
| QUINLEXIONS Social Services | | |
| McGEE, FELISE (Wm.) | | |
| JONES, Timmy L. | | |
| BURTON, Rosemary | | |
| RODRIGUEZ, Hipolito | | |
| PATTERSON, Kevin (Wm.) | | |
| AKBAR, Jamal A. | | |

EVENT #1  10158 – IN SUMMARY:

10331  ATTEMPT  ARMED – HANDGUN

DESIGNATED AREA 1 — VOID — DENIED

Narrative:  He has a gun! ... Rio Campbell entered the office at the above location thru the front as Rio Flores headed towards the rear ... All running from the office at above location ... Victim's Patrol at 5102 S. Western ...

CPD AREA 1  VOID  DENIED

5.

CONTINUATION OF NARRATIVE

OF The location No lo Lo Campbell entered the office    Rio's RETURNED TO The Scene AND    C - 630222

Offender #1 was standing in the rear of the office    Lensed from Victims that Offender #1 was Dropped

Summary; they a desk. Offender #1 was holding a    off at The office by Offender #2 who Victim knew

Questioned retainer. Offender #1 Looked up towards Rio    Let into The Locked office by witness Rodney and Rios

Campbell and fired with. The Gun in his RIGHT hand, thru    Then Left for The Day. Offender #1 Then Approached

The rear door of the office. Offender Can No lo Thur alley    The Victims with The Gun Pointing at Victims #3

This Stating Flash information to Assisting units    ordering Them To fire The wall and lay down.

QUOR OF CODE -    ☐ CORRECT    REV CODE    METHOD ASSIGNED    OFFICER ASSIGNED    DATE ASSIGNED    SUPV. STAR NO    REASSIGNED

SERIAL NOS. OR IDENTIFICATION NOS.    PREPARED BY - SIGNATURE    300    STAR NO.    DATE (DAY/MO/YR.)    APPROVED BY - SIGNATURE    STAR NO.    DATE (DAY/MO/YR.)

b.

# Cops feel time crunch on arrests

## After 48 hours, a suspect now must be charged or let go

**BY FRANK MAIN**
Crime Reporter

Tim Fulton allegedly gave police a videotaped confession last Friday in the killing of a 21-year-old man on the South Side—and then they let him go.

The order, which took effect Friday, was a response to a pending federal lawsuit accusing the city of not abiding by a 1991 U.S. Supreme Court ruling. Except for "extraordinary circumstances," police can't hold a suspect more than 48 hours unless a judge reviews the arrest and decides there is probable cause to believe the arrested person committed a crime, the high court has said.

Hillard's order would allow detectives to hold a murder suspect rush their investigation," said Greg Bella of the Fraternal Order of Police. "We're absolutely opposed to this."

"I think Hillard is probably quite right; they have to comply with the constitutional minimum," said Benjamin Wolf, an attorney with the American Civil Liberties Union of Illinois.

The order blindsided key players in the justice system.

"Nothing was worked out in advance with the court," said Timothy Evans, chief judge for Cook County.

Evans would not predict what one of his judges would do if asked to make such a probable cause ruling.

The suspects forced detectives to rush their investigation, cops said.

On Friday, Chicago police Supt. Terry Hillard signed an order imposing the deadline, a move that critics fear will hamper murder cases.

"You are forcing detectives to

who is arrested without a warrant for up to 72 hours if a judge finds there is probable cause to do so.

"Whether this will work depends on how a judge deals with the facts that are presented to him," he said.

"We will accommodate litigants and lawyers as best we can."

Officials pointed out that judges already are on call to sign warrants and make other court decisions after hours. But critics of the order believe judges will bristle at getting involved in a case before prosecutors are ready to bring charges.

"The idea of having judges holding hearings before charges are filed seems to me to be unworkable," said Thomas Needham, former chief of staff to Hillard and

former general counsel to the superintendent.

"Where are we going to find a judge at 4 in the morning?" Bella added. "On a Saturday?"

In the killing of Arthur Patterson, Fulton was arrested last Wednesday and gave a videotaped statement last Friday, but prosecutors told police they needed to speak to more witnesses to verify his account that two other men fired shots at Patterson.

After extra detective work was done, two other suspects, Antonio Thomas, 24, and Toney Cole, 18, were charged Monday and Fulton was charged Tuesday, all with first-degree murder, for allegedly killing Patterson in a dispute over marijuana.

M.

| | GENERAL ORDER | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|---|
| | | 4 September 1992 | 9 September 1992 | 92-5 |

| SUBJECT | | DISTRI-BUTION | AMENDS |
|---|---|---|---|
| PROCESSING PERSONS UNDER DEPARTMENT CONTROL | | E* | |

| RELATED DIRECTIVES | | RESCINDS |
|---|---|---|
| | | |

## TABLE OF CONTENTS

*RESCINDED BY G.O. 02-03 ON 6 JUNE 2002*

PAGE

I.    PURPOSE.............................................................................1

II.   DEFINITIONS........................................................................1

III.  POLICY.............................................................................2

      A.    General......................................................................2
      B.    Specific.....................................................................2

IV.   GENERAL RESPONSIBILITIES...........................................................2

      A.    Watch Commanders.............................................................2
      B.    Desk Sergeants...............................................................3
      C.    Booking Officers.............................................................3
      D.    Arresting Officers...........................................................4

V.    FIELD ARREST PROCEDURES............................................................4

      A.    Adult Arrestees..............................................................4
      B.    Adult Female Arrestees.......................................................5
      C.    Foreign Nationals and Aliens.................................................6
      D.    Juvenile Arrestees...........................................................6
      E.    Traffic Violators............................................................6
      F.    Sick or Injured Arrestees....................................................6
      G.    Arrestees Requiring Hospitalization..........................................6
      H.    Arrestee in Need of Mental Treatment.........................................7
      I.    Investigation or Detention/Other Than District of Arrest.....................7

VI.   SEARCHING PERSONS UNDER DEPARTMENT CONTROL.........................................7

VII.  PROCEDURES AT THE DETENTION FACILITY...............................................8

      A.    Booking Officer..............................................................8

            1.    Receiving Arrestees....................................................8
            2.    Fingerprinting Arrestees...............................................9
            3.    Direct Electronic Fingerprinting Network (DEFN)........................9
            4.    Recording and Transmitting Fingerprints-Inked Fingerprint Cards...10
            5.    Alternate Procedures for Transmitting Fingerprints.................11
            6.    Fingerprint Check Results.............................................11
            7.    Temporary Detention of Arrestees for Other Government Agencies...13
            8.    Photographing.........................................................13
            9.    Movement of Arrestees.................................................14
            10.   Status of Arrestees...................................................15

      B.    Desk Sergeant...............................................................15

            1.    Notification..........................................................15
            2.    Facsimile Transmission................................................15
            3.    Results of Facsimile Transmission.....................................15
            4.    Notice of Warrant.....................................................15

C.    Watch Commander..............................................................16

       1.   Initial Approval of Probable Cause............................16
       2.   Approval of Charges...........................................16
       3.   Additional Responsibilities...................................16
       4.   Releasing Arrestees Without Charging..........................17
       5.   Expediting or Waiving the Fingerprint Check...................17

VIII.  ARRESTEE'S COMMUNICATIONS AND VISITORS....................................18

       A.    Communications and Visitors..............................................18
       B.    Telephone Procedure......................................................19

IX.    COURT SCHEDULING AND COURT APPEARANCE.......................................19

       A.    Court Scheduling.........................................................19
       B.    Court Appearance Responsibilities........................................20
       C.    Court Sergeants..........................................................22

X.     ARREST REPORT AND RELATED DOCUMENTS.........................................23

       A.    Arrest Report Format.....................................................23
       B.    Court Complaint Transmittal Listing......................................23
       C.    Additional Copies of Identification Records or Photos....................24
       D.    Miscellaneous............................................................24

| | GENERAL ORDER | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|---|

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| PROCESSING PERSONS UNDER DEPARTMENT CONTROL | E* | - |

**RELATED DIRECTIVES** General Orders: Line-up Procedures; Non-Traffic Arrest Warrant Procedure; District Watch Commanders; Felony Review by Assistant State's Attorney; Restraining Arrestees. Department Special Orders: Bond Procedure; Interviewing Patients At Cook County Hospital; Facsimile and Teletype Procedures.

**RESCINDS** General Orders: 78-1 and 78-21. Department Special Order: 92-4. Department Notice: 90-75. Related Facsimile/Teletype Messages: #00415; 04705; 05328; 07701; 006967; 003132; 005201; 01600; 00508; 03131; 03307; 03123 and 10541.

I. **PURPOSE**

This order:

A. ~~defines certain terms which pertain to processing persons who come under Department control.~~

B. states Department policy relating to processing arrestees.

C. sets forth procedures and assigns responsibility for the processing of arrested persons.

II. **DEFINITIONS**

A. <u>Adult</u> – A person 17 years of age or older.

B. <u>Arrestee</u> – A person taken into custody for the commission of an offense.

C. <u>Arresting Officer(s)</u> – A sworn member who actually takes a person into custody.

D. <u>Booking</u> – All processes involved in the handling of an arrestee prior to the final charging.

E. <u>Booking Officer</u> – A member (e.g., lockup keeper or detention aide) who has been designated by the watch commander at a detention facility to complete the booking process.

F. <u>Charging</u> – The formal recording on an Arrest Report (CPD-11.420) of the legal citation of offenses alleged in signed complaints.

G. <u>Initial Approval of Probable Cause</u> – The entering on an Arrest Report of the watch commander's signature indicating there is probable cause to detain the arrestee and the elements of the offense have been included on the Arrest Report.

H. <u>Approval of Charges</u> – The entering on an Arrest Report of the watch commander's signature indicating approval of the formal filing of charges against the arrestee.

I. <u>Desk Sergeant</u> – A sergeant assigned the responsibility of supervising the duties performed by desk and lockup personnel at a detention facility. Supervisory responsibilities for Central Detention Section personnel will be assumed by the watch commander assigned to that section.

J. <u>Investigating Officer</u> – A sworn member who participates in an investigation and obtains information pertinent to subsequent court proceedings.

K. <u>Juvenile</u> – A person under 17 years of age.

L. <u>Lockup</u> – That area in a Department facility which is set aside for the custody and processing of arrestees. It is set apart from the rest of the facility by a solid/bar steel door.

1

M. **Watch Commander** – A sworn member who is in command of a watch during his duty hours and who is responsible for directing all police activities under his jurisdiction.

III. **POLICY**

A. **General**

It is the policy of the Department to observe, uphold, and enforce the law without regard to age, sex, race, color, religion, sexual orientation, national ancestry, marital status, parental status, military discharge status, source of income, or physical or mental disability of any person. Arrested persons will be booked, charged and made eligible for bond in that order. These processes will be completed without unnecessary or unreasonable delay. Investigation or interrogation of an arrestee will not delay the booking process. Extreme care must be taken to ensure that persons in custody are released on bond or brought before a judge at the earliest opportunity after the booking process has been completed.

B. **Specific**

1. The Department's justification for the detention of any arrested person will be included in the Arrest Report. An arresting officer is required to set forth in the Arrest Report sufficient information (Probable Cause to Arrest) to substantiate all charges placed against an arrestee.

2. Department personnel will, at all times, be aware of each arrestee's rights and will:

   a. expedite all necessary processing so that the arrestee will not be detained longer than necessary.

   b. never use force or coercion in seeking admissions or confessions.

   c. recognize and respect the arrestee's rights as defined in the General Order entitled "Interrogations: Field and Custodial."

IV. **GENERAL RESPONSIBILITIES**

A. ✳ **Watch Commanders**

Watch commanders in charge of a detention facility will:

1. be responsible for ensuring the proper handling and processing of all adult arrestees, juveniles and other persons who come within their jurisdiction.

2. review all Arrest Reports at the onset of the booking process and ensure that the arresting officer has complied with Item IV-D of this order.

3. approve proper charges placed against arrestees when the booking process is complete.

4. ensure that an assistant state's attorney has been notified in cases necessitating felony review.

5. in cases wherein the assistant state's attorney does not approve felony charges against the arrestee, review the facts of the case to determine:

   a. whether the responsible exempt member should be called via Operations Command for consultation and a determination.

   b. if circumstances warrant reduced charges.

   c. whether the arrestee should be released without charging.

6. have the final authority to order the release of a person without charging based upon available evidence.

2

11.

    ensure that all arrestees are charged (booking process completed) without unnecessary delay.

    8.    allow a reasonable number of visitations by an attorney, member of the arrestee's family or a friend unless there is imminent danger of escape. Such visits will be permitted in accordance with procedures outlined in Item VIII of this order.

    9.    personally inspect the lockup at least twice during his tour of duty, note conditions found and sign in the Inspection Log of Persons in Custody (bound ledger book). In District 001 the inspection responsibilities will be assumed by the watch commander assigned to the Central Detention Section.

B.    **Desk Sergeants**

The desk sergeant at a detention facility will be responsible for ensuring:

    1.    that an arrestee is not charged until a name check has been made.

→    2.    that all court complaints are properly sworn to by the complainant/ arresting officer and a member sworn as a deputy clerk of the circuit court;

    3.    proper completion of all court complaints and related documents and the assignment of cases to the proper court.

    4.    that the required signatures (arresting officer and Department member sworn as a deputy clerk) have been entered, when necessary, on the affirmation statement in the Arrest Report.

    5.    that the Arrest Report is promptly submitted to the watch commander for review.

    6.    that the legal citation for offense(s) alleged in signed complaint(s) are properly recorded on all copies of the Arrest Report.

    7.    Arrest Reports and related documents are properly distributed, as indicated in Item X of this order.

    8.    the preparation of bail bonds when authorized.

    9.    that Court Complaint Transmittal Listings (CPD-11.551) are properly prepared.

    10.    that arresting officers are notified if a change is made in the Arr. Off. Desired Court Date/Branch-Call box on the Arrest Report.

    11.    the security of female arrestees, juveniles and other persons left in his custody.

    12.    that lockup personnel are properly making entries in the Inspection Log of Persons in Custody by personally inspecting the lockup and the log at least twice during his tour of duty. He will check all entries since the last supervisory inspection, indicate conditions found, take appropriate action when necessary and sign the log. In District 001 the inspection responsibilities will be assumed by the watch commander assigned to the Central Detention Section.

C.    **Booking Officers**

Booking officers will process arrestees in accordance with Department directives. Their responsibilities include the following:

    1.    completing appropriate portions of the Arrest Reports and obtaining Central Booking (CB) numbers.

    2.    recording the names of all arrestees on the Roster of Persons in Custody form (CPD-11.515).

3.    permitting arrestees to make a reasonable number or telephone calls to an attorney, member of their family or friend.

4.    ensuring that first aid is administered when needed.

5.    maintaining security and providing for the well-being of all arrestees while in the detention facility.

D.  **Arresting Officers**

**The arresting officer will:**

1.    adhere to all Department procedures relative to processing arrestees and will ensure there is a valid basis for charges placed.

2.    complete the Arrest Report in accordance with the Form Preparation Instructions printed on the inside cover of the Arrest Report formset booklet. The Form Preparation Instructions will also be followed when completing the Juvenile Arrest Report (CPD-11.421).   **EVERY ARREST REPORT NARRATIVE MUST ADEQUATELY SUPPORT THE ARREST BY RELATING ALL ESSENTIAL FACTS (Probable Cause to Arrest) AND BY FULLY DESCRIBING THE CIRCUMSTANCES OF THE ARREST.**

3.    enter the desired court date in accordance with the provisions of Item IX-A of this order.

4.    notify witnesses of the date, time and location of court proceedings and will appear promptly at all judicial hearings, as required.



5.    for persons arrested without an arrest warrant, sign the affirmation statement on the bottom of the narrative section of the Permanent Record-Records Division (white) of the Arrest Report in the presence of a Department member sworn as a deputy clerk of the Circuit Court of Cook County.

V.    **FIELD ARREST PROCEDURES**

A.    **Adult Arrestees**

1.    Officers taking an arrestee into custody or accepting custody from other officers will be responsible for the safety and security of the arrestee and for conducting a thorough search in accordance with established Department procedures.

2.    Officers will normally transport an arrestee in a vehicle equipped with a protective divider or request a squadrol as soon as possible for transportation to the district of arrest.

3.    The transporting officers will transport the arrestee to the district of arrest where they will:

a.    turn the arrestee over to the booking officer (for female arrestees, see Item V-B).

b.    immediately notify the desk sergeant that an arrestee has been brought into the facility and report the name of the arrestee, the circumstances of the arrest and the probable charges.

c.    ensure that the booking officer has sufficient information to complete the Roster of Persons in Custody form maintained in the detention facility.

     NOTE: An exception will be made to procedures outlined in Item V when a multiple arrest incident is declared as outlined within the General Order entitled "Processing Multiple Arrests."

4.    The arresting officer may transport the arrestee when such action is warranted (e.g., non-availability of squadrols or vehicles equipped with protective dividers).  In such instances, he will promptly turn over the arrestee to the booking officer and provide the desk sergeant

4

changes.

※※※ ——→ ⑤    If necessary, complainants will be directed to the district of arrest or will be transported by the arresting officer to the facility for the purpose of signing the complaints.

6.    As soon as the situation allows, the arresting officer will proceed to the detention facility to ensure that all required arrest documents are properly completed and the Arrest Report formset is presented to the watch commander in charge of the detention facility.

7.    An arresting officer will obtain the prior approval of the watch commander of the unit of detention before delivering an arrestee to the Central Detention Section.

B.    Adult Female Arrestees

1.    Female arrestees transported to the district of arrest wherein no female detention facilities are available will be processed as follows:

a.    A Central Booking (CB) number will be obtained (traffic violators only as required) and the booking process will be completed for those arrestees not requiring fingerprinting.

(1)    Pending completion of the booking process or while waiting to post bond, arrestees will be temporarily detained in the desk or office area.

(2)    If, after a reasonable period of time, the arrestee cannot be let to bail or the number of arrestees being detained in the desk area presents an imminent danger or is disruptive to the police personnel assigned to desk duties, the watch commander will arrange for a transfer to the designated female detention facility. The completed Arrest Report and signed complaints will accompany the arrestees.

(3)    A CB number will not be obtained for a female arrestee requiring fingerprinting. Upon completion of the preliminary investigation, females requiring fingerprinting will be transported immediately to the appropriate female detention facility accompanied by an Arrest Report with the unshaded portion completed and signed complaints. If a Records Division (RD) number is obtained it will be entered in the designated box.

Female detention facilities are designated below:

| District of Arrest | Detention Facility |
| --- | --- |
| 001-009-012-018-021 | Women's Central Detention 1121 South State Street |
| 002-003-007-008 | Area Center 1 (002) 5101 South Wentworth Avenue |
| 004-005-006-022 | Area Center 2 (005) 727 East 111th Street |
| 010-011-013 | Area Center 4 (011) 3151 West Harrison Street |
| 014-015-016-017-025 | Area Center 5 (025) 5555 West Grand Avenue |
| 019-020-023-024 | Area Center 6 (019) 2452 West Belmont Avenue |

b.    An entry on the Roster of Persons in Custody form will be made for female arrestees requiring a transfer to a female detention facility from the district of arrest. Desk personnel will ensure

**2.** Female arrestees transported to a district of arrest having female detention facilities will be processed in accordance with the applicable provisions of this order.

**C. Foreign Nationals and Aliens**

For an arrestee identified as a Diplomatic Officer, Consular Officer, Honorary Consul, member of the family of a Diplomatic Officer, Consular Officer, Honorary Consul or a foreign national, follow the procedures outlined in the Department Special Order entitled "Foreign Nationals and Aliens."

**D. Juvenile Arrestees**

**1.** Police officers who have apprehended a juvenile for other than a curfew or traffic violation will follow the procedures within the Department Special Order entitled "Processing of Juveniles."

**2.** If a juvenile has been apprehended as a curfew violator, the arresting officer will follow the procedures within the General Order entitled "Processing Curfew Violators."

**3.** A juvenile arrestee may be processed as an adult in accordance with the provisions enumerated within the Department Special Order entitled "Processing Juveniles as Adults."

**E. Traffic Violators**

Detention for a traffic violation other than a traffic arrest made on a warrant will not require the completion of an Arrest Report when the violator is promptly let to bail or is temporarily detained at the district waiting to post bond. The arresting officer will follow the procedures within the Department Special Order entitled "Traffic Violators, Name Checks and Bonding."

**F. Sick or Injured Arrestees**

**1.** Under normal circumstances, a sick or injured arrestee requiring emergency medical care/treatment will be transported to the nearest hospital approved by the Chicago Department of Health for emergency medical care before being transported to the appropriate detention facility.

**2.** A sick or injured arrestee in a detention facility who requires emergency treatment will normally be transported in accordance with the General Order entitled "Squadrol Operating Procedures." If the arrestee is not hospitalized after receiving first aid, he will be returned to the appropriate facility for completion of the booking process.

**G. Arrestees Requiring Hospitalization**

**1.** When an arrestee is found to be sick or injured, the lockup keeper will immediately notify the desk sergeant and the watch commander, even if the arrestee's condition appears to have been caused by intoxication. The watch commander will make the decision on whether the arrestee requires medical attention.

**2.** In the event an arrestee requires hospitalization, transporting officers will follow the procedures outlined in the General Order entitled "Squadrol Operating Procedures," relating to the hospitalization of adult male or female arrestees and notify the watch commander of the district of arrest.

**3.** The watch commander in the district of arrest will follow the procedures outlined in the General Order entitled "Hospitalized Arrestees."

If an arrestee is a "Person Subject To Involuntary Admission," as defined in the State of Illinois Mental Health Code, Chapter 91 1/2, the procedures within the General Order entitled "Handling Persons in Need of Mental Treatment," will be followed.

I.   Investigation or Detention/Other than District of Arrest

1.   Normally, when an arrest is made, the location of detention will be the district of arrest. However, when an arrest is made subsequent to an interview or as a result of an investigation conducted in a police facility other than a district station, the location of detention will be the lockup of the area center which encompasses the facility wherein the arrest was effected. Arrests by members of the Organized Crime Division may be processed at the district/area of arrest or at the Central Detention Section. In either instance, the arresting officer will transport/accompany the arrestee to the detention facility. The location of detention for female arrestees will be in accordance with Item V-B of this order. The arresting officer will immediately telephone the desk sergeant of the district located in the area center and provide the arrestee's name, address and probable charges.

2.   When a person is arrested and is taken to a police facility other than the district of arrest, the arresting officer will immediately telephone the desk sergeant of the district of arrest and report the name and address of the arrestee, probable charges, and the lockup facility in which the arrestee will be detained.

VI.   SEARCHING PERSONS UNDER DEPARTMENT CONTROL

A.   Arrestees will be thoroughly searched prior to being transported to a detention/police facility. This search will be conducted by a member of the same sex as the arrestee and in accordance with established Department procedures.

B.   Lockup personnel will also search each arrestee delivered to their custody and remove and inventory property in accordance with the procedures outlined within the General Order entitled "Lockup/Lockup Keepers." Searches will be conducted by Department members of the same sex as the arrestee. Arrestees will also be scanned with a metal detecting device to prevent concealment of weapons not discovered in the initial search.

C.   Arrestees will not be subjected to a strip search for any offense unless specific factors are present which establish reasonable belief that the search will uncover a weapon or controlled substance. Strip searches will ordinarily be conducted in a police lockup and include prior written approval of the watch commander using the Report of Strip Search (CPD-11.521).

D.   Discretion and good judgment will be used when conducting a strip search. The arrestee will not be required to remain unclothed any longer than is absolutely necessary. All strip searches will be conducted in a secure area which is isolated from the view of others. No touching of body cavities is permitted by Department members.

E.   A search of any body cavity other than the mouth will be permitted only under the authority of a search warrant. The body cavity search will be performed under sanitary conditions either by or under the supervision of a physician licensed to practice medicine in this State.

F.   Whenever a request is made to conduct a strip search of an arrestee, the following information will be entered in both the narrative portion of the Arrest Report and the Watch Commander's Log (CPD-21.916):

1.   The name of the arrestee;

2.   The name of the officer(s) making the request;

3.   A list of specific factors justifying the strip search;

4.   Whether the strip search was approved or disapproved;

5.    The name or the person approving or disapproving.

6.    If approved, the name of the person(s) conducting the search;

7.    The time, date and place of the search; and

8.    What was discovered as a result of the strip search.

G.    If it is necessary for an arrestee to be strip searched outside of the lockup in any police facility, prior written approval must be obtained from the:

   1.    watch commander, if it is a district station.

   2.    unit commander or, in his absence, the area coordinator if other than a district station. Unit commanders/area coordinators will notify the district watch commander in the district in which their facility is located so that appropriate entries will be made in the Watch Commander's Log as required in Items VI-F-1 through 8.

H.    When it is imperative that a strip search be conducted at other than a police facility, the field sergeant or watch commander of the district of occurrence must be contacted for written approval. The field sergeant approving or disapproving the search will immediately notify his watch commander and provide him with the information required in Items VI-F-1 through 8.

I.    A person not under arrest may be subjected to a strip search only when a search warrant is being executed under the provisions of Chapter 38, Section 108-9 (Detention and Search of Persons on Premises) and the procedures established in Item VI of this order are followed. However, a person who is present in a place where a warrant is being executed may not be searched by virtue of his mere presence at the scene. A strip search of such an individual requires that probable cause exists to believe that the person to be searched is either concealing a weapon and/or instruments or articles described in the warrant.

VII.    PROCEDURES AT THE DETENTION FACILITY

A.    Booking Officer

   1.    Receiving Arrestees

      The booking officer will:

      a.    under normal circumstances receive the arrestee, Arrest Report formset, including signed initial approval of probable cause and any signed complaints, from the arresting/transporting officers.

      b.    prior to accepting an arrestee from arresting/transporting officers, confirm the information in the arrestee transportation section of the Arrest Report, and then conduct a thorough search and screening of the arrestee following the procedures described within the General Order entitled "Lockup/Lockup Keepers."

      c.    properly complete and sign the "Receiving Screening Record for Arrestee to be Held in Lockup" section of the Arrest Report.

      d.    if the Arrest Report is incomplete, illegible or incorrectly prepared, return it to the arresting officer, or in his absence, to the desk sergeant who will ensure that proper corrections are made without delay.

      e.    complete the shaded boxes of the Arrest Report according to the Form Preparation Instructions.

      f.    telephone the Central Booking Unit and provide them with his name, star number/employee number, unit of assignment and obtain a Central Booking (CB) number for each arrestee.  In arrest situations wherein more than one person is arrested, the names and addresses of persons with whom the arrestee was arrested will be identified by entering their Central Booking numbers in the

8

made on a warrant, the warrant number and the name of the arrestee will be provided to the Central Booking Unit.

g. separate the District Record Copy of the completed Arrest Report formset and deliver it to the desk sergeant. However, when an arrestee is transported to a Central Detention Section lockup the booking officer in the Central Detention Section lockup will retain the Permanent Record-Records Division (white) and the Transportation/Bailiff Copy (goldenrod) of the Arrest Report and forward the remaining copies, including any complaints to the desk sergeant at the 1st District.

2. Fingerprinting Arrestees

a. Fingerprints need not be taken of persons arrested (on view or on warrant) for traffic offenses [except Illinois Revised Statutes, Chapter 95 1/2, Section 4-102, 103, 103.1, 103.2, 103.3, 104, 105, 105.1 and Chapter 95 1/2, Section 11-204.1, 401(b)] or violations of City ordinances punishable by fine only, unless the arresting officer provides the watch commander in charge of the detention facility with sufficient cause to justify any of the aforementioned arrest situations to warrant fingerprinting. Juveniles will be fingerprinted in accordance with the special procedures enumerated in this order except in those situations wherein the juvenile is to be processed as an adult. All other persons arrested will be fingerprinted.

b. If an arrestee has been fingerprinted prior to the time the investigation discloses that he will not be charged, THE ARRESTEE WILL NOT BE FINGERPRINTED BEFORE BEING RELEASED WITHOUT CHARGING.

c. Juvenile arrestees may be fingerprinted only on the authorization of a watch commander in the Patrol, Special Functions, Detective or Youth Divisions when the age of the arrestee cannot be established or where there are reasonable grounds to believe that the offender has committed a felony or any of the following offenses:

    (1) Unlawful Use of Weapon,

    (2) Deceptive Practices,

    (3) Sex Offenses (other than prostitution).

d. When a juvenile is fingerprinted, the Youth Division (YD) number will be used in place of the CB number and the fingerprints will be recorded on the Department Fingerprint Card (CPD-31.813) if inked fingerprints are taken.

3. Direct Electronic Fingerprinting Network (DEFN)

a. District watch commanders in charge of detention facilities and the on-duty watch commander in the Central Detention Section will ensure that:

    (1) a member trained to operate the DEFN equipment is assigned to lockup duties.

    (2) equipment is maintained in a clean, serviceable condition.

    (3) any equipment malfunction is reported to the equipment service technician via 1-800-488-0888.

b. When fingerprinting an arrestee, detention personnel will:

    (1) be responsible for entering the information required on the monitor utilizing the keyboard on the DEFN equipment.

    (2) ensure that fingerprints are properly recorded and transmitted to the Identification Section.

(3)  uring periods when the data equipment is not operational, prepare and submit inked fingerprint cards in accordance with existing Department procedures.

4.  **Recording and Transmitting Fingerprints – Inked Fingerprint Cards**

a.  If fingerprints are to be taken of an arrestee for whom fingerprinting is not required, the booking officer will record the fingerprints on the Department Fingerprint Card only. In such instances, the booking officer will indicate "Fingerprint Check Only" on the upper left hand corner of the Department Fingerprint Card prior to transmission.

b.  When an arrestee is charged with any offense requiring fingerprinting, the booking officer will record the required fingerprints on one copy of each of the following forms. However, persons arrested for violations of State statutes which are classified as petty, business or Class C misdemeanor will be fingerprinted only on the Department Fingerprint Card.

   (1)  Department Fingerprint Card

   (2)  Illinois State Police Fingerprint Card (ISP6-137)

   (3)  FBI Fingerprint Card (Form FD-249).

       (a)  In cases involving U.S. Government employees, the agency name of the arrestee will be entered in the "Employer" box.

       (b)  In cases involving sex offenses, the exact nature of the offense will be entered in the "Charge" box.

c.  Lockup personnel will, when processing an arrest made by the Illinois State Police which requires fingerprinting, complete an additional State of Illinois Arrest Fingerprint Card (ISP 402) and an additional FBI Fingerprint card (Form FD-249) provided by the arresting trooper. When completed, these fingerprint cards will be returned to the trooper.

d.  When processing an arrestee requiring fingerprinting and the arrest was effected by any other police agency (e.g., Drug Enforcement Agency, Illinois State Police, Secretary of State Police, Forest Preserve District Police, etc.), lockup personnel will enter "Arrested by Another Police Agency" in the "Contributor ORI" box of the FBI Fingerprint Card and in the "Contributor – NCIC No. – ORI" box of the Illinois State Police Fingerprint Card.

e.  When fingerprinting an arrestee, the booking officer will be responsible for:

   (1)  ensuring that the fingerprints recorded are clear and readable on each form (any forms which do not meet this criterion must be completed again).

   (2)  transmitting the Department Fingerprint Card.

   (3)  forwarding fingerprint cards to the Identification Section via Department mail.

   (4)  entering the arrestee's name, probable charge, and the time of fingerprint transmission on the Roster of Persons in Custody.

   (5)  completing the information required on each of the fingerprint forms prepared.

   (6)  taking prints on the Palmprint Card (CPD-31.814) when investigating officers or the Identification Section

10

believe(s) that they would be of value for identification
purposes and they have requested that they be taken.

    (7)    forwarding all of the fingerprint forms to the
Identification Section via the next Department mail pickup
or when necessary, by special messenger.

**5.**    **Alternate Procedures for Transmitting Fingerprints**

In the event the DEFM/facsimile transmission equipment is inoperable or
otherwise unavailable, the fingerprint forms will be sent to the
Identification Section by special messenger or by the next Department
mail pickup. (After the Identification Section has completed the
fingerprint check, the results will be returned to the detention
facility by a special messenger or the next Department mail pickup).

**6.**    **Fingerprint Check Results**

    **a.**    **Transmitting Results**

When the Identification Section has completed a fingerprint
check, the results will be transmitted to the detention facility
by facsimile transmission equipment as soon as possible.

    (1)    If a previous criminal history is found, a copy of the
Criminal History sheet (CPD-31.903) will be transmitted to
the detention facility.

    (2)    If no previous criminal history is found, a "No Record
Notification" will be transmitted to the detention facility
by using the top portion of form CPD-31.807 (Identification
Check Procedure Control) which will be properly stamped to
indicate that the subject has no record. In instances
where an arrestee has been fingerprinted on a Department
Fingerprint Card only and no previous criminal history is
found, the Identification Section will not issue an
Identification Record (IR) number.

    (3)    Immediately after the results of the fingerprint check are
received at the detention facility, the booking officer
will record the arrestee's IR number accurately and legibly
on the Arrest Report formset in the appropriate box. In
instances when the Identification Section does not issue an
IR number, the letters NI (none issued) will be entered in
the IR number box. The booking officer will ensure that
the above information is also recorded on the District
Record Copy of the Arrest Report which has been given to
the desk officer. In cases of arrests processed within the
1st District, the results of the fingerprint check will be
received by district desk personnel and subsequently
entered on the Arrest Report.

    (4)    The booking officer will then staple the Criminal History
sheet or No Record Notification form to the Court Sergeant
Copy (Blue) of the Arrest Report, enter on the Roster of
Persons in Custody the time the fingerprint check results
were received, and note on the Roster of Persons in Custody
form whether or not a Criminal History sheet was received.

    (5)    If the fingerprint check results are not received at the
detention facility or district desk within eight hours
after the fingerprints are transmitted, the booking officer
(or in 1st District cases desk personnel) will telephone
the Fingerprint Processing Unit of the Identification
Section, via PAX 0-575 or 0-577 to determine what remedial
action, if any, he should take.

    **b.**    **Parole and Probation Violator Procedure**

    (1)    Whenever a fingerprint check of an arrestee indicates that
the person is on felony probation or parole, the Records

11

and properly stamp the arrestee's Criminal History sheet before transmission by facsimile equipment. In cases of arrests processed within the 1st District, the notification will be made by the Records Division to district desk personnel.

(2)   If the arrest is for a felony the booking officer will immediately contact the detective unit responsible for the new felony charge and notify that unit of the arrestee's probation or parole status. The Detective Division unit will forward copies of the Criminal History sheet, Felony Minute sheet, and all other related police reports as soon as available, via Department mail, to the Chief, Probation and Parole Violation Unit, State's Attorney's Office, 2650 South California Avenue.

(3)   If the arrest is for a misdemeanor, the booking officer will immediately contact the arresting officer's unit and inform that unit of the arrestee's probation or parole status. The arresting officer will forward a copy of the Criminal History sheet and all other related police reports as soon as available, via Department mail, to the Chief, Probation and Parole Violation Unit, State's Attorney's Office, 2650 South California Avenue. It is not necessary that the State's Attorney's Office receive an oral notification when such persons are arrested.

c.   Aliases and Stop Orders

(1)   When the fingerprint check reveals that the arrestee has used aliases, Identification Section personnel will check each alias in the computerized Wanted Persons File. If the arrestee is wanted on a warrant under his own name or if the alias check indicates he is wanted under an alias, the technician will notify the Central Warrant Unit by FAX and provide the following information:

(a)   The name under which the person was arrested and his CB number.

(b)   The location of detention.

(c)   Each alias against which a warrant has been issued.

(d)   The number of each warrant.

The Field Inquiry Section, Central Warrant Unit, will record and relay all information received from the Identification Section to the desk sergeant at the detention facility as quickly as possible. Upon receipt of such information, the desk sergeant will notify the arresting officer or in his absence, the arresting officer's unit of assignment.

(2)   If the fingerprint check indicates that a stop order has been placed against the arrestee, the desk sergeant will notify the original requesting officer or, in his absence, the officer's unit of assignment. The original requesting officer or unit notified of the stop order will follow the procedures outlined in the General Order entitled "Stop Orders."

d.   Special Identification Section Envelopes

Inked fingerprint forms and fingerprint check results sent to or from the Identification Section by Department mail or by special messenger will be transported in the green Identification Section envelopes. All personnel coming in contact with these envelopes will be alert to them and ensure that they receive immediate attention.

12

apply for the Central Detention Section:

    (1)    All of the completed fingerprint forms will be transmitted to the Identification Section. The complaints and Arrest Report with the exception of the Permanent Record-Records Division (white) and the Transportation/Bailiff Copy (goldenrod) will be forwarded to the 1st District desk.

    (2)    After the completion of the fingerprint check at the Identification Section, the Criminal History sheet or No Record Notification will be sent to the 1st District desk for the completion of the booking process.

    (3)    The 1st District desk sergeant will be responsible for letting to bail all eligible arrestees booked at the Central Detention Section.

7.    **Temporary Detention of Arrestees for other Government Agencies**

    a.    Upon request of an officer or agent of another government agency who has produced satisfactory evidence of his authority, an arrestee will be detained in a Department detention facility. The officer or agent will continue to be responsible for his arrestee and will accompany the arrestee at all times when not in the Department detention facility.

    b.    Arrestees detained in a Department detention facility at the request of another government agency will be processed in accordance with booking procedures of the Department. Fingerprints will be recorded on the Department Fingerprint Card only. The name of the officer or agent, the government agency, the address and telephone number where the officer or agent may be contacted while the arrestee is in custody of the Department will be included in the narrative portion of the Arrest Report. The reasons for the detention will be included in the narrative portion of the Arrest Report. The reasons for the detention will be indicated in the Offenses box of the Arrest Report (Example – Extradited for Murder, En route to Michigan), and the date and time of detention will be recorded. ⚹ This information will also be included in the facsimile transmission. The entire Arrest Report formset will be retained at the unit of detention until the arrestee is released. When the arrestee is released from Department custody, the officer or agent who takes custody of the arrestee will accept custody for the person, by signing all copies of the Arrest Report. The date and time of release will be entered in the narrative portion of the Arrest Report. The Arrest Report will then be distributed in accordance with Item X of this order.

    c.    When a request is made at an airport or other transportation facility for temporary assistance, the Department unit at that location will provide assistance until departure. The detention facility at O'Hare International Airport will only be used to detain arrestees of other government agencies for periods of short duration. If the time of departure is such that a district detention facility could be used, transportation of the arrestee to the detention facility will be arranged.

8.    **Photographing**

    a.    Arrestees, other than juveniles, will be photographed according to the following criteria:

        (1)    Unless photographed within the previous three years, a photograph will be taken of any person arrested for a felony or for any of the following State offenses:

            (a)    Unlawful Use of Weapons

(c)    Sex Offenses (other than prostitution).

(2)    Generally, persons arrested will not be photographed until the results of the fingerprint check are known. The Criminal History sheet or No Record Notification sent to the detention facility will have a box checked on the form by the Identification Section as follows:

   (a)    "Has Photo" - checked when it is determined that a usable photograph taken within the previous three years is on file.

   (b)    "Take Photo" - checked when a photograph is required.

   (c)    "Photo Not Required" - this box will be checked whenever the offense for which the person was arrested does not require the taking of a photograph.

(3)    The booking officer will take a photograph of the arrestee whenever the "Take Photo" box on the Criminal History sheet or No Record Notification form has been checked by the Identification Section.

(4)    When a photograph is to be taken, the Identification Data Board for the arrested person will be prepared with the Chicago Police Department name plate, the IR number, and the date of arrest. After the photograph has been taken, the booking officer will:

   (a)    mark the appropriate box on the Arrest Report.

   (b)    make the appropriate entries on the Record of Photos Taken (CPD-31.952).

(5)    When an arrested person is to be let to bail before the results of the fingerprint check are known, a photograph of the arrestee will be taken. The CB number will be used instead of the IR number by the booking officer when preparing the Identification Data Board.

(6)    When fingerprinted, persons arrested for any violation may be photographed when the watch commander of the arresting officer or the supervisor of any investigating officer believes a photograph is necessary.

b.    A juvenile offender will be photographed only when there are reasonable grounds to believe that the offender committed an offense listed in Item VII-A-2-c of this order and then only on the approval of a watch commander of the Patrol, Special Functions, Detective or Youth Divisions. When photographing juveniles, the YD number will be shown on the Identification Data Board.

9.    **Movement of Arrestees**

Normally, an arrestee will not be removed from the detention facility prior to any necessary fingerprinting and completion of the Arrest Report. Permission of the watch commander in charge of the detention facility will be obtained prior to removal. When circumstances require removal of an arrestee, the "Moving of Arrestee Out of and Into Arrest/Detention Facility" section of the Arrest Report will be used to record this information. In certain cases the officer requesting the movement of the arrestee from the detention facility may do so via PAX telephone (e.g., detective requesting the arrestee be transported for lineup purposes).

14

23.

Prior to going off duty, the booking officer will inform the relieving booking officer of the processing status of all arrestees who have not been charged (booking process not completed). The relieving booking officer will notify his watch commander of arrestees who have not been charged.

B.    Desk Sergeant

1.    Notification

When notified that an arrestee has been brought into the detention facility or is being detained at a facility other than the district of arrest, the desk sergeant will ensure that the watch commander is notified and informed of the probable charge(s) and circumstances of the arrest.

2.    Facsimile Transmission

The desk sergeant will ensure that the Permanent Record-Records Division copy (white) of the Arrest Report is transmitted within 30 minutes after receiving the arrestee in the lockup to the:

(a)    Field Inquiry Section for all arrests not requiring fingerprints by pressing Key #20, the "Non-Print" key.

(b)    Identification Section for all arrests requiring fingerprints by pressing the "Printable" key located in Panel A-Group 1, the "Display" key and the "Start" key.

The person sending the facsimile transmission will complete the bordered box 42A on the District Record Copy of the Arrest Report. (The Records Division Warrant Number will also be included as part of the reason for the arrest when a person was arrested on a warrant or a Capias.) In cases processed within the 1st District the watch commander in charge of the Central Detention Section will ensure these procedures are accomplished.

3.    Results of Facsimile Transmission

An arrestee who has not been fingerprinted or has been fingerprinted but the results of the fingerprint check have been waived will be charged when the results of the facsimile transmission are received. If the results of the name check from the Hot Desk and Warrant files are not received within 45 minutes after the Arrest Report was transmitted, it will be presumed that the name check was negative. If the name check is positive, the detention facility will be notified by telephone.

The 45 minute elapsed time period after the facsimile transmission is sent may be waived and the arrestee charged when a name check has been completed on the district land-based computer terminal and indicates he is clear of any warrants, stops, etc.

4.    Notice of Warrant

a.    When a desk sergeant is notified that an arrestee is wanted on a warrant, he will telephone the Central Warrant Unit and verify that the arrestee and person wanted on the warrant are the same. To facilitate letting the arrestee to bail without waiting for the arrival of the warrant, he will request the following information from the Central Warrant Unit and ensure that this information is entered in the narrative portion of all copies of the Arrest Report.

(1)    Warrant number

(2)    Complainant's name (Non-Traffic or key, court call-Misdemeanor and Municipal Ordinance cases)

*24.

(4)   Court docket number

(5)   Court branch - (key, time and room number - Traffic or key, court call - Misdemeanor and Municipal Ordinance cases)

(6)   Warrant charge

(7)   Amount of bond

(8)   Identification Record (IR) number, if available.

b.   If the warrant charge required the arrestee to be fingerprinted, the desk sergeant will ensure that any IR number and physical description listed on the warrant matches the IR number on the Criminal History sheet and the arrestee's physical description. In felony warrant cases, other than narcotics or Bond Forfeiture warrants, desk personnel will notify the detective division area listed on the warrant.

c.   Persons arrested on a warrant from other police agencies will be processed in accordance with the provisions of Department directives entitled "Non-Traffic Arrest Warrant Procedure" and/or "Extradition Procedures."

C.   Watch Commander

1.   Initial Approval of Probable Cause

The district watch commander of the unit of detention will sign his name in the "Initial Approval of Probable Cause" box on the Arrest Report at the onset of the booking process indicating there is probable cause to detain the arrestee and the elements of the offense have been included in the narrative portion of the Arrest Report.   In cases wherein a district watch commander authorizes the transfer of an arrestee to another district for detention processing, the authorizing watch commander will sign and enter his star number in the "Initial Approval of Probable Cause" box.

2.   Approval of Charges

When the arrestee is to be formally charged (booking process completed), the district watch commander in charge of a detention facility will sign his name in the "Approval of Charges" box, and by so signing, will:

a.   accept responsibility for the completeness, accuracy and legibility of ALL COPIES of the Arrest Report.

NOTE: For the Central Detention Section, the watch commander in District 001 will be considered in charge of the detention facility concerning initial approval of probable cause and final approval of charges.

b.   approve the formal filing of charges against the arrestee when probable cause exists.   Normally, an arrestee who has been fingerprinted will not be charged and sent to court until the facsimile copy of the Criminal History sheet or No Record Notification has been received. However, the arrestee will be considered charged when the watch commander in charge of a detention facility waives the results of the fingerprint check.

3.   Additional Responsibilities

After the arrestee has been booked and charged, the watch commander will ensure that the arrestee is sent to the next regularly scheduled court to which the case is normally returnable (branch court, Central Night Bond Court or Weekend/Holiday Court) unless the arrestee has been let to bail.   In cases involving unusual circumstances (e.g., victim hospitalized and unable to communicate, offender arrested for multiple offenses and victims must be contacted) the arrestee will be sent to

16

*25.

court within twenty-four hours of the arrest. However, if there is no court in session at the end of the twenty-four hour period, the arrestee will be sent to the next regularly scheduled court to which the case is normally returnable.

When an arrestee who has not been charged is detained at a facility other than a detention facility, the on-duty unit commanding officer of the unit detaining the arrestee will ensure that the arrestee is returned to the district of detention for the completion of the booking process in sufficient time to allow the arrestee to be processed for a court hearing.

4.    **Releasing Arrestees Without Charging**

   a.    The watch commander in charge of the detention facility has the authority and responsibility to order the release of an arrestee without charging based upon available evidence.

   b.    When an officer determines that there is insufficient reason to further detain an arrestee, the officer will advise his watch commander. ~~In cases wherein the arresting officer's watch~~ commander is not the watch commander in charge of the detention facility, the arresting officer will also advise that watch commander. A detective will notify his unit commanding officer or area coordinator and the watch commander in charge of the detention facility of the reason the arrestee should be released.

   c.    If the watch commander in charge of the detention facility authorizes release of the arrestee, he will ensure that the "Release of Arrestee from Custody" section on the reverse side of the white copy of the Arrest Report is properly completed and signed by the arresting officer or detective before approving the release of the arrestee. The watch commander will then enter "Released without Charging" and the date and time of release in the Disposition box of the Arrest Report.

5.    **Expediting or Waiving the Fingerprint Check**

   a.    Expediting a Fingerprint Check

         A watch commander has authority to:

         (1)    send inked fingerprint forms and obtain the results of the fingerprint check by special messenger when he judges it necessary to do so; and/or

         (2)    request that the Identification Section:

                (a)    expedite the fingerprint check, and

                (b)    telephone the results of the check to him as soon as the results are known.

   b.    Waiver of Results of Fingerprint Check before Letting to Bail

         The watch commander in charge of a detention facility will:

         (1)    waive the results of the fingerprint check, but not the fingerprinting when:

                (a)    a person is arrested for an offense (other than a felony or an offense which may be a felony because of a prior conviction) or has voluntarily surrendered on a misdemeanor warrant and

                (b)    the arrestee is ready to post bond and

                (c)    the arrestee possesses sufficient personal identification and

17

2.6.

another offense (i.e., arrestee checks clear via the district land-based terminal).

    (2)    sign his name and enter the date and time in the box entitled "Results of Fingerprint Check Waived" when authorizing the waiver.

    (3)    ensure that desk personnel enter all required information, including the IR number on the Arrest Report before it is distributed.

  c.    Detention Pending Results of Fingerprint Check

    (1)    The watch commander in charge of a detention facility may only authorize the detention of a non-felony arrestee for the purpose of obtaining the results of the fingerprint check in the following cases:

        (a)    the arrestee has no identification, or

        (b)    there is reason to believe that the arrestee is not whom he claims to be, or

        (c)    the offense may be elevated to a felony, as provided by the Illinois Revised Statutes, or

        (d)    the arrestee is wanted for other crimes.

    (2)    In any of the circumstances enumerated in Items VII-C-5-c-(1)-(a) through (d) of this directive, the watch commander will:

        (a)    ensure that the arrestee is processed within a reasonable length of time and not unnecessarily detained.

  * (b)    print the reason(s) for authorizing detention in the box entitled "Watch Commander's Notations" on the Arrest Report and enter his signature following the entry.

  d.    Voluntary Surrender on a Misdemeanor Warrant

    When a person voluntarily surrenders to answer a misdemeanor warrant and the results of the name check indicate that there are no additional warrants pending, there is no reason to justify detention in order to obtain the results of the fingerprint check.

# VIII. ARRESTEE'S COMMUNICATIONS AND VISITORS

  A.    Communications and Visitors

    1.    A member of the Department will:

        a.    not communicate with an arrestee or carry a communication from an arrestee to others except for a proper police purpose.

        b.    when assigned as a lockup keeper, not permit any person, including a member of the Department, to communicate with an arrestee except with the permission of the watch commander.

    2.    Arrestees may be allowed a reasonable number of visitations by persons requesting them, and for a reasonable period of time, except in cases of imminent danger of escape. Visitation with arrestees will not be permitted in the lockup.

    3.    Watch commanders will:

        a.    allow visitations by an attorney if:

18

Illinois,

        (2)    he   possesses   sufficient   personal/professional identification, and

        (3)    the arrestee has agreed to the visitation.

    b.    allow visitations by other persons requesting visitation whom he deems proper.

    c.    enter his signature, indicating his approval, in the section entitled "Record of Visitors to Arrestee" on the reverse side of the white copy of the Arrest Report.

    4.    If any person refuses to provide the necessary information (i.e., visitor's name, address, telephone number and relationship) he will not be permitted to visit the arrestee.

    5.    Lockup keepers/detention aides will:

    a.    enter the date and time in and out of the visitor or attorney in the appropriate box on the Arrest Report.

    b.    search the arrestee prior to returning him to his cell.

    c.    comply with existing rules, regulations and directives relating to arrestees and their safekeeping.

**B.    Telephone Procedures**

    1.    Pay telephones have been provided in Department detention facilities in order that arrestees may communicate with their attorneys and members of their families.

    2.    Each arrestee will be permitted to communicate with an attorney of his choice and a member of his family by making a reasonable number of telephone calls on the lockup pay telephone, within a reasonable period of time after his arrival at the first Department detention facility. Booking officers will determine when these calls may be made. If the arrestee is transferred to another Department detention facility, he will be permitted the same rights in the same manner as at the first detention facility.

    3.    If an arrestee is without funds, and wishes to make a telephone call, he will be instructed to dial 0 "Operator" plus the number. When the operator answers, he will be advised to instruct the operator to charge the call to the number being called. If the party being called accepts the charges, the call will be completed. An arrestee without funds who wishes to make toll calls will be permitted to do so on the pay telephone on a collect basis when the party called agrees to accept the charges.

    4.    If the arrestee is physically disabled or unable to verbally communicate, he may request or otherwise indicate that an officer place a telephone call for him. These calls will be confined to those necessary to contact a member of the arrestee's family and/or an attorney of his choice.

    5.    Lockup keepers will enter the telephone number and time of the arrestee's telephone call in the box provided on the Arrest Report. If more than one telephone call was made, list additional calls in the narrative portion of the Arrest Report.

**II.    COURT SCHEDULING AND COURT APPEARANCE**

    A.    Court Scheduling

        1.    Cases will be assigned to the appropriate court in accordance with the provisions of the Department Notice entitled "Time Scheduled Court Call System."

will be set for the next regularly scheduled court date following approval of charges (booking process completed) or immediately following the arrestee's appearance at Central Night Bond Court or Weekend/Holiday Court. For felony narcotic arrests, the desired court date will be set between 21 and 29 days in the future.

3. The desired court date for the hearing of charges (other than felonies) will be set between 21 and 49 days, when practicable.

4. The desired court date for the hearing of certain misdemeanor or ordinance charges will be selected according to the arresting officer's key letter date on the Court Citing Date Card-Misdemeanors and City Ordinances (CPD-11.562) and in accordance with the provisions of the Department Notice entitled "Time Scheduled Court Call System."

5. The desired court date for the hearing of traffic charges will be selected according to the arresting officer's key letter date on the Court Citing Date Card-Traffic (CPD-22.911) and in accordance with the provisions of General Order (Addendum 1) entitled "Traffic Court Citing, Attendance and Scheduling."

B. Court Appearance Responsibilities

1. In court branches with assigned court sergeants, it will normally not be necessary for the arresting officer to appear in the following cases:

   a. Disorderly conduct cases, unless the arresting officer has signed the complaint or can give pertinent testimony regarding the incident.

   b. An arrest made on a warrant, unless the arresting officer has signed the complaint upon which the warrant was issued, or has knowledge of the case which is material to the court hearing.

   c. A shoplifting case, where the arrest was made and complaints signed by security/store personnel and the arresting officer did not witness the offense.

   d. When an arrest is made and a complaint signed by a peace officer as defined in the Department Special Order entitled "Police Agencies Operating in the Chicago Area" for a misdemeanor or ordinance violation (except narcotics) in the course of their employment and the Chicago Police Department officer cannot give pertinent testimony regarding the incident.

   e. A traffic case on the day following the arrest in instances when the violator cannot post bond and the only charges against him are traffic charges.

   f. The initial court appearance in a narcotics case in instances when the arrestee cannot post bond and narcotic evidence which relates to the arrest has been sent to the Crime Laboratory Division to be analyzed.

   g. The initial court appearance in all misdemeanor assault, battery, theft and damage to property cases, when the officer did not sign the complaint, cannot add pertinent testimony regarding the incident other than the information provided in the appropriate case and Arrest Report and has not observed any injury to the complainant (e.g., swelling, bruises, bleeding) or cannot present inventoried physical evidence relating to the arrest.

      NOTE: In the court appearance exemptions enumerated in Items IX-B-1-f and g, the arresting officer will include a photocopy of the appropriate case report in the court case file.

   h. Any case to be heard in Weekend/Holiday Court or Central Night Bond Court. In addition, the complainant or witness need not

20

29.

result of the offense for which the defendant was charged, the arresting officer must appear. When applicable, Felony Minute sheets and the case report (including the name of the hospital) will be made part of the court case file and accompany required court documents to the appropriate court.

2.  An arresting officer will appear to testify in all other cases. When two or more officers make an arrest, the officer having court appearance responsibility for the case will enter his name first in the box entitled "First Arresting/Appearing Officer" of the Arrest Report formset. This officer will retain responsibility for the initial and all subsequent court appearances.

    a.  When the officer responsible for attending court is unable to appear at a judicial hearing for any reason (e.g., furlough, medical roll, in-service training, subpoena for another court, etc.) he will notify a supervisor in his unit of assignment as soon as he becomes aware of his inability to appear. In cases wherein the arresting officer cannot anticipate his inability to appear in court, he will notify a supervisor in his unit of assignment at least one hour prior to the scheduled hearing. The officer will also provide the unit supervisor with the name, if any, of the second arresting officer.

    b.  The supervisor will notify the second arresting officer, if any, of his responsibility to attend court. The supervisor will record all notifications/information in the Commanding Officer's book, or the Notification of Court Absence booklet (CPD-11.560).

    c.  If the supervisor is unable to notify the second arresting officer, or if there is only one arresting officer, he will inform the watch commander. The watch commander will then ensure that the necessary court notifications are made.

3.  In the event of uncertainty as to the necessity for an arresting officer to appear in a court branch, or when more than one arresting officer wishes to appear to testify in the same case, the arresting officer's watch commander will be consulted for a decision.

    a.  If, at the time the arrestee is being processed, the watch commander determines the presence of an additional officer(s) is necessary at the court branch, he will inform the officer and so indicate in the Watch Commander's Notations portion of the Arrest Report.

    *b.  If, at subsequent appearances, it is determined that the presence of an additional officer(s) is required (judge orders, State's Attorney requests, etc.), the appearing officer will so inform his supervisor. The supervisor receiving the information will complete the Court Notification/Sworn Member form (CPD-11.554) and inform the watch commander who will ensure that the officer(s) is notified.

4.  After court appearance responsibilities have been determined, the appropriate box of the Arrest Report formset will be checked to indicate whether or not the court sergeant will handle the case in court.

5.  When arrests are made on warrants and the arresting officer has no knowledge of the case, he will enter in the narrative of the Arrest Report, "Arresting Officer Will Not Appear, No Knowledge of Case."

6.  Whenever an arresting officer or investigative officer appears in any court branch to which a court sergeant is assigned, the Court Log (CPD-21.600 or CPD-21.606) maintained by the court sergeant will be signed by departing officers both upon arrival and upon departure from the courtroom. The disposition of the hearing will be entered on the Court Log. *No officer will sign the court log for another officer. When a case has been continued and the officer has received instructions from the assistant corporation counsel or assistant state's attorney that

info___ the court sergeant who will ensure that this information is
entered in the narrative box of the Court Sergeant Copy (Blue) of the
Arrest Report.  In courts with no assigned court sergeant, the officer
will assume this responsibility.  Whenever an officer is released by an
assistant state's attorney or assistant corporation counsel prior to
their case(s) being called, the officer will inform the court sergeant.
The court sergeant will determine if the officer can be released and so
inform the officer.   Officers may not leave court prior to their
case(s) being called without authorization from the court sergeant.

7.     When an officer must appear at the Criminal Courts Complex (2600 South
       California Avenue) in a court room where no court sergeant is assigned,
       Monday through Friday, 0900 hours to 1800 hours, he will first report
       to the Police Assembly Room, Room 3A20, Criminal Courts Administration
       Building, 2650 South California Avenue and sign in on the Court Log.
       Members completing their duties prior to 1800 hours will return to the
       Police Assembly Room and sign out on the Court Log.  Members signing in
       or out after 1800 hours will do so on the Court Log maintained in the
       Court Sergeant's Office in Room 100, Criminal Courts Building, 2600
       South California Avenue.  Members released after 2300 hours will notify
       Operations Command (747-6301 or PAX 0-301).

8.     When the officer must appear in a court in which no court sergeant is
       assigned or there is no court assembly room, the member will:

       a.     notify the Court Section of the Patrol Division at 747-1713
              (Bell) or 0-206 (PAX) if the court appearance is prior to 1600
              hours.

       b.     notify Operations Command at 747-6301 (Bell) or 0-301 (PAX) if
              the court appearance is after 1600 hours.

       c.     notify either the Court Section or Operations Command (as
              appropriate) when the member first arrives for the court
              appearance and when the court appearance is completed.

9.     Arresting officers and investigating officers are responsible for:

       a.     contacting the desk officer at the detention facility at
              approximately 0800 hours to determine if the arrestee has been
              let to bail or has been sent to court.

       b.     ensuring that complainants and witnesses are notified of the
              proper location, time and date their presence is required using
              the Court Appearance Information form (CPD-11.552).

       c.     being present on the specified court date in time for the
              scheduled court call hearing.

       d.     appearing in all cases when a summons or a subpoena has been
              issued for their presence, or when the state's attorney has
              requested their presence for an interview.  If subpoenaed or
              requested to testify for the defense, make notifications as
              required by the General Order entitled "Witness Statements By
              Members of the Department."

       e.     bringing to court complete and accurate reports, records
              (including Felony Minute sheets if required) and pertinent
              physical evidence.  They will be prepared to present the evidence
              and give accurate and impartial testimony.

C.     Court Sergeants

       1.     The court sergeants assigned to Weekend/Holiday Court or Central Night
              Bond Court will notify a supervisor in the arresting officer's unit, by
              telephone, of continued court dates other than the officer's desired
              court dates or when there has been a final disposition on the case.

completing the Court Sergeant's Report to Commanding Officer form (CPD-21.102) according to instructions printed on the form.

3.    The supervisor receiving the information from the court sergeant will complete the Court Notification/Sworn Member form and notify the watch commander who will ensure that the officer is notified.

## X.   ARREST REPORT AND RELATED DOCUMENTS

### A.   Arrest Report Formset

After the Arrest Report formset has been properly completed, desk personnel will distribute the copies as follows:

1.    Permanent Record-Records Division (White):

    This copy will be sent to the Identification Section after the arrestee has been released or sent to court.

2.    Court Sergeant Copy (Blue):

    (a)    When the case is assigned to a court with an assigned court sergeant, this copy, and any Criminal History sheet or No Record Notification will be sent to the court clerk who will give it to the court sergeant.

    (b)    When the arrestee is released without charging, this copy and any Criminal History sheet or No Record Notification will be sent to the Identification Section.

    (c)    When the case is assigned directly to Traffic Court, this copy will be sent to the Identification Section.

3.    Court Copy (Pink):

    (a)    When an arrestee is charged, this copy will accompany court complaints sent to the court.

    (b)    When an arrestee is released without charging, this copy will be destroyed in accordance with existing records retention requirements.

4.    District Record Copy (Buff):

    This copy will be filed alphabetically by month in the district of arrest.

5.    Transportation/Bailiff Copy (Goldenrod):

    (a)    When the arrestee is let to bail, this copy will be sent to the court clerk who will give it to the bailiff.

    (b)    When the arrestee has not been let to bail, this copy will accompany the arrestee to court where the transporting officers will give it to the bailiff.

    (c)    When the arrestee is released without charging, this copy will be destroyed.

### B.   Court Complaint Transmittal Listing

1.    Desk sergeants on the 1st watch are responsible for the preparation of a separate Court Complaint Transmittal Listing (CPD-11.551) for each court call in each court branch to which arrestees, court complaints and related documents are being sent. In addition, court documents for arrestees who have been let to bail will be forwarded on a separate Court Complaint Transmittal Listing on a daily basis (excluding weekends and holidays) to the court where the charges are returnable.

23

2.  Copies of the court complaint transmittal listing being used as follows:

    a.  The Temporary Record Copy will be removed from the formset and will be placed in the unit suspense file where it will be retained until the Receipt Copy has been signed and returned to the unit by the court clerk.

    b.  The formset, without the Temporary Record Copy, will be sent to the clerk of the court.

3.  When the Receipt Copy of the Court Complaint Transmittal Listing is received from a court clerk, the unit will destroy the Temporary Record Copy in the unit suspense file according to existing records disposal procedures and will file the Receipt Copy chronologically.

4.  In the event that the Receipt Copy of the Court Complaint Transmittal Listing is not returned to the unit within two working days, excluding weekends and holidays, the desk sergeant on the 2nd watch will telephone the court clerk to determine the reason for the delay.

C.  Additional Copies of Identification Records or Photos

    Arresting or investigating officers may obtain additional copies of Criminal History sheets or Identification Photos by completing the appropriate request form, Request For Identification Records (CPD-31.904) or Request For Identification Photos (CPD-31.951).

D.  **Miscellaneous**

    1.  Desk personnel preparing court papers for transmittal to the appropriate courts will use staples to secure the documents. They will arrange the documents, when applicable, in sequential order, as listed below, from top (a) to bottom (h).

        a.  Blue copy of the Arrest Report with the Criminal History sheet or No Record Notification and Final Disposition Report attached.

        b.  Case report (when prepared).

        c.  Felony Minute sheet.

        d.  Goldenrod copy of the Arrest Report when let to bail.

        e.  Pink copy of the Arrest Report.

        f.  Court Copy of bail bond.

        g.  Court Copy (pink) of the Property Inventory.

        h.  Copies of court complaints and/or warrants (most serious charge on top).

    2.  Court documents will be forwarded in appropriate court designated envelopes or envelopes addressed by use of the court branch stamp.

    3.  All documents to be sent to the clerk of the court, with the exception of documents to be sent to Weekend/Holiday Court or Central Night Bond Court, will be forwarded by the morning mail-pickup, scheduled for this purpose. If the documents are not ready in time for the designated mail-pickup, they may be forwarded by prisoner transfer van officers or by special messenger in order to be received by the court clerk before 0700 hours.

    4.  Court documents of arrestees in custody for traffic violations or cases returnable to the Traffic Court will be forwarded with the arrestee by the prisoner transfer van.

    5.  Court documents will be excluded from regular mail pickups on Saturdays, Sundays, and Holidays. Documents to be sent to the Weekend/Holiday Courts and Central Night Bond Court will be forwarded

33.

arrestee prior to the scheduled court call. Court papers which are not required for Weekend/Holiday Court or Central Night Bond Court will be retained at the detention facility until the next day on which a regular court call is scheduled.

6.   The desk sergeant on the 1st watch will ensure that a copy of the Criminal History sheet or No Record Notification (for all arrestees who have been fingerprinted) is attached to the Court Sergeant Copy (Blue) of the Arrest Report before forwarding it with other court documents.

7.   Records Division personnel will promptly forward a copy of the Permanent Record-Records Division copy of the Arrest Report to the Data Entry Unit, Data Systems Division.

*Matt L. Rodriguez*

Superintendent of Police

---

* All sworn and civilian personnel and additional copies to all personnel assigned to detention facilities and district desk personnel.

85-055   BW



**REVISION TO:**

General Order 92-5

| DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|
| 28 May 1999 | 1 June 1999 | 92-5D |

| TITLE | DISTRI-BUTION | RESCINDS |
|---|---|---|
| PROCESSING PERSONS UNDER DEPARTMENT CONTROL | C | General Orders 92-5A and 92-5B |

I.    **PURPOSE**

This directive is revising Items VII-C-3, IX and X of General Order 92-5 entitled, "Processing Persons Under Department Control," rescinding revisions 92-5A and 92-5B and rescinding Items II-8 through 12 of 92-5C.

II.    **ITEM VII-C-3 IS REVISED TO READ AS FOLLOWS:**

3.    Additional Responsibilities

<u>After the arrestee has been booked and charged, the watch commander will ensure that the arrestee is sent to the next regularly scheduled court to which the case is normally returnable, either branch court or Central Bond Court (CBC), unless the arrestee has been let to bail.</u>  In cases involving unusual circumstances (e.g., victim hospitalized and unable to communicate, offender arrested for multiple offenses and victims must be contacted) the arrestee will be sent to court within twenty-four hours of the arrest.  <u>However, if there is no court in session at the end of the twenty-four hour period, the arrestee will be sent to the next regularly scheduled court to which the case is normally returnable.</u>

When an arrestee who has not been charged is detained at a facility other than a detention facility, the on-duty unit commanding officer of the unit detaining the arrestee will ensure that the arrestee is returned to the district of detention for the completion of the booking process in sufficient time to allow the arrestee to be processed for a court hearing.

III.    **ITEM IX IS REVISED TO READ AS FOLLOWS:**

IX.    **COURT SCHEDULING AND COURT APPEARANCE:**

A.    Court Scheduling

1.    Cases will be assigned to the appropriate court in accordance with the provisions of the Department Notice entitled "Court Call Schedule."

2.    The desired court date for the preliminary hearing of a felony arrest will be set as follows:

a.    for homicide/sex related felony arrests (except felony sex offender registration offenses), including felony child sexual assault, sexual abuse cases and attempt murder of a police officer, the desired court date will be set for the next regular scheduled court call following approval of charges (booking process completed).

NOTE: Regularly scheduled court days are defined as days other than Saturdays, Sundays and Court Holidays.

(4)   Court docket number

(5)   Court branch - (key, time and room number - Traffic or Jury court call - Misdemeanor and Municipal Ordinance cases)

(6)   Warrant charge

(7)   Amount of bond

(8)   Identification Record (IR) number, if available.

b.   If the warrant charge required the arrestee to be fingerprinted, the desk sergeant will ensure that any IR number and physical description listed on the warrant matches the IR number on the Criminal History sheet and the arrestee's physical description. In felony warrant cases, other than narcotics or Bond Forfeiture warrants, desk personnel will notify the detective division area listed on the warrant.

c.   Persons arrested on a warrant from other police agencies will be processed in accordance with the provisions of Department directives entitled "Non-Traffic Arrest Warrant Procedure" and/or "Extradition Procedures."

C.   Watch Commander

1.   Initial Approval of Probable Cause

The district watch commander of the unit of detention will sign his name in the "Initial Approval of Probable Cause" box on the Arrest Report at the onset of the booking process indicating there is probable cause to detain the arrestee and the elements of the offense have been included in the narrative portion of the Arrest Report.   In cases wherein a district watch commander authorizes the transfer of an arrestee to another district for detention processing, the authorizing watch commander will sign and enter his star number in the "Initial Approval of Probable Cause" box.

2.   Approval of Charges

When the arrestee is to be formally charged (booking process completed), the district watch commander in charge of a detention facility will sign his name in the "Approval of Charges" box, and by so signing, will:

a.   accept responsibility for the completeness, accuracy and legibility of ALL COPIES of the Arrest Report.

NOTE: For the Central Detention Section, the watch commander in District 001 will be considered in charge of the detention facility concerning initial approval of probable cause and final approval of charges.

b.   approve the formal filing of charges against the arrestee when probable cause exists.   Normally, an arrestee who has been fingerprinted will not be charged and sent to court until the facsimile copy of the Criminal History sheet or No Record Notification has been received.   However, the arrestee will be considered charged when the watch commander in charge of a detention facility waives the results of the fingerprint check.

3.   Additional Responsibilities

After the arrestee has been booked and charged, the watch commander will ensure that the arrestee is sent to the next regularly scheduled court to which the case is normally returnable (branch court, Central Night Bond Court or Weekend/Holiday Court) unless the arrestee has been let to bail.   In cases involving unusual circumstances (e.g., victim hospitalized and unable to communicate, offender arrested for multiple offenses and victims must be contacted) the arrestee will be sent to

36.

| GENERAL ORDER | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| | 06 June 2002 | 07 June 2002 | 02-03 |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| PROCESSING PERSONS UNDER DEPARTMENT CONTROL | C | General Orders 88-11, 92-5 Department Special Order 93-4 |

RELATED DIRECTIVES General Orders: Line-up Procedures; Non-Traffic Arrest Warrant Procedure; Felony Review By Assistant State's Attorney; Prohibitions Regarding Racial Profiling and Other Bias Based Policing; Restraining Arrestees; Squadrol Operating Procedures; Municipal Administrative Hearings; Inventory System for Property Taken Into Custody: Processing of Juveniles and Minors Under Department Control; Multiple Arrest Procedures; Hospitalized Arrestees; Handling Persons In Need of Mental Treatment; Complaint and Disciplinary Procedures; Processing Deceased Persons. **Department Special Orders**: Bond Procedures; Interviewing Patients At Cook County Hospital; Foreign Mission Personnel and Foreign Nationals; Search Warrants. **Department Notice**: Court Call Schedule.

I.    **PURPOSE**

This directive:

A.    states Department policy related to processing arrestees.

B.    defines certain terms which pertain to processing persons who come under Department control.

C.    assigns responsibility to Department members who are processing arrested persons.

D.    establishes procedures for processing arrested persons.

E.    continues procedures to ensure compliance with the Illinois Department of Corrections standards.

II.   **POLICY**

A.    General

1.    Department member's will observe, uphold, and enforce the law without regard to age, sex, race, color, religion, sexual orientation, national ancestry, marital status, parental status, military discharge status, lawful source of income, or the physical or mental disability of any person consistent with the policy established in the directive entitled "Prohibitions Regarding Racial Profiling and Other Bias Based Policing."

2.    Arrested persons will be booked, charged, and made eligible for bond in that order. This process will be completed without unnecessary or unreasonable delay. Investigation or interrogation of an arrestee will not delay the booking process. Care must be taken to ensure that persons in custody are released on bond or brought before a judge at the earliest opportunity after the booking process has been completed consistent with the guidelines established in this and related directives.

3.    It is the policy of the Department to provide secure detention for prisoners awaiting interrogation, arrest processing, or transfer to some other jurisdiction or entity and to maintain lockups in a sanitary and safe manner. As such, Department personnel assigned to a lockup will adhere to Department procedures and will be alert to any problems or conditions that may compromise the security or safety of detained prisoners.

B.    Specific

1.    The Department's justification for the detention of any arrested person will be included in the Arrest Report (CPD-11.420). The arresting officer is required to set forth in the Arrest Report sufficient information (probable cause to arrest) to substantiate all charges placed against an arrestee.

2.  Department personnel will, at all times, be aware of each arrestee rights and will:

    a.  expedite all processing so that the arrestee will not be detained longer than necessary.

    b.  never use force or coercion in seeking confessions or admissions.

    c.  recognize and respect the arrestee's rights as defined in the General Order entitled "Interrogations: Field and Custodial."

## III.  DEFINITIONS

A.  **ADULT** - A person seventeen years of age or older.

B.  **APPROVAL OF CHARGES** - The entering on an Arrest Report of the watch commander's signature indicating approval of the formal filing of charges against an arrestee.

C.  **ARRESTEE** - A person taken into custody for the commission of an offense.

D.  **ARRESTING OFFICER(S)** - A sworn member who actually takes a person into custody.

E.  **BOOKING** - All processes involved in the handling of an arrestee prior to final charging.

F.  **BOOKING OFFICER** - A member (e.g., lockup keeper or detention aide) who has been designated by the watch commander at a detention facility to complete the booking process.

G.  **CHARGING** - The formal recording on an Arrest Report of the legal citation of offenses alleged in signed complaints.

H.  **DESK SERGEANT** - A sergeant assigned the responsibility of supervising the duties performed by desk and lockup personnel at a detention facility. Supervisory responsibilities for Central Detention Section personnel will be assumed by the watch commander assigned to that section.

I.  **DETENTION AIDE** - A civilian member who, under the supervision of the lockup keeper, assists in the care and processing of arrested persons.

J.  **INITIAL APPROVAL OF PROBABLE CAUSE** - The entering on an Arrest Report of the watch commander's signature indicating there is probable cause to detain the arrestee, and the elements of the offense have been included on the Arrest Report.

K.  **INVESTIGATING OFFICER** - A sworn member who participates in an investigation and obtains information pertinent to subsequent court proceedings.

L.  **JUVENILE** - A person under seventeen years of age.

M.  **LOCKUP** - The area in a Department facility which is set aside for the processing and custody of arrestees.  It is set apart from the rest of the facility by a solid/bar steel door.

N.  **LOCKUP KEEPER** - A sworn member designated by the watch commander who is responsible for completing the booking process, maintaining security, and providing for the safety of arrestees while in a Department lockup.

O.  **STRIP SEARCH** - The removal or rearrangement of some or all of the clothing of an arrestee to permit a visual inspection of the genitals, buttocks, anus, female breasts, or undergarments.

P.  **WATCH COMMANDER** - Sworn members who are in command of a watch during their duty hours and who are responsible for directing all police activities under their jurisdiction, including overseeing the processing of all arrests made in that district.

## IV.     GENERAL RESPONSIBILITIES

A.     Arresting officers will be responsible for:

1.     adhering to all Department procedures relative to processing arrestees and ensuring there is a valid basis for charges placed.

2.     completing the Arrest Report in accordance with the "Form Preparation Instructions" printed on the inside cover of the Arrest Report formset booklet. **When citing the statute or ordinance violated, Department members will ensure that the most serious charge is listed first in box 40 of the Arrest Report.**

NOTE: It is not necessary to list the charges in the chronological order of the investigation to establish probable cause.

3.     setting forth in the Arrest Report narrative sufficient information (elements of the offense and probable cause to arrest) to substantiate all charges placed against an arrestee.

4.     ensuring an arrestee is not charged until a name check has been completed.

5.     entering the desired court date as outlined in the Department Notice entitled "Court Call Schedule."

6.     entering the event number in the designated space on the Arrest Report.

7.     notifying witnesses of the date, time, and location of court proceedings, and appearing promptly at all judicial hearings, as required.

8.     signing the affirmation statement on the bottom of the narrative section of **both** the Permanent Record-Records Division (white) and Court Sergeant (blue) pages of the Arrest Report in the presence of a Department member sworn as a deputy clerk of the Circuit Court of Cook County.

NOTE: Department members acting as deputy clerks **must** witness the arresting officer signing the affirmation statement before affixing their signature in both places.

9.     personally presenting the Arrest Report to the on-duty watch commander for approval.

B.     Watch commanders in charge of a detention facility will be responsible for:

1.     ensuring the proper handling and processing of all adult arrestees, juveniles, and other persons who come within their jurisdiction.

2.     reviewing all Arrest Reports at the beginning of the booking process and ensuring that the arresting officer has complied with Item IV-A of this order.

3.     the initial approval of probable cause.

a.     The district watch commander of the unit of detention will sign the "Initial Approval of Probable Cause" box of the Arrest Report at the onset of the booking process indicating there is probable cause to detain the arrestee and the elements of the offense have been included in the narrative portion of the Arrest Report.

b.     When a district watch commander authorizes the transfer of an arrestee to another district for detention processing, the authorizing watch commander will sign and enter his/her star number in the "Initial Approval of Probable Cause" box.

39.

**NOTE:** For the Central Detention Section the watch commander District 001 will be considered in charge of the detention facility concerning initial approval of probable cause and final approval of charges.

4. approval of proper charges placed against arrestees when the booking process is complete and probable cause exists. Normally, an arrestee who has been fingerprinted will not be charged and sent to court until the facsimile copy of the Criminal History Sheet or No Record Notification has been received. However, the arrestee will be considered charged when the watch commander in charge of a detention facility waives the results of the fingerprint check, as outlined in the addendum to this order entitled "Releasing Arrestees Without Charging and Waiving Fingerprint Results."

**NOTE:** When an arrestee who has not been charged is detained at a facility other than a detention facility, the on-duty unit commanding officer of that unit will ensure that the arrestee is returned to the district of detention for the completion of the booking process in sufficient time to allow the arrestee to be processed for the next regularly scheduled court hearing to which the case is normally returnable.

5. the completeness, accuracy, and legibility of **all copies** of the Arrest Report.

6. ensuring that an assistant state's attorney has been notified in cases necessitating felony review.

7. when the assistant state's attorney does not approve felony charges against the arrestee, reviewing the facts of the case to determine:

   a. whether the on-duty Assistant Deputy Superintendent assigned to Operations Command should be consulted for a determination.

   b. whether circumstances warrant reduced charges.

   c. whether the arrestee should be released without charging.

8. making the final determination, based on the available evidence, whether a person should be released without charging.

9. ensuring that all arrestees are charged (booking process completed) without unnecessary delay.

10. ensuring that arrestees are sent to the next regularly scheduled court to which the case is normally returnable, unless the arrestee has been let to bail.

    **NOTE:** In cases involving unusual circumstance (e.g. victim hospitalized and unable to communicate, offender arrested for multiple offenses and victims must be contacted), the watch commander may authorize detention up to forty-eight hours from the time of arrest. The on-duty Assistant Deputy Superintendent assigned to Operations Command may authorize detention beyond forty-eight hours after the time of arrest.

11. conducting a thorough investigation as outlined in the addendum entitled "Arrestees Who Resist, Obstruct, Assault, or Commit a Battery on a Department Member and/or Allegations of Misconduct by a Department Member" whenever an arrestee is in custody for Resisting a Police Officer, Obstructing a Police Officer, Assault of a Police Officer, Battery of a Police Officer, or whenever the resisting arrest box is checked "yes" on the Arrest Report.

12. allowing the arrestees a reasonable number of visitations by an attorney of their choice and/or a member of their family unless there is imminent danger of escape. Such visits will be permitted in accordance with the addendum to this order entitled "Arrestees' Communications."

13. personally inspecting the lockup and prisoners at least twice during the tour of duty, noting conditions found and signing the Inspection Log (bound ledger book). In District 001, the inspection responsibilities will be assumed by the watch commander assigned to the Central Detention Section.

C. Desk sergeants at a detention facility will be responsible for:

1. ensuring all court complaints are properly sworn to by the complainant/arresting officer and a member sworn as a deputy clerk of the circuit court.

2. the proper completion of all court complaints and related documents and the assignment of cases to the proper court.

3. ensuring the required **original** signatures (arresting officer and Department member sworn as deputy clerk) are entered on the affirmation statement of both the Permanent Record-Records Division (white) and Court Sergeant (blue) pages of the Arrest Report.

4. ensuring proper recording of the legal citation for offense(s) alleged in signed complaint(s) on all copies of the Arrest Report.

5. the proper distribution of Arrest Reports and related documents as outlined in the addendum to this order entitled "Arrest Report and Related Documents."

6. the preparation of bail bonds, when authorized.

7. the preparation of Court Complaint Transmittal Listings (CPD-11.551).

8. notifying arresting officers if a change is made in the Arresting Officer Desired Court Date/Branch-Call box of the Arrest Report.

9. the security of female arrestees, juveniles, and other persons left in their custody.

10. overseeing the conduct of lockup personnel and ensuring that they are properly making entries in the Inspection Log by personally inspecting the lockup, prisoners, and the log at least twice during the tour of duty. The desk sergeant will check all entries since the last supervisory inspection, indicate conditions found, take appropriate action when necessary, and sign the log. In District 001, inspection responsibilities will be assumed by the watch commander assigned to the Central Detention Section.

11. ensuring that criminal complaints are prepared when charges are upgraded.

12. in instances when the arrestee is in custody on a warrant, verifying that the arrestee and the person wanted on the warrant are the same person by ensuring that any IR number and physical description listed in the warrant match the IR number on the arrestee's Criminal History Sheet and the arrestee's physical description. A photo comparison will also be attempted via the ICAM or CHRIS systems.

D. Lockup personnel will process arrestees in accordance with the procedures established in this directive. Their responsibilities include:

1. completing appropriate portions of the Arrest Reports and obtaining Central Booking(CB) numbers.

2. fingerprinting and photographing arrestees in compliance with Department directives.

3. recording the names of all arrestees on the Roster of Persons in Custody form (CPD-11.515).

# Exhibit B

1.

G.J. No.   502
GENERAL NO. 98 CR- 30384

------------------------------------

CIRCUIT COURT OF COOK COUNTY
    COUNTY DEPARTMENT
    CRIMINAL DIVISION
    November, 1998

------------------------------------

The People of the State of
        Illinois
            v.
    Kevin Patterson *01*
    Jamal Akbar  *02*
    AKA: Jamal Arbar

**ORIGINAL**
FILE COPY
DO NOT REMOVE

*******************
* INDICTMENT FOR *
*******************

ATT FIRST DEGREE MURDER ETC

------------------------------------

A TRUE BILL.

Foreman of the Grand Jury

==============================
        WITNESSES
OFF. DWYER

------------------------------------
------------------------------------
------------------------------------
------------------------------------
------------------------------------
------------------------------------
------------------------------------

==============================
Filed  December 4  , 19 98
Aurelia Pucinski  , Clerk
Bail $
==============================

2.

1

1    IN RE:   PEOPLE VS. KEVIN PATTERSON, JAMAL AKBAR

2

3

4                                  _ GJ NO.: 502

5                                  ARR. DATE:  12/21/98

6                                  98 CR 30064

7

8              BEFORE THE GRAND JURY OF COOK COUNTY

9                       NOVEMBER, 1998

10

11

12                   TRANSCRIPT OF TESTIMONY TAKEN IN

13   THE ABOVE-ENTITLED MATTER ON THE 30TH DAY OF

14   NOVEMBER, A.D. 1998.

15

16   PRESENT:  MR. JAMES COMROE

17             ASSISTANT STATE'S ATTORNEY

18

19   REPORTED BY:  CORDELIA BUSSE WERT

20                 CERTIFIED SHORTHAND REPORTER

21                 ILLINOIS LICENSE NO. 84-2985

22

23   LIST OF WITNESSES

24   OFFICER GREEMAN

3.

2

1       THE FOREPERSON:  Would you raise your right

2    hand, please?

3                    (Witness duly sworn.)

4       MR. COMROE: . This is November 502.  We are

5    asking FOR a True Bill against Jamal Akbar also

6    known as Jamal Arbar for attempt armed robbery and

7    for Kevin Patterson for attempt armed robbery,

8    aggravated discharge of a firearm, attempt first

9    degree murder, UUW by a felon for Kevin Patterson,

10   and UUW for Kevin Patterson.

11          The Grand Jury does have the right to

12   subpoena and question any person against whom the

13   State's Attorney is seeking a Bill of Indictment,.

14   or any other person, and to obtain and examine any

15   documents or transcripts relevant to the matter

16   being prosecuted by the State's Attorney.

17                  OFFICER GREEMAN,

18   having been first duly sworn, was examined and

19   testified as follows:

20                  EXAMINATION

21                      BY

22                  MR. COMROE:

23      Q.   Name, star, unit?

24      A.   I am Officer Paul Greeman, Star No.

4.

3

1    19169, currently assigned to the 9th District,

2    Chicago Police Department.

3        Q.    Sir, there is a business called

4    Connexions which on October 1st, 1998, was located

5    at 5102 South Western in Chicago, Cook County,

6    Illinois?

7        A.    Yes.

8        Q.    In that business on October 1st at about

9    5:08 in the afternoon were employees Clarence

10   Beals, Timothy Jones, and Felice McGee; is that

11   correct?

12       A.    Yes.

13       Q.    McGee and Jones had just finished

14   counting out money and putting it in the desk; is

15   that correct?

16       A.    Yes.

17       Q.    At that time an individual later found

18   out to be Kevin Patterson entered into the

19   building; is that correct?

20       A.    Yes.

21       Q.    What did Patterson then do?

22       A.    He proceeded to the rear of the

23   business, he instructed all the employees to lay

24   down and face on the floor.  Then he attempted to

5.

4

1    enter the cash drawer.

2         Q.   Was Patterson armed?

3         A.   Yes, he was.

4         Q.   Was he armed with a handgun?

5         A.   Yes, he was.

6         Q.   When he ordered the three individuals

7    down; Beals, Jones, and McGee, did Beals attempt

8    to flee?

9         A.   Yes, he did.

10        Q.   What happened to Beals when he tried to

11   get away?

12        A.   Mr. Patterson held him, a struggle

13   ensued.

14        Q.   Did Patterson shoot a firearm at Beals

15   but fortunately missed him?

16        A.   Yes.

17        Q.   When this happened to Beals, did Jones

18   and McGee then flee out another way?

19        A.   Yes.

20        Q.   Beals was also able to flee; is that

21   correct?

22        A.   Yes.

23        Q.   A Chicago police car came by containing

24   Officer Campbell; is that correct?

5

1        A.    Yes, it did.

2        Q.    Did Campbell enter the building after

3    the three employees fled out?

4        A.    Yes, he did.

5        Q.    Did Campbell have occasion to see

6    Patterson trying to get the money out of the

7    drawer?

8        A.    Yes, he did.

9        Q.    What did Patterson then do?

10       A.    Mr. Patterson then fled out the back

11   door.

12       Q.    There was a car waiting for him?

13       A.    Yes.

14       Q.    The engine was on?

15       A.    Yes.

16       Q.    There was a driver in the car?

17       A.    Yes, there was.

18       Q.    And did Patterson flee into this car and

19   sped away?

20       A.    Yes, he did.

21       Q.    A person named Hipolito Rodriguez saw

22   the vehicles and gave the plates to the police; is

23   that correct?

24       A.    Yes.

6

Q.    Who was this car registered to?

A.    Mr. Akbar.

Q.    Jamal Akbar?

A.    Yes.

Q.    Did Chicago police later find out Jamal Akbar also uses the name Jamal Arbar?

A.    Yes.

Q.    Does Jamal Akbar have any connection with Connexions?

A.    Yes, he did.  He was a former employee.

Q.    Did Chicago police have occasion to be tipped this car was in the vicinity of 50th and Oakley on the same day?

A.    Yes.

Q.    Did you and other Chicago police have occasion to see this vehicle?

A.    Yes.

Q.    Did a -- Akbar and Patterson were walking from the direction of the car; is that correct?

A.    Yes, they were.

Q.    What did Patterson do when he saw the police?

A.    He started to flee.

7

1          Q.    Was he found -- strike that.

2                Was he chased and apprehended?

3          A.    Yes, he was.

4          Q.    Was he dressed in the same clothes as

5     when he was inside Connexions?

6          A.    No, he was not.

7          Q.    But he was identified by Beals, Jones,

8     and McGee and Officer Campbell as the person who

9     had had a handgun inside Connexions?

10         A.    Yes, he was.

11         Q.    Akbar was also identified and found near

12    the car?

13         A.    Yes, he was.

14         Q.    And he is the same person who owned the

15    car and used to work for Connexions?

16         A.    Yes, he is.

17         Q.    Did a citizen names Ruiz have occasion

18    to see what happened to Patterson's original

19    clothing and to his handgun?

20         A.    Yes, he did.

21         Q.    What did Patterson do with his original

22    clothes and the handgun?

23         A.    He was disposing of the handgun and his

24    clothes in a trash can in the alley.

9.

8

1    Q.   Did Chicago police have occasion to find

2    that trash can near the vehicle that Akbar had

3    parked?

4    A.   Yes, we did.

5    Q.   What was found inside the trash bin?

6    A.   The following:  One black jacket, one

7    Motorola police scanner, two walkie-talkies, one

8    holster, one blue dress shirt, one blue tie, one

9    brown pouch/zipper containing one Smith and Wesson

10   blue steel revolver five-shot with four live

11   rounds, one spent.

12   Q.   Did Mr. Patterson talk to the police

13   about what he had done with his clothing and

14   his -- strike that.

15   Did Kevin Patterson speak to the Chicago

16   police about what he had done inside Connexions?

17   A.   Probably through the detective, yes.

18   Q.   He did not get any of the money; is that

19   correct?

20   A.   Correct.

21   Q.   Did you have occasion to look at Kevin

22   Patterson's criminal history?

23   A.   Yes, I did.

24   Q.   Did you find that he had been convicted

1    by Judge Fitzgerald on October 31, 1978, for armed

2    robbery, Case 78-691?

3        A.    Yes.

4        Q.    The weapon that Patterson used was in

5    the trash can; is that correct?

6        A.    Yes, it was.

7        Q.    And the weapon was identified?

8        A.    Yes.

9        Q.    And the weapon was loaded with

10   ammunition; is that correct?

11       A.    Yes, it was.

12       Q.    When Patterson fled out, he was on the

13   public way of South Western while armed with that

14   weapon; is that correct?

15       A.    Yes, he was.

16       Q.    And he was also on a public alley,

17   Oakley, when he discarded that weapon; is that

18   correct?

19       A.    Yes.

20       Q.    When Kevin Patterson entered Connexions,

21   that weapon was concealed on his person; is that

22   right?

23       A.    Yes, it was.

24       MR. COMROE:    Thank you.

1          THE FOREPERSON:  Questions?

2     BY MR. COMROE:

3          Q.    May I ask a further question?

4                Officer Fudacz works with Officer

5     Campbell, does he not?

6          A.    Yes, she does.

7          Q.    That officer also saw the vehicle that

8     Patterson fled the scene from; is that correct?

9          A.    Yes, she did.

10         Q.    Officer Fudacz identified Jamal Akbar as

11    the driver of that car?

12         A.    Yes, she did.

13         Q.    She also identified the vehicle after it

14    was recovered by Chicago police from 50th and

15    Oakley?

16         A.    Yes.

17    MR. COMROE:  Okay.

18    THE FOREPERSON:  Excused.

19                      (Witness excused.)

20                      (Whereupon the Grand Jury was

21                      left alone to deliberate,

22                      after which the following

23                      proceedings were had:)

24    THE FOREPERSON:  True Bill.

12.

1        (Whereupon the above-entitled

2        cause was continued for

3        arraignment before the

4        Presiding Judge of the

5        Criminal Division.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

13.

STATE OF ILLINOIS )
                          ) SS:
COUNTY OF C O O K )

I, CORDELIA BUSSE WERT, a Certified Shorthand Reporter licensed to practice in the State of Illinois, do hereby certify that I reported in shorthand the proceedings had in the hearing of the above entitled cause; that I thereafter caused the foregoing to be transcribed into typewriting, which I hereby certify is a true and accurate transcript of the proceedings had before the Grand Jury of Cook County.

CORDELIA BUSSE WERT, CSR



KEVIN PATTERSON - A83815
100 Hillcrest Rd
EAST Moline, IL 61244-1159

QUAD CITIES IL 612 1T
09 MAY 2007 PM

DOROTHY BROWN - CLERK
CIRCUIT COURT of COOK COUNTY
2650 S. CALIFORNIA
Chicago, Illinois
60608

CLERK OF CIRCUIT COURT
CRIMINAL DIVISION
2007 MAY 14 PM 12: 14
RECEIVED

15.

To: Dorothy Brown          Office          Date  May 6,    200 07.
Clerk of The Circuit Court
2650 S. California
Chicago, Il 60608

**RECEIVED**

2007 MAY 14 PM 12: 14

CLERK OF CIRCUIT COURT
CRIMINAL DIVISION

_____ CLERK
DOROTHY BROWN

From: Kevin Patterson - A83515

100 Hillcrest Road

East Moline, Illinois 61244-1159

Dear Ms. Brown

I am the above named person whom at this specific time am writing to you to obtain some very
important legal documents which are relevant to some issues I have that are outstanding and
that are subject to being investigated, because I am in dire need of certain records I felt
it best that I personally contact your office for my needs.

I am requesting that your office forward to me a copy of the below named documents:

    1). Copy of Indictment Return Sheets case # 98 cr 30064

    2). Copy of true Bill of Indictments case # 98 cr 30064

    3). Copy of the Clerks Disposition Printout # 98 cr 30064

    4). Return copy of this letter shown received.

your help and cooperation in sending me these documents will be very appreciated.
At the present moment I am unable to pay any and all such fee's for your service in these
very important matters and I request that you allow me to obtain said above requested legal
documents in a pauperis status, due to my present position being as it currently is at this
time I am incarcerated in the Illinois Department of Corrections as the above address truely
reveals, again your help in providing to me the above requested material would be very, very
much appreciated and I personally thank you for your time and service in the aforementioned.

Sincerely and Respectfully Submitted

Kevin Patterson

My personal information is as follows:

Date of Birth, 1/16/51

Soc. Sec No.#, 329 -48 - 3912

I.R. Number #, 207100

SID. Number #, _____

16.

# CALL   /

## ** INFORMATION INDICTMENT RETURN SHEET **

| CASE NO. | IR | DEFENDANT | NO. | ARRAIGNMENT DATE |
|---|---|---|---|---|
| | | | | MEE |
| 98CR-30064 | 207100 | **KEVIN PATTERSON** | 1 | |
| | | | | 12/21/1998 |

GJ-  502   FBI-548629G      Sex: M  Race: B  DOB: 01/16/1951
          ISB-            Add: 9642 S Lowe
          CB-14010873          Chicago, IL 60628         98-1114318
          RD/AR: C630222   Arrest Agy: C P D Area 1
                           Arrest Date: 10/01/1998    AA 100
          Hgt: 6'02"    Wgt: 175   Hair: BLK  Eyes: BRO
DIRECT INDICTMENT                          11/30/1998
ASA: James Comroe                  Unit: Branch 48

| Chg: | 1 | Attempt First Degree Murder | | |
|---|---|---|---|---|
| | | 720-5\8-4(720-5\9-1) | 000A735000 | Class: X |
| Chg: | 2 | Agg Discharge Firearm/Occ Veh | | |
| | | 720-5\24-1.2(A)(2) | 0001214850 | Class: 1 |
| Chg: | 3 | Attempt Armed Robbery | | |
| | | 720-5\8-4(720-5\18-2 | 00A1105000 | Class: 1 |
| Chg: | 4 | Attempt Armed Robbery | | |
| | | 720-5\8-4(720-5\18-2 | 00A1105000 | Class: 1 |
| Chg: | 5 | Attempt Armed Robbery | | |
| | | 720-5\8-4(720-5\18-2 | 00A1105000 | Class: 1 |
| Chg: | 6 | Unlwfl Use Firearms/Felon | | |
| | | 720-5\24-1.1 | 0001214500 | Class: 3 |
| Chg: | 7 | Unlwfl Use Firearms/Felon | | |
| | | 720-5\24-1.1 | 0001214500 | Class: 3 |
| Chg: | 8 | Carry/Possess Firearm | | |
| | | 720-5\24-1(A)(4)1 | 0000010655 | Class: 4 |
| Chg: | 9 | Carry/Possess Firearm In Public | | |
| | | 720-5\24-1(A)(10)1 | 0000010656 | Class: 4 |

RE: BAIL PREVIOUSLY SET $

# UNABLE TO REVIEW THE
# UN       IES.
# ☐               PRINT OUT

12-4-98

14.

*************************************************************

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF COOK    )

The November, 1998 Grand Jury of the

Circuit Court of Cook County.

The Grand Jurors chosen, selected, and sworn, in and for the
County of Cook, in the State of Illinois, in the name and by the
authority of the People of the State of Illinois, upon their
oaths present that on or about October 1, 1998 at and within the
County of Cook

                         KEVIN PATTERSON
                         JAMAL AKBAR
also known as              JAMAL ARBAR

committed the offense of ATTEMPT FIRST DEGREE MURDER

in that    THEY, WITHOUT LAWFUL JUSTIFICATION WITH INTENT TO KILL

CLARENCE BEALS, DID AN ACT, TO WIT: DISCHARGED A FIREARM IN THE

DIRECTION OF CLARENCE BEALS WHICH CONSTITUTED A SUBSTANTIAL STEP

TOWARDS THE COMMISSION OF FIRST DEGREE MURDER, IN VIOLATION OF

CHAPTER 720, ACT 5, SECTION 8-4(720-5\9-1), OF THE ILLINOIS

COMPILED STATUTES 1992, AS AMENDED, AND

Contrary to the Statute, and against the peace and dignity of the
same People of the State of Illinois.

CHARGE ID CODE: A735000

18.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The Grand Jurors chosen, selected, and sworn, in and for the
County of Cook, in the State of Illinois, in the name and by the
authority of the People of the State of Illinois, upon their
oaths present that on or about October 1, 1998 at and within the
County of Cook

                              KEVIN PATTERSON
                              JAMAL AKBAR
also known as                   JAMAL ARBAR

Committed the offense of AGGRAVATED DISCHARGE OF FIREARM

in that    THEY, KNOWINGLY DISCHARGED A FIREARM IN THE

DIRECTION OF ANOTHER PERSON, TO WIT: CLARENCE BEALS,

IN VIOLATION OF CHAPTER 720 ACT 5, SECTION 24-1.2(A)(2) OF THE

ILLINOIS COMPILED STATUTES 1992, AS AMENDED, AND

Contrary to the Statute, and against the peace and dignity of the
same People of the State of Illinois

                              CHARGE ID CODE: 1214850

19.

**********************************************************

    The Grand Jurors chosen, selected, and sworn, in and for the
County of Cook, in the State of Illinois, in the name and by the
authority of the People of the State of Illinois, upon their
oaths present that on or about October 1, 1998 at and within the
County of Cook

                                   **KEVIN PATTERSON**
                                   **JAMAL AKBAR**
also known as               **JAMAL ARBAR**

committed the offense of ATTEMPT ARMED ROBBERY

in that   THEY, WITH THE INTENT TO COMMIT THE OFFENSE OF ARMED

ROBBERY BY THREATENING THE IMMINENT USE OF FORCE AND WHILE ARMED

WITH A DANGEROUS WEAPON, TO WIT: A GUN, DID ANY ACT, TO WIT,

ATTEMPTED TO REMOVE UNITED STATES CURRENCY FROM THE PERSON OF

CLARENCE BEALS WHICH CONSTITUTED A SUBSTANTIAL STEP TOWARDS THE

COMMISSION OF THE OFFENSE OF ARMED ROBBERY IN VIOLATION OF

CHAPTER 720, ACT 5, SECTION 8-4(720-5\18-2) OF THE ILLINOIS

COMPILED STATUTES 1992, AS AMENDED, AND

contrary to the Statute, and against the peace and dignity of the
same People of the State of Illinois.

                                           CHARGE ID CODE: 81105000

20.

*************************************************************

    The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about October 1, 1998 at and within the County of Cook

KEVIN PATTERSON
JAMAL AKBAR
JAMAL ARBAR

also known as

committed the offense of ATTEMPT ARMED ROBBERY

in that　THEY, WITH THE INTENT TO COMMIT THE OFFENSE OF ARMED

ROBBERY BY THREATENING THE IMMINENT USE OF FORCE AND WHILE ARMED

WITH A DANGEROUS WEAPON, TO WIT: A GUN, DID ANY ACT, TO WIT:

ATTEMPTED TO REMOVE UNITED STATES CURRENCY FROM THE PERSON OF

TIMMY JONES WHICH CONSTITUTED A SUBSTANTIAL STEP TOWARDS THE

COMMISSION OF THE OFFENSE OF ARMED ROBBERY IN VIOLATION OF

CHAPTER 720, ACT 5, SECTION 8-4(720-5\18-2) OF THE ILLINOIS

COMPILED STATUTES 1992, AS AMENDED, AND

contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois.

CHARGE ID CODE: A1103000

21.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about October 1, 1998 at and within the County of Cook

KEVIN PATTERSON
JAMAL AKBAR

also known as        JAMAL ARBAR

committed the offense of ATTEMPT ARMED ROBBERY

in that    THEY, WITH THE INTENT TO COMMIT THE OFFENSE OF ARMED

ROBBERY BY THREATENING THE IMMINENT USE OF FORCE AND WHILE ARMED

WITH A DANGEROUS WEAPON, TO WIT: A GUN, DID ANY ACT, TO WIT:

ATTEMPTED TO REMOVE UNITED STATES CURRENCY FROM THE PERSON OF

FELISE MCGEE WHICH CONSTITUTED A SUBSTANTIAL STEP TOWARDS THE

COMMISSION OF THE OFFENSE OF ARMED ROBBERY IN VIOLATION OF

CHAPTER 720, ACT 5, SECTION 8-4(720-5\18-2) OF THE ILLINOIS

COMPILED STATUTES 1992, AS AMENDED, AND

contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois.

CHARGE ID CODE: A1105000

22.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about October 1, 1998 at and within the County of Cook

### KEVIN PATTERSON

Committed the offense of UNLAWFUL USE OF WEAPON BY A FELON

in that    HE, KNOWINGLY POSSESSED ON OR ABOUT HIS PERSON, A

FIREARM, TO WIT: .38 CALIBER REVOLVER

AFTER HAVING BEEN PREVIOUSLY CONVICTED OF

THE FELONY OFFENSE OF ARMED ROBBERY

UNDER CASE #78-691 IN VIOLATION OF CHAPTER 720, ACT 5,

SECTION 24-1.1(A) OF THE ILLINOIS COMPILED STATUTES 1992, AS

AMENDED, AND


Contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois.


CHARGE ID CODE: 1214500

23.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about October 1, 1998 at and within the County of Cook

### KEVIN PATTERSON

Committed the offense of UNLAWFUL USE OF WEAPON BY A FELON

in that    HE, KNOWINGLY POSSESSED ON OR ABOUT HIS PERSON, A

FIREARM, TO WIT: .38 CALIBER REVOLVER

AFTER HAVING BEEN PREVIOUSLY CONVICTED OF

THE FELONY OFFENSE OF ARMED ROBBERY

UNDER CASE #78-691 IN VIOLATION OF CHAPTER 720, ACT 5,

SECTION  24-1.1(A) OF THE ILLINOIS COMPILED STATUTES 1992, AS

AMENDED, AND


Contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois.


CHARGE ID CODE: 1214500

24.

*******************************************************************

The Grand Jurors chosen, selected, and sworn, in and for the
County of Cook, in the State of Illinois, in the name and by the
authority of the people of the State of Illinois, upon their
oaths present that on or about October 1, 1998 at and within the
County of Cook


KEVIN PATTERSON

Committed the offense of UNLAWFUL USE OF WEAPON


in that    HE, KNOWINGLY CARRIED OR POSSESSED ON OR ABOUT HIS

PERSON A REVOLVER TO WIT: A .38 CALIBER

UPON A PUBLIC ALLEY

TO WIT: SOUTH WESTERN WITHIN THE CORPORATE LIMITS OF A CITY TO

WIT: THE CITY OF CHICAGO AT A TIME WHEN HE WAS NOT ON HIS OWN

LAND OR IN HIS OWN ABODE OR FIXED PLACE OF BUSINESS AND WHEN HE

WAS NOT AN INVITEE THEREON FOR THE PURPOSE OF DISPLAY OF SUCH

WEAPON OR THE LAWFUL COMMERCE IN WEAPONS IN VIOLATION OF CHAPTER

720, ACT 5, SECTION 24-1(A)(10) OF THE ILLINOIS COMPILED STATUTES

1992, AS AMENDED, AND


Contrary to the Statute, and against the peace and dignity of the
same People of the State of Illinois.


CHARGE ID CODE:

25.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the people of the State of Illinois, upon their oaths present that on or about October 1, 1998 at and within the County of Cook

KEVIN PATTERSON

Committed the offense of UNLAWFUL USE OF WEAPON

in that    HE, KNOWINGLY CARRIED OR POSSESSED

CONCEALED ON OR ABOUT HIS PERSON A REVOLVER

TO WIT: .38 CALIBER AT A TIME WHEN HE WAS NOT ON HIS OWN LAND, OR

IN HIS OWN ABODE OR FIXED PLACE OF BUSINESS IN VIOLATION OF

CHAPTER 720, ACT 5, SECTION 24-1(A)(4) OF THE ILLINOIS COMPILED

STATUTES 1992, AS AMENDED, AND

Contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois.

CHARGE ID CODE: 10655